# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

USDC-EDPA REC'D CLERK
2026 MAY 13 PMG:19

John Jones Jr.,
Plaintiff,

v.

Kevin P. Wagner Sr., et al.,
Defendants.

Case # 26-1050

# AMENDED COMPLAINT AND JURY DEMAND

This action is brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 for violations of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN JONES JR., Plaintiff

v.

KEVIN P. WAGNER SR.; KEVIN BURNS; ANDREW KORHONEN; ALEXUS GORDON WAGNER; JOSHUA PETERSON; THOMAS CALAMARI; BUCKS COUNTY; BUCKS COUNTY DISTRICT ATTORNEY'S OFFICE; LEVITTOWN NOW / PUBLISHER; JEFFREY WAGNER; SERGEANT MICHAEL LUBOLD; DOE OFFICER 1; DOE OFFICER 2; JOHN BECK; JASON MANCUSO; ASHLEY MCCABE; EDWARD DIFRANK; SEAN COSGROVE; EMILYANN MAIALETTI; MIDDLETOWN TOWNSHIP; BRISTOL TOWNSHIP; NESHAMINY SCHOOL DISTRICT, Defendants.

## CIVIL RIGHTS COMPLAINT (42 U.S.C. § 1983)
## JURY TRIAL DEMANDED

# I. INTRODUCTION

This action arises from a coordinated campaign by Defendants to knowingly fabricate, circulate, and maintain false written accusations against Plaintiff from in or about December 2021 through Plaintiff's jury acquittal on May 17, 2024. Plaintiff's criminal trial occurred on May 16–17, 2024, and all charges were dismissed by jury verdict on May 17, 2024.

On August 23, 2021, the Plaintiff provided photos to District Court of Wagner property code violations. A court staff member, Melanie Chesko, provided those documents to Constable Robert Chesko, who in turn provided them to the Wagners that were mentioned within the documents along with pictures taken from a public street.

On November 9, 2021, the Plaintiff was cited for trespassing on church property by Officer Edward DiFrank. The church property is adjacent to Walter Miller Elementary School property. The Plaintiff was in fact on Walter Miller Elementary School property as clearly noted in the official police report of DiFrank.

At no time in that police report does DiFrank ever claim the Plaintiff was on church property. The police report clearly states that the Plaintiff was on Walter Miller Elementary School property, yet Officer DiFrank charged the Plaintiff with being on another property, clearly disputing his own report.

This police report was denied to the Plaintiff by the Middletown Township Police Department and was only provided to the Plaintiff as part of discovery for his trial on May 16-17, 2024.

Prior to trial the Plaintiff was convicted of trespassing on property that was not Walter Miller Elementary School property; however, that is exactly where the Plaintiff was.

At the Plaintiff's trial, Officer Wagner testified that the Plaintiff was cited and convicted of being on school property. This was false.

The Plaintiff was convicted by Newtown District Justice and ex-Bucks County Constable Michael W. Petrucci. The Plaintiff was convicted after release from prison and prior to trial.

The trespassing charge was not for school property, yet Jeffrey Wagner testified that it was. More importantly, the police report clearly states that the Plaintiff was on school property and yet the Plaintiff was never charged for trespassing on school property as alleged by the testimony of Jeffrey Wagner on May 16, 2024.

The Plaintiff contends that the false charges and conviction of them was done to aid authorities in securing a conviction of the Plaintiff at trial.

On November 9, 2021, ex-Bristol Township Police Sergeant Kevin Burns authored a letter to the Plaintiff stating that the Plaintiff was prohibited from school property during school hours unless the Plaintiff had school business during those hours. The Plaintiff adhered to the request and only walked

his dog there on evenings and weekends after receiving that correspondence.

On December 11, 2021, the Plaintiff was approached by Middletown Township Officer John Beck, who is on video stating that the letter specified during school hours and the Plaintiff was not in violation of any directive and/or law. Officer Beck left the scene after telling the Plaintiff if he was on school property during school hours he would be cited, not arrested. This took place around 11:20 a.m.

At approximately 11:45 a.m., Officer Jeffrey Wagner, Sergeant Michael Lubold, and two DOE officers yet unidentified converged on the Plaintiff. The entire interaction is on video. The Plaintiff explained to Sergeant Michael Lubold that Officer Beck was just there, and Sergeant Lubold replied, "Oh, Officer Beck."

Minutes later, Officer Wagner arrested the Plaintiff for trespassing and took the Plaintiff into custody along with the Plaintiff's service dog, Holly. During that arrest the Plaintiff's left shoulder was severely damaged and a pocket knife was taken, all clearly on video, and never returned to the Plaintiff. This occurred in spite of Sergeant Lubold being informed of Beck's decision not to charge the Plaintiff whatsoever. The Plaintiff's vehicle was impounded and the Plaintiff was fingerprinted and photographed at the police station.

After the arrest the Plaintiff wrote to Kevin Burns of the Neshaminy School District requesting clarification of what exactly constitutes school hours referencing the letter of November 9, 2021 and arrest. The Neshaminy School District never responded to that request.

On January 29, 2022, while driving a route that the Plaintiff has driven for three decades, the Plaintiff was stopped by Wagner family member Andrew Korhonen and was assaulted. The Plaintiff promptly returned home and called the police. The Bristol Township Police responded with Officer Ashley McCabe. The entire interaction is on video.

Officer McCabe took no action on the Plaintiff's behalf whatsoever. In fact, quite the opposite occurred. Officer McCabe informed the Plaintiff that if he drove down any street with Wagner properties on it the Plaintiff would be charged with harassment. The prohibition of the Plaintiff driving down a public street by the Bristol Township Police is all on video.

On February 3, 2022, Bristol Township Police Officer Jason Mancuso called the Plaintiff on the telephone and informed the Plaintiff that there was a warrant for his arrest. This entire phone call is on video with excellent audio. Officer Mancuso stated the Plaintiff would be home in a couple hours and would in fact be able to drive himself home.

The Plaintiff literally begged Officer Mancuso to surrender the next morning at 9:00 a.m. so that the Plaintiff could secure care for his service dog Holly. Officer Mancuso stated that the Plaintiff needed to surrender within 15 minutes. During that phone call you could hear Bristol Township Sergeant Sean Cosgrove in the background directing Officer Mancuso to not allow that. Officer Mancuso followed that order.

Officer Mancuso was adamant that the Plaintiff had to surrender because Officer Mancuso was off the next day.

The Plaintiff surrendered at the District Court of Terry Hughes. Hughes was the MDJ that signed off on the arrest warrant of the Plaintiff for stalking and harassment of arresting Officer Jeffrey Wagner, Jeffrey Wagner's wife Alexus Gordon Wagner, and Bucks County Constable Andrew Korhonen, father-in-law of Officer Jeffrey Wagner.

The Plaintiff surrendered as instructed by Officer Mancuso and was transported to Bucks County Prison after being arraigned in front of District Justice Vislosky on $1 million bail. The Plaintiff never saw his service dog Holly ever again.

The Plaintiff spent 76 days in Bucks County Prison, the first six days prohibited from a phone call, all on record with this Court.

During incarceration and 47 days after the Plaintiff surrendered on February 3, 2022, the Plaintiff was arraigned by video and charged with terroristic threats, alleged by Bucks County Constables Peterson and Calamari. Those allegations stated that the Plaintiff had made threats regarding Officer Wagner's father, District Justice Kevin Wagner Sr., during transport to Bucks County Prison on February 3rd.

The Plaintiff was assessed with another $50,000 bail for terroristic threats.

What we have here is Officer Jeffrey Wagner arresting the Plaintiff in violation of the Plaintiff's civil rights and the authorities and Jeffrey Wagner himself, his father Kevin Wagner Sr., Jeffrey's now wife Alexus Gordon Wagner, and his father-in-law Bucks County Constable Andrew Korhonen all alleged that the Plaintiff was harassing them and stalking them or making threats towards them.

The Plaintiff's contention is that this was done for the sole purpose of discrediting the Plaintiff with regard to his valid allegations of false arrest against Jeffrey Wagner on December 11, 2021.

In late January of 2022, prior to the February 3 arrest, the Plaintiff wrote the Bucks County District Attorney's Office in what is known as the "Weintraub" letter requesting what action would be done regarding Jeffrey Wagner's illegal arrest of the Plaintiff.

Within that correspondence the Plaintiff requests help, provided notice of impending retaliation that did in fact occur on February 3, 2022, and the Plaintiff clearly stated within that correspondence: "I believe the only action taken will be to circle the wagons and protect Jeffrey Wagner from false arrest litigation."

Yes, the Plaintiff literally called out the actions the Plaintiff believed would be taken against him rather than hold Officer Jeffrey Wagner accountable for his actions. This as well as dozens of other letters to authorities constitutes notice.

After being released from Bucks County Prison on April 20, 2022, 76 days after incarceration, the Plaintiff had a trial on May 16-17, 2024. The Plaintiff was found not guilty by a jury on May 17, 2024

of stalking x3, harassment x3, trespassing x2, and terroristic threats.

The Plaintiff is including all of the submitted evidence to the federal court in case 23-4879 as part of this complaint 26-1050.

The sheer abundance of correspondence and the exhaustive list of authorities those letters were sent to clearly substantiate notice and moreover the fact that no one took any action whatsoever to investigate the Plaintiff's allegations.

In the Affidavit of Probable Cause used by Officer Mancuso it clearly states that Officer Jeffrey Wagner was informed by Officer Beck that the Plaintiff was in fact trespassing on Walter Miller Elementary School property.

That information is directly contradicted by the video of Officer Beck taken minutes before the arrival of Officer Wagner.

The Bristol Township incident report regarding the arrest of February 3, 2022 also states that Jeffrey Wagner was informed by Officer Beck that John Jones Jr. was trespassing on Walter Miller Elementary School property. Again, video evidence of Officer Beck on December 11, 2021 directly contradicts this sworn statement by Officer Jeffrey Wagner.

On May 16, 2024, Officer Jeffrey Wagner testified under oath that he heard over the radio by a "floater car" that there was a suspicious vehicle on Walter Miller Elementary School property. This testimony directly conflicts with Jeffrey Wagner's sworn statement to authorities, namely Officer Jason Mancuso of Bristol Township.

District Justice Joanne V. Kline, who signed off on the arrest warrant for the Plaintiff walking his dog on December 11, 2021, was sued by the Plaintiff in 2015, all in federal court records.

Also, District Justice Joanne V. Kline is a well-known friend of the Wagner family and lives within a 2-minute walk of Officer Jeffrey Wagner's residence and his father Kevin Wagner Sr.'s residence directly across the street from Jeffrey Wagner's residence.

Officer Beck is on video stating the Plaintiff did nothing wrong on December 11, 2021.

Officer Wagner and others charged the Plaintiff with trespassing and took the Plaintiff and his dog into custody while having the Plaintiff's vehicle impounded.

The District Justice that signed off on that arrest as being valid was Joanne V. Kline, a close Wagner family friend and moreover someone who was supposedly recused from hearing any matter involving the Plaintiff.

This is a case where politically connected individuals with law enforcement ties were able to be assisted by numerous individuals to the point that the actions of those individuals as well as the Defendants and Wagner family members constitutes abuse of process. This is a case where the

Plaintiff's rights were violated and the individuals responsible for those violations were protected and assisted by individuals in a position to end this unconstitutional conduct over an extended period of time.

## II. JURISDICTION AND VENUE

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343. Venue is proper under 28 U.S.C. § 1391(b).

## III. PARTIES

USDC-EDPA REC'D CLERK
2026 MAY 13 PM 12:__

Plaintiff JOHN JONES JR. is a resident of Pennsylvania and brings this action pro se.

Defendant KEVIN P. WAGNER SR., a local District Justice, acted outside any judicial role and as a private citizen when he knowingly made and maintained false written statements to law enforcement authorities from at least 2021 through May 2024.

Defendant KEVIN BURNS, the Neshaminy School District Security Chief, authored and maintained false written statements asserting that Plaintiff was unlawfully present on school property, despite knowing that the cited restriction applied only during school hours. These false statements were created in or about December 2021 and reaffirmed through May 2024.

Defendant ANDREW KORHONEN, a Bucks County Constable, fabricated allegations of harassment in or about 2022, and continued to stand by those allegations through Plaintiff's trial and acquittal.

Defendant ALEXUS GORDON WAGNER, a private individual, knowingly submitted false written statements to authorities in or about 2021–2022 and acted jointly with state actors to reinforce those fabricated accusations through May 2024.

Defendant JOSHUA PETERSON, a Bucks County Constable, fabricated allegations of terroristic threats in or about 2022 to increase Plaintiff's bail exposure and maintained those allegations through trial.

Defendant THOMAS CALAMARI, also a Bucks County Constable, joined in fabricating terroristic threat allegations in or about 2022 and continued to support those accusations through Plaintiff's acquittal.

Defendant BUCKS COUNTY is a municipal entity organized and existing under the laws of the Commonwealth of Pennsylvania and is a "person" subject to suit under 42 U.S.C. § 1983. Bucks County, through its employees, agents, departments, and affiliated officials, participated in and furthered the continuation of false allegations and prosecution arising from Plaintiff's December 11, 2021 arrest by Officer Jeffrey Wagner and others.

Defendant BUCKS COUNTY DISTRICT ATTORNEY'S OFFICE is a policymaking entity for Bucks County with respect to prosecutorial training, supervision, and administrative practices, and is subject to liability under 42 U.S.C. § 1983.

Defendant LEVITTOWN NOW / PUBLISHER is a media entity that participated in the publication and dissemination of false statements concerning Plaintiff, contributing to the continuation of fabricated allegations.

Defendant JEFFREY WAGNER, a Middletown Township Police Officer, participated in the events giving rise to Plaintiff's arrest and prosecution and acted in concert with other Defendants to advance and rely upon fabricated allegations.

Defendant MICHAEL LUBOLD, a Middletown Township Police Sergeant, participated in the December 11, 2021 arrest of the Plaintiff along with his service dog Holly and participated in the events giving rise to Plaintiff's arrest and prosecution and acted in concert with other Defendants to advance and rely upon fabricated allegations.

Defendant DOE OFFICER 1, a Middletown Township Police Officer, participated in the December 11, 2021 arrest of the Plaintiff along with his service dog Holly and participated in the events giving rise to Plaintiff's arrest and prosecution and acted in concert with other Defendants to advance and rely upon fabricated allegations.

Defendant DOE OFFICER 2, a Middletown Township Police Officer, participated in the December 11, 2021 arrest of the Plaintiff along with his service dog Holly and participated in the events giving rise to Plaintiff's arrest and prosecution and acted in concert with other Defendants to advance and rely upon fabricated allegations.

Defendant JOHN BECK, a Middletown Township Police Officer, participated in the events giving rise to Plaintiff's arrest and prosecution and acted in concert with other Defendants to advance and rely upon fabricated allegations.

Defendant JASON MANCUSO, a Bristol Township Police Officer, participated in the events giving rise to Plaintiff's arrest and prosecution and acted in concert with other Defendants to advance and rely upon fabricated allegations.

Defendant ASHLEY MCCABE, a Bristol Township Police Officer, participated in the events giving rise to Plaintiff's arrest and prosecution and acted in concert with other Defendants to advance and rely upon fabricated allegations.

Defendant EDWARD DIFRANK, a Middletown Township Police Officer, participated in the events giving rise to Plaintiff's arrest and prosecution and acted in concert with other Defendants to advance and rely upon fabricated allegations.

Defendant SEAN COSGROVE, a Bristol Township Police Sergeant, participated in the events giving rise to Plaintiff's arrest and prosecution and acted in concert with other Defendants to advance and rely upon fabricated allegations.

Defendant EMILYANN MAIALETTI, a Bristol Township Police Officer later promoted to Detective, participated in the events giving rise to Plaintiff's arrest and prosecution and acted in concert with other Defendants to advance and rely upon fabricated allegations.

Defendant MIDDLETOWN TOWNSHIP is a municipal entity organized and existing under the laws of the Commonwealth of Pennsylvania and is a "person" subject to suit under 42 U.S.C. § 1983.

Defendant BRISTOL TOWNSHIP is a municipal entity organized and existing under the laws of the Commonwealth of Pennsylvania and is a "person" subject to suit under 42 U.S.C. § 1983.

Defendant NESHAMINY SCHOOL DISTRICT is a municipal entity organized and existing under the laws of the Commonwealth of Pennsylvania and is a "person" subject to suit under 42 U.S.C. § 1983.

## IV. FACTUAL ALLEGATIONS

1. In or about November 9, 2021, Defendant Kevin Burns, acting in his capacity as Neshaminy School District Security Chief, issued a written notice concerning Plaintiff's presence on school property, which on its face applied only during school hours.

2. On December 11, 2021, Plaintiff was present on Neshaminy School District property during non-school hours, at a time when the restrictions set forth in the Burns notice were not in effect.

3. Despite the limited scope of the written notice, Defendants Jeffrey Wagner, John Beck, Sergeant Michael Lubold, and two John Doe Middletown Township Police Officers treated Plaintiff's presence as unlawful and initiated enforcement action against him.

4. Defendant Jeffrey Wagner, a Middletown Township Police Officer, stated on video that Plaintiff was not permitted to be on the property at all, despite the plain language of the written notice limiting its application to school hours.

5. Plaintiff possesses video recordings of the events of December 11, 2021, which capture the statements of Defendant Jeffrey Wagner and other responding officers concerning Plaintiff's presence on the property.

6. Defendant John Beck, a Middletown Township Police Officer, arrived on scene prior to Defendant Jeffrey Wagner at approximately 11:20 a.m. on December 11, 2021.

7. During that interaction, which was also recorded on video, Defendant John Beck reviewed the written notice and stated, "I'm looking at this letter right now and it does say during school hours, so as far as I can tell you're good."

8. Despite Defendant John Beck's contemporaneous acknowledgment that Plaintiff was not in violation of the notice, Defendants subsequently disregarded that interpretation and proceeded to treat Plaintiff's presence as unlawful.

9. During the same incident, Defendant Sergeant Michael Lubold acknowledged on video that Defendant John Beck had already been on scene and had taken no enforcement action.

10. At trial, Defendant Jeffrey Wagner testified that he responded to the scene after being notified by a "floater car" of a suspicious vehicle.

11. In fact, Defendant John Beck had already made contact with Plaintiff, addressed Plaintiff by name, and departed the scene prior to Defendant Jeffrey Wagner's arrival, as reflected in Plaintiff's video recordings.

12. Defendant Jeffrey Wagner's claim that Plaintiff was a "suspicious vehicle" and that he had no prior knowledge of Plaintiff is directly contradicted by the recorded events of December 11,

2021.

13. On December 11, 2021, Plaintiff was arrested and charged with defiant trespass and trespass by motor vehicle.

14. These charges were based upon Defendants' misinterpretation and disregard of the written notice, which by its plain terms applied only during school hours.

15. On December 22, 2021, Plaintiff sent written correspondence directly to Defendant Kevin Burns and the Neshaminy School District formally disputing the factual and legal basis of the asserted restriction regarding Plaintiff's presence on school property.

16. In that correspondence, Plaintiff specifically challenged the applicability of the "school hours" limitation, the factual basis for any claim of trespass, and the authority under which such restriction was asserted.

17. This correspondence placed Defendants Kevin Burns and the Neshaminy School District on actual notice that the underlying premise being relied upon by law enforcement—that Plaintiff's presence constituted trespass—was materially false and misleading, particularly as applied to a non-school day.

18. Despite receiving this direct notice, Defendants Kevin Burns and the Neshaminy School District failed to respond, clarify, or correct the asserted restriction.

19. Upon information and belief, Defendants' failure to respond or correct the asserted restriction allowed law enforcement to continue relying upon a materially false premise in initiating and maintaining enforcement actions against Plaintiff.

20. This failure to correct or clarify the directive foreseeably and directly contributed to the continuation of enforcement actions against Plaintiff based on a materially false interpretation of the written notice.

21. Defendant Kevin Burns was acting within the scope of his authority as an official of the Neshaminy School District when issuing and maintaining the written directive concerning Plaintiff's access to school property.

22. The Neshaminy School District, through its authorized officials, including Defendant Kevin Burns, maintained and failed to correct a directive that was materially misleading as to the scope of permissible access to school property, despite having actual notice of its deficiencies.

23. On January 29, 2022, Plaintiff contacted police to report an assault and Defendant Ashley McCabe, a Bristol Township Police Officer, responded to Plaintiff's residence.

24. Plaintiff reported that he had been assaulted by Defendant Andrew Korhonen, a Bucks

County Constable.

25. Despite Plaintiff's report, Defendant Ashley McCabe took no enforcement action, and her response to the incident was captured on video.

26. During that interaction, Defendant Ashley McCabe stated that if Plaintiff continued to drive past Wagner family residences, he would be cited for harassment.

27. The restriction asserted by Defendant Ashley McCabe sought to prohibit Plaintiff from traveling on public roadways and was not based upon any lawful authority.

28. Plaintiff sustained injury during the assault, including a damaged phone screen and injury to his wrist, yet no action was taken by Defendant Ashley McCabe in response.

29. Defendant Andrew Korhonen is related to the Wagner family and is the stepfather of the wife of Defendant Jeffrey Wagner.

30. The failure to take action on Plaintiff's assault complaint, combined with the imposition of an unlawful restriction on Plaintiff's movement, demonstrates the influence and involvement of the Wagner family in law enforcement actions taken against Plaintiff.

31. On February 3, 2022, Defendant Jason Mancuso, a Bristol Township Police Officer, contacted Plaintiff by telephone and informed him that a warrant had been issued for his arrest and that he was required to surrender.

32. Plaintiff advised Defendant Jason Mancuso that the call was being recorded and recorded the entire interaction.

33. During that recorded call, Defendant Jason Mancuso stated that Plaintiff would be "home in a couple hours."

34. Plaintiff requested permission to surrender the following morning at approximately 9:00 a.m. in order to secure care for his service dog, Holly, but Defendant Jason Mancuso refused that request.

35. On April 21, 2021, Plaintiff sent written correspondence to District Court 7103 stating that, in the event any warrants were issued, he would voluntarily surrender to the Bucks County District Attorney's Office in Doylestown.

36. This correspondence was disseminated to multiple officials, including those copied on the letter, placing Defendants on notice of Plaintiff's intent to voluntarily surrender.

37. Despite Plaintiff's expressed willingness to surrender voluntarily, Defendants required immediate surrender and caused Plaintiff to be taken into custody.

USDC-EDPA RECD CLERK
2026 MAY 13 PM 6:19

38. Plaintiff was transported to Bucks County Prison and his vehicle was impounded, later requiring payment of approximately $1,250 for its recovery.

39. Plaintiff was held on bail in the amount of $1,000,000 in connection with charges asserted after the December 11, 2021 incident.

40. Plaintiff had previously been at liberty for an extended period following the December 11, 2021 charges, and the bail imposed for those trespass charges was $50,000, which was not based upon any new conduct by Plaintiff and was imposed after more than fifty days during which Plaintiff had remained free from any bail on those charges.

41. During the first six days of Plaintiff's incarceration, he was not provided access to a telephone and no one was aware of his location.

42. As a result of Plaintiff's detention, his service dog, Holly, was left without care inside his home.

43. Holly later died during Plaintiff's incarceration.

44. On February 3, 2022, Defendant Jason Mancuso initiated additional charges against Plaintiff, including stalking and harassment.

45. These charges alleged that Plaintiff had stalked and harassed Defendant Jeffrey Wagner, his wife Defendant Alexus Gordon Wagner, and Bucks County Constable Andrew Korhonen.

46. As a result of these additional charges, Plaintiff's bail was increased by approximately $950,000, in addition to the $50,000 bail previously imposed in connection with the December 11, 2021 trespass charges.

47. In the charging documents, Defendant Jason Mancuso stated that he had spoken with Defendant Kevin P. Wagner Sr., who advised that he had communicated with the Chief of Bucks County Detectives and was informed that Bristol Township could handle the investigation, with the County providing assistance if needed; upon information and belief, a Wagner family member, Justin Eisenhower, is employed as a Bucks County Detective.

48. The involvement of Defendant Kevin P. Wagner Sr. in directing or influencing the course of the investigation demonstrates that the outcome of the investigation was predetermined.

49. Plaintiff was never interviewed or contacted by law enforcement regarding the allegations underlying the stalking and harassment charges prior to his arrest.

50. Instead, Defendants relied upon statements from members of the Wagner family and associated individuals without conducting an independent investigation or seeking Plaintiff's account.

51. On March 22, 2022, Plaintiff was removed from his cell at Bucks County Prison and arraigned via video on additional charges of terroristic threats.

52. These charges were initiated by Defendants Joshua Peterson and Thomas Calamari, both Bucks County Constables.

53. These charges were imposed after Plaintiff's bail had been reduced by a Bucks County Judge, thereby increasing the total amount required for Plaintiff's release, and the bail on these additional charges was set by Magisterial District Judge Jan Vislosky, the same judicial officer who had previously set Plaintiff's bail at $1,000,000.

54. As a result of these additional charges, Plaintiff was required to post an additional $50,000 in bail in order to obtain release from custody.

55. The timing and sequence of these additional charges had the effect of preventing Plaintiff's release from custody despite prior bail proceedings.

56. On April 20, 2022, Plaintiff was released from custody after posting the required bail.

57. Plaintiff's detention from February 3, 2022 through April 20, 2022 was the result of the cumulative bail imposed across multiple charges initiated and maintained by Defendants.

58. During this period of incarceration, Plaintiff was deprived of the ability to care for his personal affairs and suffered significant personal and financial harm.

59. Upon information and belief, Defendant Alexus Gordon Wagner participated in initiating and/or supporting the stalking and harassment allegations against Plaintiff, including providing statements relied upon by law enforcement in bringing those charges.

60. Upon information and belief, Defendant Andrew Korhonen provided statements to law enforcement that were relied upon in initiating and/or maintaining the criminal charges against Plaintiff, including the stalking and harassment allegations.

61. On or about February 8, 2022, Defendant Levittown Now / Publisher published an article concerning Plaintiff's arrest and the allegations against him.

62. The article reported statements attributed to Defendant Jeffrey Wagner and others, including allegations that Plaintiff had engaged in stalking and harassment and had been the subject of law enforcement concern.

63. Upon information and belief, the statements reported by Levittown Now were based upon information provided by Defendants and reflected the same allegations that were used to initiate and support criminal charges against Plaintiff.

64. The publication of these allegations contributed to the dissemination and reinforcement of the narrative used to justify Plaintiff's arrest, detention, and prosecution.

65. The March 22, 2022 terroristic threats charge alleged threats toward Defendant Kevin P. Wagner Sr., and the stalking, harassment, and terroristic threats allegations against Plaintiff were based on complaints involving members of the Wagner family, including Defendant Jeffrey Wagner, Defendant Alexus Gordon Wagner, and Defendant Andrew Korhonen, and arose after Plaintiff's December 11, 2021 arrest.

66. Prior to Plaintiff's December 11, 2021 arrest, Middletown Township Police Officer Edward DiFrank charged Plaintiff with trespass on church property, as reflected in Citation No. R2971210-4. The matter was later heard before Magisterial District Judge Michael Pertucci, and after Plaintiff's release from custody but prior to trial, Plaintiff was found guilty of that charge. At the hearing, Officer DiFrank testified that Plaintiff had been trespassing on church property. During subsequent discovery, Plaintiff obtained the police report for that incident, which states that Plaintiff was on school property and not on church property. Plaintiff had previously been denied access to that report. During Plaintiff's later criminal trial, Defendant Jeffrey Wagner referenced this conviction.

67. On May 17, 2024, following a jury trial, Plaintiff was acquitted of all nine (9) charges, consisting of three (3) counts of stalking, three (3) counts of harassment, two (2) counts of trespass, and one (1) count of terroristic threats.

# ADDITIONAL FACTUAL ALLEGATIONS

## SPECIFIC TO INDIVIDUAL DEFENDANTS

## KEVIN P. WAGNER SR. FACTUAL ALLEGATIONS

Defendant KEVIN P. WAGNER SR., while serving as a Bristol Township District Justice, acted outside the scope of any legitimate judicial function and instead acted as an interested private individual attempting to influence and direct investigative and prosecutorial actions involving allegations against his son Jeffrey Wagner and affiliated Wagner family members.

Plaintiff contends Defendant Kevin P. Wagner Sr. was not acting in a neutral judicial capacity but instead used the authority, influence, and relationships associated with his judicial office to improperly influence investigative decisions concerning Plaintiff.

The Affidavit of Probable Cause authored by Bristol Township Police Officer Jason Mancuso specifically states that Defendant Kevin P. Wagner Sr. communicated with the Chief of Bucks County Detectives concerning the investigation of Plaintiff and further reflects that Defendant Kevin P. Wagner Sr. represented that Bristol Township Police could handle the investigation without additional investigative resources being utilized.

Plaintiff contends Defendant Kevin P. Wagner Sr. possessed no lawful authority to direct, influence, or control investigative resource allocation relating to criminal allegations involving his own family members.

At all relevant times, Defendant Kevin P. Wagner Sr.'s son Jeffrey Wagner, Jeffrey Wagner's wife Alexus Gordon Wagner, and affiliated Wagner-family-connected individuals constituted the principal complaining witnesses against Plaintiff.

Despite these obvious conflicts of interest, Defendant Kevin P. Wagner Sr. inserted himself into investigative matters involving his own family members while simultaneously holding judicial office within Bristol Township.

Plaintiff further contends Defendant Kevin P. Wagner Sr. used his judicial status, relationships, and influence to improperly sway investigative and prosecutorial actions against Plaintiff while attempting to shield Jeffrey Wagner from allegations of false arrest and misconduct arising from the December 11, 2021 arrest of Plaintiff and Plaintiff's service dog Holly.

Forty-seven days after Plaintiff's incarceration, Bucks County Constables Joshua Peterson and Thomas Calamari accused Plaintiff of making terroristic threats toward Defendant Kevin P. Wagner Sr., resulting in additional charges being pursued through the Pennsylvania Attorney General's

Office.

Plaintiff contends these later accusations were retaliatory in nature and further part of a coordinated effort to continue Plaintiff's incarceration and prosecution.

Defendant Kevin P. Wagner Sr. previously served as a Bucks County Constable for decades while working under his brother, District Justice Robert Wagner Jr.

Plaintiff further contends the Wagner family's longstanding overlap between constable positions and judicial offices became sufficiently problematic that Bucks County later implemented directives restricting constables from serving judicial offices where immediate family members were members of the judiciary.

Upon information and belief, Defendant Kevin P. Wagner Sr. relied upon longstanding institutional relationships, family connections, judicial status, and affiliated law enforcement relationships to improperly influence investigative and prosecutorial decisions concerning Plaintiff.

Plaintiff contends Defendant Kevin P. Wagner Sr.'s actions were administrative, investigative, personal, retaliatory, or influence-based in nature rather than legitimate judicial acts and therefore fall outside the protections ordinarily associated with judicial decision-making.

## KEVIN BURNS AND NESHAMINY SCHOOL DISTRICT FACTUAL ALLEGATIONS

Defendant Kevin Burns was, at all relevant times, employed by Defendant Neshaminy School District as Chief of Security and was previously employed as a Sergeant for the Bristol Township Police Department.

During his time as a Bristol Township Police Sergeant, Defendant Kevin Burns had extensive interactions with District Justice Robert Wagner Jr. and Bucks County Constable Kevin Wagner Sr.

Upon information and belief, Defendant Kevin Burns maintained a longstanding relationship and friendship with members of the Wagner family prior to the events giving rise to this litigation.

On November 9, 2021, Defendant Kevin Burns authored and issued a written notice concerning Plaintiff's presence on Walter Miller Elementary School property.

The written notice authored by Defendant Kevin Burns did not impose a blanket prohibition barring Plaintiff from Walter Miller Elementary School property at all times and instead specifically referenced school hours and school business.

On December 11, 2021, Plaintiff was present on Walter Miller Elementary School property during non-school hours on a Saturday when no school session was taking place.

During the December 11, 2021 incident, Middletown Township Police Officer Jeffrey Wagner stated on video words to the effect of: "I just read the letter and it says you're only allowed on the property if you have school business during school hours which means you're not allowed on the property at all."

Plaintiff contends Defendant Jeffrey Wagner's interpretation directly contradicted the plain language of the November 9, 2021 notice authored by Defendant Kevin Burns.

Prior to Plaintiff's arrest, Middletown Township Police Officer John Beck reviewed the same November 9, 2021 letter and stated on video that Plaintiff was doing nothing wrong and that the letter only prohibited Plaintiff from school property during school hours unless Plaintiff had legitimate school business during those hours.

Despite Officer John Beck's interpretation and despite the plain language of the written notice itself,

Plaintiff and Plaintiff's service dog Holly were arrested and taken into custody approximately fifteen minutes later by Jeffrey Wagner and other Middletown Township officers based upon the same notice authored by Defendant Kevin Burns.

On or about December 24, 2021, Plaintiff sent written correspondence directly to Defendant Kevin Burns disputing the factual and legal basis for any claim that Plaintiff was trespassing on Walter Miller Elementary School property during non-school hours.

Within that correspondence, Plaintiff specifically advised Defendant Kevin Burns that Plaintiff had walked dogs on Walter Miller Elementary School property since approximately 1991 without incident and that numerous other community members also utilized the property during non-school hours and weekends without interference.

Plaintiff further advised Defendant Kevin Burns that school personnel, maintenance staff, local residents, and members of the community were aware of longstanding public usage of Walter Miller Elementary School property during non-school hours.

Plaintiff additionally advised Defendant Kevin Burns that Plaintiff believed he was being selectively targeted, harassed, maliciously prosecuted, and mistreated because of Wagner family influence within local law enforcement and associated institutions.

That correspondence was carbon copied to numerous officials and agencies, including Judge Jeffrey L. Finley, Judge Wallace H. Bateman, Bucks County District Attorney Matthew Weintraub, the Federal Bureau of Investigation, Judge Daniel Baranoski, Judge Cynthia Rufe of the United States District Court, Pennsylvania State Representative Tina Davis, Congressman Brian Fitzpatrick, Attorney General Josh Shapiro, and Governor Tom Wolf.

Plaintiff contends this extensive carbon copy distribution placed Defendant Kevin Burns and Defendant Neshaminy School District on broad institutional notice concerning Plaintiff's allegations of false arrest, selective enforcement, retaliatory treatment, and misuse of the November 9, 2021 notice.

Despite receiving this notice, neither Defendant Kevin Burns nor Defendant Neshaminy School District took any action whatsoever to correct, clarify, rescind, or limit the interpretation of the November 9, 2021 notice after Plaintiff's December 11, 2021 arrest.

Defendant Kevin Burns and Defendant Neshaminy School District further failed to intervene despite

being fully aware that Plaintiff was being criminally charged with trespassing based upon the November 9, 2021 notice during a Saturday when no school session was taking place.

At Plaintiff's later criminal trial, Defendant Kevin Burns testified that signs existed on Walter Miller Elementary School property prohibiting public use of the property regardless of school hours.

Plaintiff contends this testimony constituted perjury because no such signs existed and because public usage of Walter Miller Elementary School property during weekends and non-school hours had routinely occurred for decades without prohibition or enforcement against community members.

Plaintiff further contends Defendant Kevin Burns and Defendant Neshaminy School District knowingly permitted materially false interpretations of the November 9, 2021 notice to be used in support of Plaintiff's arrest, prosecution, detention, and continued criminal proceedings.

Upon information and belief, Defendant Neshaminy School District, through Defendant Kevin Burns and other authorized personnel, maintained policies, customs, practices, or deliberate indifference permitting the misuse of school property directives and selective enforcement against Plaintiff while simultaneously allowing unrestricted public use of Walter Miller Elementary School property by other individuals during non-school hours.

Plaintiff further contends Defendant Kevin Burns and Defendant Neshaminy School District failed to correct materially false interpretations and testimony even after receiving direct written notice from Plaintiff, thereby contributing to the continuation of false allegations, Plaintiff's incarceration, and the prolonged criminal prosecution against Plaintiff.

## ANDREW KORHONEN FACTUAL ALLEGATIONS

Defendant Andrew Korhonen was, at all relevant times, a Bucks County Deputy Constable.

Upon information and belief, Defendant Andrew Korhonen previously worked as a landscaper prior to becoming a Bucks County Deputy Constable.

Plaintiff contends Defendant Andrew Korhonen received his Bucks County Deputy Constable position through Wagner-family influence and connections after Defendant Andrew Korhonen's stepdaughter, Alexus Gordon Wagner, married Defendant Jeffrey Wagner, the son of District Justice Kevin P. Wagner Sr.

Plaintiff further contends Defendant Andrew Korhonen's constable appointment was directly tied to the Wagner family political and judicial influence structure existing within Bucks County.

Defendant Andrew Korhonen is the stepfather of Alexus Gordon Wagner, the wife of Defendant Jeffrey Wagner.

Defendant Jeffrey Wagner is the son of District Justice Kevin P. Wagner Sr. and the cousin of Bucks County Constable Robert Wagner III.

Plaintiff further contends Bucks County Constable Robert Wagner III sponsored, supported, or otherwise facilitated Defendant Andrew Korhonen's placement into the Bucks County constable system.

At Plaintiff's criminal trial on May 16, 2024, Defendant Andrew Korhonen testified under oath that he worked out of the District Justice office under the authority of District Justice Kevin P. Wagner Sr.

Plaintiff contends Defendant Andrew Korhonen's testimony demonstrated the unusually close relationship between Defendant Andrew Korhonen and District Justice Kevin P. Wagner Sr.

Plaintiff further contends Defendant Andrew Korhonen would act in accordance with the wishes, interests, and directives of District Justice Kevin P. Wagner Sr. because of the intertwined family, employment, and political relationships existing between the parties.

Plaintiff further contends that Defendant Andrew Korhonen's employment within a District Justice

2026 NOV 13 AM 8:13
USDC-EDPA REC'D CLERK

office connected to close family relationships created at minimum the appearance of impropriety, favoritism, and conflicted loyalties.

Plaintiff is informed and believes that Bucks County previously implemented reforms, directives, or policies intended to reduce or eliminate the longstanding appearance of impropriety associated with family-connected constables working within District Justice offices involving related judicial officials.

Plaintiff contends Defendant Andrew Korhonen's working relationship within the office of District Justice Kevin P. Wagner Sr. directly conflicted with the spirit and purpose of such reforms.

On January 29, 2022, Plaintiff was involved in a confrontation with Defendant Andrew Korhonen which Plaintiff contends constituted an assault upon Plaintiff.

Plaintiff further contends Defendant Andrew Korhonen attempted to take Plaintiff's phone during that confrontation, causing damage to the phone screen.

Plaintiff immediately contacted police following the incident and Bristol Township Police Officer Ashley McCabe responded to the scene.

The entire interaction following the incident was captured on video.

Plaintiff contends no meaningful action whatsoever was taken against Defendant Andrew Korhonen despite Plaintiff reporting the assault, the attempted taking of Plaintiff's phone, and the resulting property damage.

Plaintiff further contends that Defendant Andrew Korhonen's close ties to the Wagner family and Bucks County constable system improperly insulated him from scrutiny, accountability, and investigation.

Plaintiff further contends Defendant Andrew Korhonen acted as part of the broader retaliatory campaign directed against Plaintiff after Plaintiff accused members of the Wagner family of corruption, abuse of authority, influence peddling, and misconduct in Plaintiff's August 23, 2021 correspondence distributed to numerous governmental agencies, judges, law enforcement officials, and public officials.

Plaintiff further contends Defendant Andrew Korhonen's actions and relationships formed part of the

interconnected Wagner-family-associated network of constables, law enforcement personnel, and judicially connected individuals alleged throughout this action.

## ALEXUS GORDON WAGNER FACTUAL ALLEGATIONS

Defendant Alexus Gordon Wagner is the wife of Defendant Jeffrey Wagner and the stepdaughter of Bucks County Deputy Constable Andrew Korhonen.

Upon information and belief, Defendant Alexus Gordon Wagner was closely intertwined with the Wagner-family-connected network of constables, law enforcement personnel, and judicially connected individuals alleged throughout this action.

Defendant Alexus Gordon Wagner is the daughter of Defendant Andrew Korhonen, who Plaintiff contends received his Bucks County Deputy Constable position through Wagner-family influence and connections after Defendant Alexus Gordon Wagner married Defendant Jeffrey Wagner.

Defendant Jeffrey Wagner is the son of District Justice Kevin P. Wagner Sr. and related to Bucks County Constable Robert Wagner III.

Plaintiff contends the marriage between Defendant Alexus Gordon Wagner and Defendant Jeffrey Wagner further intertwined the Wagner family with Bucks County constable and judicial relationships already alleged throughout this action.

On February 3, 2022, Plaintiff was arrested and charged with multiple counts of stalking and harassment involving Defendant Alexus Gordon Wagner together with Defendant Jeffrey Wagner and Defendant Andrew Korhonen.

Plaintiff contends those allegations were advanced without meaningful independent investigation and were instead accepted largely upon the statements and influence of Wagner-family-connected individuals and associated persons.

Plaintiff further contends the stalking and harassment accusations advanced by Defendant Alexus Gordon Wagner substantially increased the criminal exposure faced by Plaintiff and helped insulate Defendant Jeffrey Wagner from scrutiny and accountability concerning Plaintiff's December 11, 2021 false arrest by Defendant Jeffrey Wagner.

Plaintiff contends that after Defendant Jeffrey Wagner arrested Plaintiff and Plaintiff's service dog Holly on December 11, 2021, Defendant Jeffrey Wagner, Defendant Alexus Gordon Wagner, and Defendant Andrew Korhonen collectively advanced allegations portraying Plaintiff as a stalker and harasser in order to protect Defendant Jeffrey Wagner's career and shield him from consequences

arising from the December 11, 2021 arrest.

Plaintiff further contends Defendant Alexus Gordon Wagner knowingly participated in advancing false or exaggerated allegations against Plaintiff in order to protect her then-fiancé, Defendant Jeffrey Wagner.

At Plaintiff's criminal trial on May 17, 2024, Plaintiff was acquitted of all charges submitted to the jury, including stalking, harassment, trespassing, and terroristic threats allegations.

Plaintiff contends the allegations advanced by Defendant Alexus Gordon Wagner formed part of a retaliatory effort directed against Plaintiff after Plaintiff publicly accused the Wagner family of corruption, abuse of authority, influence peddling, favoritism, and institutional misconduct in Plaintiff's August 23, 2021 correspondence distributed to numerous governmental agencies, judges, and public officials.

Plaintiff further contends the allegations involving Defendant Alexus Gordon Wagner were improperly amplified and legitimized through the Wagner family's close relationships with constables, police officers, District Justice offices, and affiliated Bucks County institutional actors.

Plaintiff contends Defendant Alexus Gordon Wagner benefited from preferential treatment and institutional favoritism because allegations connected to Defendant Alexus Gordon Wagner were treated as presumptively credible by law enforcement personnel despite substantial contradictions, motive issues, and exculpatory evidence existing throughout the investigation and prosecution.

Plaintiff further contends Defendant Alexus Gordon Wagner participated in or benefited from the continuation of the false narrative that Plaintiff constituted a dangerous stalker or threat despite contradictory evidence, video evidence, conflicting police accounts, and Plaintiff's eventual acquittal.

Plaintiff contends Defendant Alexus Gordon Wagner's allegations contributed directly to Plaintiff's incarceration on 1 million bail, prolonged criminal prosecution, reputational damage, financial harm, emotional distress, and the death of Plaintiff's service dog Holly while Plaintiff remained incarcerated.

Plaintiff further contends Defendant Alexus Gordon Wagner's role in the underlying allegations cannot reasonably be separated from the broader Wagner-family network of law enforcement, constable, and judicial relationships alleged throughout this action.

## JOSHUA PETERSON AND THOMAS CALAMARI FACTUAL ALLEGATIONS

Defendants Joshua Peterson and Thomas Calamari were, at all relevant times, Bucks County Constables involved in the transport of Plaintiff to Bucks County Prison following Plaintiff's February 3, 2022 arrest.

Defendants Joshua Peterson and Thomas Calamari were associated with the Bucks County constable system alleged throughout this action to maintain longstanding institutional, political, and family-connected relationships with members of the Wagner family and related judicial offices.

On February 3, 2022, Plaintiff was transported to Bucks County Prison by Defendants Joshua Peterson and Thomas Calamari following Plaintiff's arrest on stalking and harassment allegations involving members of the Wagner family and associated individuals.

Plaintiff contends that during the transport to Bucks County Prison, Defendants Joshua Peterson and Thomas Calamari later falsely alleged that Plaintiff made terroristic threats toward District Justice Kevin P. Wagner Sr.

Plaintiff further contends these allegations were knowingly false and were manufactured in order to substantially increase Plaintiff's criminal exposure, increase Plaintiff's bail, strengthen the prosecution against Plaintiff, and further insulate the Wagner family from scrutiny concerning Plaintiff's allegations of corruption and false arrest.

Notably, the terroristic threat charges were not filed contemporaneously with the February 3, 2022 transport but instead were brought 47 days later.

Plaintiff contends the 47-day delay between the alleged transport statements and the filing of terroristic threat charges substantially undermines the credibility and legitimacy of the allegations asserted by Defendants Joshua Peterson and Thomas Calamari.

Plaintiff further contends that if Plaintiff had truly made legitimate terroristic threats against an elected judicial official during custodial transport, such allegations would reasonably have resulted in immediate charging action rather than a delay of exactly 47 days.

The terroristic threat allegations substantially increased Plaintiff's bail by an additional $50,000 and materially reduced Plaintiff's ability to secure release from incarceration prior to trial.

Plaintiff further contends the addition of terroristic threat allegations against an elected official created the mechanism through which the Pennsylvania Attorney General's Office later became involved in the prosecution.

Plaintiff contends the involvement of the Pennsylvania Attorney General's Office elevated the prosecution from the county level to a substantially more powerful and institutionally protected prosecutorial structure.

Plaintiff further contends the practical effect of the allegations advanced by Defendants Joshua Peterson and Thomas Calamari was to provide the Wagner family and associated individuals with access to a more sophisticated and better-resourced prosecutorial apparatus.

During the transport to Bucks County Prison, Plaintiff contends he was forced to sit in urine left by another occupant of the transport vehicle.

Plaintiff contends the transport seating area consisted of a hard fiberglass surface where liquid would simply remain pooled rather than absorb.

Plaintiff further contends Defendants Joshua Peterson and Thomas Calamari laughed while Plaintiff sat in the urine and arrived at Bucks County Prison with urine covering portions of Plaintiff's clothing.

Upon arrival at Bucks County Prison, Plaintiff contends Defendants Joshua Peterson and Thomas Calamari laughed and stated words to the effect that they were going to give Plaintiff a "hard rollout."

Plaintiff testified under oath concerning the "hard rollout" statement during Plaintiff's criminal proceedings on May 17, 2024.

Plaintiff further contends the testimony concerning the "hard rollout" statement was not challenged or disputed in any way by Senior Deputy Attorney General Thomas Ost-Prisco during the proceedings.

Plaintiff additionally testified under oath that District Justice Robert Wagner Jr. would prohibit family members or loved ones from transporting individuals directly to Bucks County Prison and

would instead require constable transport.

Plaintiff contends this practice functioned to generate and preserve income opportunities for Bucks County constables associated with District Justice offices connected to the Wagner family.

Plaintiff further testified under oath that the Bucks County constable system maintained loyalty toward the Wagner family because the Wagner family's judicial influence and institutional practices directly benefited constables financially.

Plaintiff contends the terroristic threat allegations formed part of the broader retaliatory campaign directed against Plaintiff after Plaintiff publicly accused members of the Wagner family of corruption, abuse of authority, favoritism, influence peddling, and misconduct.

Plaintiff further contends Defendants Joshua Peterson and Thomas Calamari acted in concert with the broader Wagner-family-associated network of constables, law enforcement personnel, judicially connected individuals, and affiliated institutional actors alleged throughout this action.

Plaintiff further contends the allegations advanced by Defendants Joshua Peterson and Thomas Calamari directly contributed to Plaintiff's prolonged incarceration, increased bail, emotional distress, financial harm, reputational damage, and the death of Plaintiff's service dog Holly while Plaintiff remained incarcerated on 1 million bail.

## BUCKS COUNTY FACTUAL ALLEGATIONS

Defendant BUCKS COUNTY, through its prosecutors, detectives, policymakers, and affiliated law enforcement personnel, continued the prosecution of Plaintiff despite possessing information demonstrating material inconsistencies and contradictions in the underlying allegations.

Upon information and belief, Bucks County personnel were aware that Middletown Township Police Officer John Beck had responded to the scene on December 11, 2021, reviewed the written notice concerning Plaintiff's presence on school property, and declined to charge Plaintiff with trespass after stating on video that the notice applied only during school hours.

Despite this knowledge, Bucks County personnel continued to rely upon and advance allegations that Plaintiff had been unlawfully present on school property on December 11, 2021.

Defendant Jeffrey Wagner's subsequent statements and testimony concerning the events of December 11, 2021 materially conflicted with prior sworn written statements contained in the Affidavit of Probable Cause and related incident reports provided to Bristol Township Police Officer Jason Mancuso.

Upon information and belief, these conflicts included contradictory accounts regarding whether Officer John Beck had informed Defendant Jeffrey Wagner that Plaintiff was trespassing and whether Plaintiff had previously been identified or contacted prior to Defendant Jeffrey Wagner's arrival on scene.

Despite these material inconsistencies, Bucks County personnel failed to conduct a meaningful investigation into the conflicting statements and continued the prosecution of Plaintiff through trial.

Upon information and belief, Bucks County's failure to investigate or correct materially conflicting evidence contributed to the continuation of false allegations, Plaintiff's detention, and the prolonged prosecution against Plaintiff.

Federal civil action 26-1050 was filed on February 13, 2026. Following the filing of that action, the Bucks County Sheriff's Office dramatically increased the service costs being charged to Plaintiff in connection with service upon Wagner family members and other defendants associated with this litigation.

Plaintiff was charged nearly double the amounts previously charged by the Bucks County Sheriff's
Plaintiff was charged nearly double the amounts previously charged by the Bucks County Sheriff's

Office for service upon other individuals, including Congressman Brian Fitzpatrick, Judge Wallace Bateman, Judge Jeffrey Finley, and additional defendants previously served through the same Sheriff's Office.

Plaintiff has already advised the Court in detail regarding these increased and unusual service costs and has filed requests for extension of time concerning service based upon the financial and procedural burdens imposed by Bucks County in connection with this litigation.

Plaintiff contends the substantially increased service costs imposed in connection with service upon Wagner family members and related defendants demonstrate continued obstruction and hindrance concerning Plaintiff's ability to prosecute this federal civil action for no legitimate governmental purpose.

## BUCKS COUNTY DISTRICT ATTORNEY'S OFFICE FACTUAL ALLEGATIONS

Defendant BUCKS COUNTY DISTRICT ATTORNEY'S OFFICE, through its prosecutors, detectives, policymakers, and affiliated personnel, possessed extensive prior notice concerning Plaintiff's allegations of misconduct, false arrest, selective enforcement, and preferential treatment involving members of the Wagner family and associated law enforcement personnel prior to and during the criminal proceedings against Plaintiff.

On or about January 20, 2022, Plaintiff sent written correspondence directly to Bucks County District Attorney Matthew Weintraub detailing allegations of misconduct involving Middletown Township Police Officer Jeffrey Wagner, Bristol Township Police personnel, and associated individuals connected to the Wagner family.

In that correspondence, Plaintiff specifically advised Matthew Weintraub that Plaintiff had repeatedly attempted to obtain assistance from agencies and officials concerning ongoing mistreatment and selective enforcement directed toward Plaintiff over a period exceeding a decade.

Plaintiff further advised Matthew Weintraub that the failure of agencies and officials to intervene had allowed increasingly dangerous and egregious conduct to continue unchecked.

Within that same correspondence, Plaintiff specifically described the events surrounding Plaintiff's December 11, 2021 arrest and stated that Middletown Township Police Officer Jeffrey Wagner had enlisted multiple officers to participate in Plaintiff's arrest despite the absence of probable cause and despite Plaintiff possessing video evidence concerning the incident.

Plaintiff further advised Matthew Weintraub that Plaintiff had not been advised of Miranda rights during the arrest, that personal property had not been returned, and that Plaintiff's disability status had been disregarded during the incident.

Plaintiff additionally advised Matthew Weintraub that Plaintiff possessed video evidence depicting an officer with firearm drawn during the arrest of Plaintiff, a disabled individual walking his service dog Holly.

The January 20, 2022 correspondence further advised Matthew Weintraub that Plaintiff believed Bucks County officials were taking steps to "Circle the Wagons" in order to protect Jeffrey Wagner from accountability concerning false arrest and false imprisonment allegations.

Plaintiff further advised Matthew Weintraub that Plaintiff had been warned by neighbors, associates, and individuals familiar with Bucks County law enforcement and Wagner family influence that once Plaintiff publicly accused Jeffrey Wagner of false arrest and misconduct, additional criminal allegations and escalating retaliatory actions would likely follow in order to discredit Plaintiff and undermine Plaintiff's credibility.

Plaintiff further contends that after Plaintiff complained regarding the December 11, 2021 arrest, the exact escalation Plaintiff warned about ultimately occurred, including stalking charges, harassment charges, terroristic threats allegations, prolonged incarceration, and exposure to decades of potential imprisonment.

Plaintiff further asserted within that correspondence that disciplinary or corrective action against Jeffrey Wagner was being avoided because of Jeffrey Wagner's familial and institutional connections within Bucks County and local law enforcement agencies.

Plaintiff additionally referenced prior incidents involving Bristol Township Police officers refusing to pursue harassment complaints made by Plaintiff despite video evidence supporting Plaintiff's claims while simultaneously initiating charges against Plaintiff based solely upon accusations made by others.

The January 20, 2022 correspondence was disseminated to numerous additional officials and agencies through an extensive carbon copy distribution list, including members of the judiciary, federal agencies, elected officials, media organizations, and law enforcement agencies.

Those copied on the correspondence included Judge Jeffrey L. Finley, Special Agent in Charge Michael Driscoll, Judge Daniel Baranoski, Judge Cynthia Rufe of the United States District Court, the Federal Bureau of Investigation in Trenton, Attorney General Josh Shapiro, Governor Tom Wolf, Judge Michael W. Pertucci, Judge Terry Hughes, members of the Pennsylvania legislature, Congressman Brian Fitzpatrick, and multiple national media organizations.

Plaintiff contends this extensive distribution provided broad institutional notice concerning Plaintiff's allegations of misconduct, false arrest, preferential treatment, retaliatory conduct, and selective enforcement involving the Wagner family and associated law enforcement personnel.

Despite possessing this extensive prior notice, Defendant BUCKS COUNTY DISTRICT

ATTORNEY'S OFFICE continued the prosecution of Plaintiff and failed to intervene, investigate, or correct materially conflicting evidence surrounding Plaintiff's arrest and subsequent criminal charges.

Upon information and belief, prosecutors and affiliated personnel within the Bucks County District Attorney's Office were aware that Middletown Township Police Officer John Beck had reviewed the November 9, 2021 letter authored by Kevin Burns and stated on video that Plaintiff was not violating the directive and was not trespassing on school property during the December 11, 2021 incident.

Approximately fifteen minutes later, Plaintiff and Plaintiff's service dog Holly were arrested and taken into custody by Jeffrey Wagner and other Middletown Township officers based upon the same written notice previously reviewed by Officer John Beck.

The direct contradiction between Officer John Beck's on-scene assessment that Plaintiff was not violating any law or directive and the subsequent actions taken by Jeffrey Wagner and other officers provided clear notice from the onset of the December 11, 2021 incident that materially conflicting interpretations and enforcement actions existed concerning Plaintiff's presence on school property.

Despite possessing access to these materially contradictory facts and circumstances from the beginning of the criminal proceedings, Defendant BUCKS COUNTY DISTRICT ATTORNEY'S OFFICE chose to continue pursuing and maintaining criminal charges against Plaintiff arising from the December 11, 2021 incident.

Defendant Jeffrey Wagner's subsequent statements and testimony concerning the events of December 11, 2021 materially conflicted with prior sworn written statements contained in the Affidavit of Probable Cause and related incident reports provided to Bristol Township Police Officer Jason Mancuso.

Upon information and belief, these conflicts included contradictory accounts regarding whether Officer John Beck had informed Jeffrey Wagner that Plaintiff was trespassing and whether Plaintiff had previously been identified or contacted prior to Jeffrey Wagner's arrival on scene.

Despite these material inconsistencies, Bucks County personnel failed to conduct a meaningful investigation into the conflicting statements and continued the prosecution of Plaintiff through trial.

Upon information and belief, Bucks County's failure to investigate or correct materially conflicting evidence contributed to the continuation of false allegations, Plaintiff's detention, Plaintiff's

incarceration on 1 million bail, the death of Plaintiff's service dog Holly while Plaintiff remained incarcerated, and the prolonged prosecution against Plaintiff.

USDC-EDPA RECD CLERK
2026 NOV 13 PM 3:19

## LEVITTOWN NOW / PUBLISHER FACTUAL ALLEGATIONS

Defendant LEVITTOWN NOW is an online news publisher operating within Bucks County, Pennsylvania.

Defendant LEVITTOWN NOW published and continued to maintain articles and publications concerning Plaintiff and the criminal allegations asserted against Plaintiff by members of the Wagner family, affiliated individuals, and various law enforcement officers.

Those publications included assertions or implications that Plaintiff stalked, harassed, or otherwise criminally targeted a judge, police officer, constable, and associated individuals.

Plaintiff contends the publications relied heavily upon allegations advanced by individuals closely associated with the Wagner family and law enforcement personnel despite substantial contradictions and exculpatory information existing from the onset of the underlying criminal allegations.

At the time Defendant LEVITTOWN NOW continued maintaining and distributing such publications, substantial evidence existed demonstrating material conflicts and inconsistencies in the underlying allegations against Plaintiff.

Such evidence included, but was not limited to, video evidence of Middletown Township Police Officer John Beck stating that Plaintiff was not trespassing on Walter Miller Elementary School property on December 11, 2021.

Additional contradictory evidence included the November 8, 2021 incident report authored by Defendant Edward DiFrank, which repeatedly placed Plaintiff on Walter Miller Elementary School property while Plaintiff was nevertheless later convicted of trespassing on adjacent church property.

Plaintiff further contends Defendant Jeffrey Wagner later materially misrepresented that prior conviction at Plaintiff's criminal trial by falsely testifying under oath that Plaintiff had previously been cited for trespassing on school property.

Plaintiff contends these contradictions and inconsistencies were material because they directly concerned the core narrative repeatedly advanced against Plaintiff concerning alleged trespassing, stalking, harassment, and dangerousness.

Plaintiff further contends that despite these substantial contradictions, Defendant LEVITTOWN

NOW continued maintaining publications conveying or implying Plaintiff's guilt without correction, clarification, contextualization, or meaningful reference to the materially contradictory evidence.

On May 17, 2024, Plaintiff was acquitted by a jury of all charges submitted to the jury, including stalking, harassment, trespass, and terroristic threats allegations.

Despite Plaintiff's acquittal on all charges submitted to the jury, Defendant LEVITTOWN NOW continued maintaining public articles and publications concerning Plaintiff without adequately reflecting Plaintiff's acquittal and the substantial contradictions contained within the underlying police reports, testimony, and video evidence.

Plaintiff further contends that the continued maintenance, republication, redistribution, promotion, updating, metadata modification, or renewed dissemination of such publications after Plaintiff's acquittal caused continuing reputational harm to Plaintiff.

Plaintiff further contends that the publications damaged Plaintiff's standing within the community by continuing to associate Plaintiff with allegations of stalking, harassment, trespassing, and threats despite the acquittal and despite the existence of substantial exculpatory and contradictory evidence.

Plaintiff further contends that LEVITTOWN NOW possessed the ability to update, clarify, contextualize, or otherwise modify the publications after Plaintiff's acquittal and after the emergence of contradictory evidence but failed to do so.

Plaintiff further contends that the continued dissemination of the publications contributed to the continuation of a false narrative originally advanced by Wagner-family-associated individuals and law enforcement personnel.

These allegations are pled narrowly and independently so as not to alter or expand the core constitutional claims asserted against the governmental Defendants and are included to preserve Plaintiff's rights pending discovery concerning republication, editorial control, communications, sourcing, and continued dissemination practices.

## JEFFREY WAGNER FACTUAL ALLEGATIONS

Defendant Jeffrey Wagner was, at all relevant times, employed as a Middletown Township Police Officer and is the son of District Justice Kevin P. Wagner Sr.

Prior to Plaintiff's December 11, 2021 arrest, Plaintiff had repeatedly accused members of the Wagner family of corruption, favoritism, abuse of authority, influence peddling, and retaliatory misconduct within Bucks County institutions and law enforcement.

On or about August 23, 2021, Plaintiff authored and distributed written correspondence to District Court Judge John J. Kelly Jr. and numerous additional officials and agencies stating, among other things, that Plaintiff believed members of the Wagner family should be investigated and prosecuted under the RICO Act.

Within that correspondence, Plaintiff accused the Wagner family of constituting a self-entitled, influence-peddling, self-enriching criminal organization that utilized political influence, institutional relationships, and favoritism to shield family members and associates from accountability.

That correspondence was distributed to numerous officials and agencies including Judge Jeffrey Finley, Judge Wallace Bateman, Bucks County District Attorney Matthew Weintraub, the Federal Bureau of Investigation, Judge Daniel Baranoski, Judge Cynthia Rufe of the United States District Court, Pennsylvania State Representative Tina Davis, Congressman Brian Fitzpatrick, Attorney General Josh Shapiro, and Governor Tom Wolf.

Plaintiff contends the widespread distribution of this correspondence placed the Wagner family and affiliated Bucks County individuals on notice that Plaintiff was openly accusing the Wagner family of corruption and abuse of power.

At Plaintiff's later criminal trial, testimony established that District Court employee Melanie Chesko provided documents authored by Plaintiff to authorities in support of criminal allegations against Plaintiff concerning stalking and harassment.

Those documents included photographs taken by Plaintiff from a public street depicting residences, vehicles, and conditions visible to any passing member of the public.

Plaintiff contends those photographs did not constitute criminal conduct, unlawful surveillance, trespass, stalking, harassment, or any other criminal offense whatsoever.

Plaintiff further contends those otherwise lawful photographs were transformed by Wagner family influence and institutional relationships into allegations of stalking and harassment in retaliation for Plaintiff exposing and criticizing the Wagner family publicly.

Plaintiff further contends Melanie Chesko provided those documents to Bucks County Constable Robert Chesko, who in turn provided the documents and information to Kevin P. Wagner Sr. and additional Wagner family members prior to Plaintiff's December 11, 2021 arrest.

Upon information and belief, members of the Bucks County constable system, including Robert Chesko and associated constables, maintained longstanding interconnected personal and professional relationships with the Wagner family and were institutionally indebted to the Wagner family through constable assignments, non-essential court tasks, and related financial opportunities provided through District Justice offices associated with Robert Wagner Jr. and Kevin P. Wagner Sr.

Plaintiff contends Defendant Jeffrey Wagner was fully aware of Plaintiff's accusations against the Wagner family prior to December 11, 2021 and acted with retaliatory motive when arresting Plaintiff and Plaintiff's service dog Holly on Walter Miller Elementary School property.

Plaintiff further contends Defendant Jeffrey Wagner was specifically aware of Plaintiff's accusations that Defendant Jeffrey Wagner routinely parked his patrol vehicle at his personal residence during midnight shifts and remained inside his residence for extended periods of time instead of actively performing patrol duties.

Plaintiff further contends these accusations concerning Defendant Jeffrey Wagner's on-duty conduct and use of his patrol vehicle were discussed openly within the neighborhood and were repeatedly communicated by Plaintiff to law enforcement personnel prior to December 11, 2021.

Plaintiff further contends police logs, patrol records, dispatch records, GPS records, and related discovery materials will demonstrate the validity of Plaintiff's accusations concerning Defendant Jeffrey Wagner's patrol activities and extended presence at his personal residence while on duty.

On November 9, 2021, Kevin Burns authored and issued written correspondence concerning Plaintiff's presence on Walter Miller Elementary School property.

That letter specifically stated in relevant part:

"Please be advised that no one is permitted on the property except for school business during school hours."

The November 9, 2021 letter further referenced Plaintiff parking on school property "during school hours" and did not impose a blanket prohibition against Plaintiff being present on school property during weekends, evenings, holidays, or other non-school hours.

The November 9, 2021 letter was carbon copied to Middletown Township Police and Troy Bodolus, the principal of Walter Miller Elementary School, thereby placing school and police personnel on notice of the actual contents and limitations of the letter prior to Plaintiff's December 11, 2021 arrest.

On December 11, 2021, Plaintiff was present on Walter Miller Elementary School property during non-school hours on a Saturday when no school session was taking place.

Prior to Defendant Jeffrey Wagner's arrival, Middletown Township Police Officer John Beck had already reviewed the November 9, 2021 letter authored by Kevin Burns and stated on video that Plaintiff was doing nothing wrong and was not trespassing.

Officer John Beck further stated on video that the November 9, 2021 letter only prohibited Plaintiff from school property during school hours unless Plaintiff had legitimate school business during those hours.

Despite Officer John Beck's interpretation of the letter and despite the fact that no school session was occurring, Defendant Jeffrey Wagner arrived on scene and interpreted the same letter in a completely contradictory manner.

Defendant Jeffrey Wagner stated on video: "I just read the letter and it says you're only allowed on the property if you have school business during school hours which means you're not allowed on the property at all."

Plaintiff contends this interpretation was knowingly false, directly contradicted the plain language of the November 9, 2021 letter, and demonstrated Defendant Jeffrey Wagner's complete disregard for legal standards, constitutional protections, and objective interpretation of the written notice.

Plaintiff further contends Defendant Jeffrey Wagner's actions on December 11, 2021 were motivated by retaliation against Plaintiff for publicly accusing the Wagner family of corruption, favoritism, influence peddling, and criminal misconduct months earlier.

Despite the absence of any lawful basis for arrest, Defendant Jeffrey Wagner proceeded to arrest Plaintiff and take Plaintiff's service dog Holly into custody.

Plaintiff contends Defendant Jeffrey Wagner acted as though his family name and institutional connections entitled him to disregard the law and retaliate against Plaintiff without consequence.

Defendant Jeffrey Wagner was assisted and supported by Sergeant Michael Lubold, Defendant DOE OFFICER 1, Defendant DOE OFFICER 2, and additional Middletown Township officers who took no action whatsoever to prevent Plaintiff's unlawful arrest despite Officer John Beck's prior determination that Plaintiff had committed no violation.

One of the responding officers approached Plaintiff with firearm drawn despite Plaintiff being a disabled individual walking his service dog on public school property during non-school hours.

Plaintiff further contends the collective actions of Defendant Jeffrey Wagner and the assisting officers demonstrated coordinated retaliatory conduct designed to intimidate, punish, and "teach Plaintiff a lesson" for publicly exposing and criticizing the Wagner family and their institutional relationships within Bucks County.

Defendant Jeffrey Wagner later provided statements and testimony concerning the December 11, 2021 incident that materially conflicted with prior statements, police documentation, video evidence, and the actions previously taken by Officer John Beck.

At Plaintiff's criminal trial on May 16, 2024, Defendant Jeffrey Wagner testified under oath that he responded to Walter Miller Elementary School after hearing over police radio from a "floater car" that a suspicious vehicle was present on school property.

Plaintiff contends this sworn testimony materially conflicted with prior representations and further demonstrated Defendant Jeffrey Wagner's willingness to provide false and contradictory accounts in order to justify Plaintiff's arrest and prosecution.

Plaintiff further contends Defendant Jeffrey Wagner's retaliatory conduct directly contributed to

Plaintiff's false arrest, incarceration, financial harm, reputational harm, physical injuries, emotional distress, prolonged prosecution, and the death of Plaintiff's service dog Holly while Plaintiff remained incarcerated on 1 million bail.

## MICHAEL LUBOLD FACTUAL ALLEGATIONS

Defendant MICHAEL LUBOLD, a Middletown Township Police Sergeant and supervising officer, participated in the December 11, 2021 arrest of Plaintiff and Plaintiff's service dog, Holly, and acted in concert with other Defendants to advance and rely upon fabricated allegations.

During the December 11, 2021 incident, Plaintiff informed Defendant Michael Lubold that Middletown Township Police Officer John Beck had already responded to the scene, reviewed the written notice concerning Plaintiff's presence on school property, and cleared Plaintiff of any wrongdoing.

In response, Defendant Michael Lubold acknowledged on video that Officer John Beck had previously been on scene and had departed without taking enforcement action against Plaintiff.

The events of Plaintiff's detention and arrest were captured on video, including portions introduced at trial as Commonwealth Exhibit C5.

Throughout the encounter and arrest, Defendant Michael Lubold failed to instruct officers to advise Plaintiff of his Miranda rights prior to questioning and custodial detention.

Instead, during Plaintiff's request that any citation simply be mailed to him, Defendant Michael Lubold stated, "No, you've been told," referring to the same Neshaminy School District notice that Officer John Beck had just reviewed on video and interpreted as applying only during school hours.

Despite knowledge that Officer John Beck had interpreted the notice as not prohibiting Plaintiff's presence on school property during non-school hours, Defendant Michael Lubold participated in Plaintiff's arrest and detention based upon a materially false interpretation of that written notice.

Upon information and belief, Defendant Michael Lubold knowingly permitted the continuation of enforcement actions against Plaintiff despite contemporaneous contradictory statements made by responding officers at the scene.

## DOE OFFICER 1 FACTUAL ALLEGATIONS

Defendant DOE OFFICER 1, a Middletown Township Police Officer, participated in the December 11, 2021 arrest of Plaintiff and Plaintiff's service dog, Holly, and acted in concert with other Defendants to advance and rely upon fabricated allegations.

During the December 11, 2021 incident, Defendant DOE OFFICER 1 is visible on video with his service weapon drawn and positioned underneath his jacket during the encounter with Plaintiff.

Upon information and belief, Defendant DOE OFFICER 1 maintained his firearm in a drawn condition for an extended period of time during the detention and arrest of Plaintiff despite the absence of any threatening conduct by Plaintiff.

Defendant DOE OFFICER 1 is further visible on video yelling at Plaintiff when Plaintiff repeatedly requested clarification regarding what was occurring and why Plaintiff was being detained.

Defendant DOE OFFICER 1 participated in discussions, detention decisions, and the ultimate arrest of Plaintiff on December 11, 2021 based upon a written notice that restricted Plaintiff from school property only during school hours.

Despite contemporaneous statements by Officer John Beck indicating that Plaintiff was not violating the written notice during non-school hours, and despite knowing that Officer Beck had only minutes earlier cleared Plaintiff of any wrongdoing, Defendant DOE OFFICER 1 continued participating in the escalation, detention, and arrest of Plaintiff.

Upon information and belief, Defendant DOE OFFICER 1 knowingly participated in enforcement actions against Plaintiff despite contradictory statements made at the scene regarding the meaning and applicability of the written notice relied upon by officers.

## DOE OFFICER 2 FACTUAL ALLEGATIONS

Defendant DOE OFFICER 2, a Middletown Township Police Officer, participated in the December 11, 2021 arrest of Plaintiff and Plaintiff's service dog, Holly, and acted in concert with other Defendants to advance and rely upon fabricated allegations.

During the December 11, 2021 incident, Defendant DOE OFFICER 2 is visible on video participating in the detention and arrest of Plaintiff.

Defendant DOE OFFICER 2 is further visible on video taking possession of an expensive pocket knife belonging to Plaintiff during the arrest process. The property was never returned to Plaintiff.

Following the seizure of Plaintiff's property, Plaintiff wrote to authorities including the Bucks County District Attorney's Office and the Middletown Township Chief of Police regarding the seizure and non-return of the pocket knife.

Defendant DOE OFFICER 2 is further visible on video refusing to identify himself after Plaintiff repeatedly requested the officer's name during the detention and arrest.

Defendant DOE OFFICER 2 participated in discussions, detention decisions, and the ultimate arrest of Plaintiff on December 11, 2021 based upon a written notice that restricted Plaintiff from school property only during school hours.

Despite contemporaneous statements by Officer John Beck indicating that Plaintiff was not violating the written notice during non-school hours, and despite knowing that Officer Beck had only minutes earlier cleared Plaintiff of any wrongdoing, Defendant DOE OFFICER 2 continued participating in the escalation, detention, and arrest of Plaintiff.

Upon information and belief, Defendant DOE OFFICER 2 knowingly participated in enforcement actions against Plaintiff despite contradictory statements made at the scene regarding the meaning and applicability of the written notice relied upon by officers.

## JOHN BECK FACTUAL ALLEGATIONS

Defendant JOHN BECK, a Middletown Township Police Officer later promoted to Detective, arrived at the scene involving Plaintiff on December 11, 2021 at approximately 11:20 a.m. The entire encounter between Defendant John Beck and Plaintiff was captured on video.

During the encounter, Defendant John Beck reviewed the November 9, 2021 written notice authored by Kevin Burns concerning Plaintiff's presence on school property.

Defendant John Beck stated on video words to the effect that Plaintiff was doing nothing wrong and that the written notice only prohibited Plaintiff from school property during school hours unless Plaintiff had legitimate school business during those hours.

December 11, 2021 was a Saturday and no school was in session at the time of Defendant John Beck's encounter with Plaintiff.

Defendant John Beck further stated on video that Plaintiff was not violating any statute, criminal law, or directive associated with the November 9, 2021 notice authored by Kevin Burns.

Approximately fifteen minutes later, Plaintiff and Plaintiff's service dog Holly were detained and arrested by Defendant Jeffrey Wagner, Defendant Michael Lubold, Defendant DOE OFFICER 1, and Defendant DOE OFFICER 2 based upon the same written notice previously reviewed by Defendant John Beck.

Defendant John Beck was aware that Plaintiff had been arrested shortly after Defendant John Beck departed the scene.

Despite possessing direct personal knowledge that Plaintiff had not violated the written notice or committed trespass during Defendant John Beck's interaction with Plaintiff, Defendant John Beck never came forward to correct the record, intervene, or rectify the contradictory enforcement actions taken by other Middletown Township officers.

Instead, Defendant John Beck allowed the arrest, prosecution, and continuation of criminal allegations against Plaintiff to proceed despite possessing exculpatory information directly contradicting the allegations used to justify Plaintiff's arrest.

Defendant John Beck was further placed on notice of the false arrest allegations and conflicting

actions of Middletown Township Police through Plaintiff's federal civil action at E.D. Pa. case 23-4879, which specifically addressed the events surrounding the December 11, 2021 arrest.

Despite this additional notice, Defendant John Beck still failed to take any corrective action, clarify the factual record, or intervene concerning the continuation of criminal proceedings against Plaintiff.

Instead, Defendant John Beck allowed the charges against Plaintiff to proceed through Plaintiff's criminal trial, which concluded on May 17, 2024 with Plaintiff being found not guilty on all nine charges, including stalking, harassment, trespass, and terroristic threats charges.

Plaintiff further contends Defendant John Beck's later promotion to Detective demonstrates that Middletown Township supervisors and policymakers regarded Defendant John Beck as a competent and credible officer while simultaneously ignoring or disregarding the materially contradictory actions and statements surrounding Plaintiff's arrest and prosecution.

Defendant John Beck was further aware during his interaction with Plaintiff that Plaintiff was actively making complaints concerning what Plaintiff believed to be preferential treatment and misconduct involving Defendant Jeffrey Wagner.

During the recorded interaction, Plaintiff stated words to the effect of, "Why don't you investigate why Kevin Wagner Jr. can back the police car into the driveway on midnights and stay in his house for hours directly across the street from his father's house."

Plaintiff mistakenly identified the officer as "Kevin Wagner Jr." when Plaintiff was in fact referring to Defendant Jeffrey Wagner.

It was well known throughout Plaintiff's neighborhood that Defendant Jeffrey Wagner allegedly parked his Middletown Township patrol vehicle at his personal residence during midnight shifts and remained inside the residence for extended periods of time while on duty.

Associates and neighbors familiar with the area had previously discussed this conduct with Plaintiff prior to the December 11, 2021 incident.

Prior to the December 11, 2021 encounter involving Defendant John Beck, Plaintiff had made substantially similar statements to Middletown Township Police Officer Megan Logan Freer during a separate recorded interaction while Plaintiff was walking his service dog Holly on Walter Miller Elementary School property.

During that prior recorded interaction, Officer Megan Logan Freer responded words to the effect of, "We don't have a Kevin Wagner Jr. working midnights," despite understanding Plaintiff was referring to Defendant Jeffrey Wagner.

During the December 11, 2021 interaction involving Defendant John Beck, Defendant John Beck similarly reacted to Plaintiff's mistaken identification of Defendant Jeffrey Wagner and appeared to smirk while making comments similar in substance to those previously made by Officer Megan Logan Freer.

Plaintiff contends these interactions demonstrate that Middletown Township officers understood Plaintiff was making repeated complaints concerning Defendant Jeffrey Wagner's alleged on-duty conduct and perceived preferential treatment within the department.

Upon information and belief, Defendant John Beck notified Defendant Jeffrey Wagner that Plaintiff was present on Walter Miller Elementary School property prior to Defendant Jeffrey Wagner's arrival at the scene.

Plaintiff further contends Defendant John Beck was not a neutral bystander to the events of December 11, 2021 but instead was an integral participant in the chain of events that resulted in the arrest of Plaintiff and Plaintiff's service dog Holly and the subsequent prosecution of Plaintiff despite Defendant John Beck's direct knowledge that Plaintiff had not violated the written notice authored by Kevin Burns.

## JASON MANCUSO FACTUAL ALLEGATIONS

Defendant Jason Mancuso was, at all relevant times, employed as a Bristol Township Police Officer and participated directly in the investigation and charging decisions concerning Plaintiff arising from the events following Plaintiff's December 11, 2021 arrest.

Upon information and belief, Defendant Jason Mancuso conducted little to no meaningful independent investigation prior to initiating stalking, harassment, and related criminal charges against Plaintiff on February 3, 2022.

Instead, Defendant Jason Mancuso relied primarily and substantially upon statements provided by members of the Wagner family and associated individuals despite obvious motive, bias, personal relationships, and materially contradictory evidence already known or readily available to law enforcement.

The Affidavit of Probable Cause and related incident documentation prepared or relied upon by Defendant Jason Mancuso contained statements attributed to Middletown Township Police Officer Jeffrey Wagner concerning the events of December 11, 2021.

Plaintiff contends Defendant Jeffrey Wagner made false statements to authorities regarding Plaintiff's alleged trespassing on Walter Miller Elementary School property on December 11, 2021.

Those false statements were contradicted by Middletown Township Police Officer John Beck, who had responded to the scene prior to Jeffrey Wagner and who stated on video that Plaintiff was not trespassing and was not violating the November 9, 2021 letter authored by Kevin Burns because the incident occurred during non-school hours on a Saturday.

Despite the existence of this materially exculpatory evidence, Defendant Jason Mancuso proceeded with criminal charges against Plaintiff and failed to conduct any meaningful inquiry into the contradiction between Officer John Beck's statements and Jeffrey Wagner's allegations.

At Plaintiff's criminal trial on May 16, 2024, Defendant Jeffrey Wagner testified under oath that he responded to Walter Miller Elementary School after hearing over police radio from a "floater car" that a suspicious vehicle was present on school property.

Plaintiff contends this sworn testimony directly contradicted prior sworn written statements and representations relied upon by Defendant Jason Mancuso during the charging process concerning

how Jeffrey Wagner became involved in the December 11, 2021 incident.

Upon information and belief, Defendant Jason Mancuso never meaningfully investigated these contradictions and instead accepted Jeffrey Wagner's statements as truthful despite readily available contradictory evidence.

The investigation conducted by Defendant Jason Mancuso further ignored the fact that Officer John Beck had already reviewed the November 9, 2021 letter, interpreted it differently than Jeffrey Wagner, and departed the scene without arresting or charging Plaintiff.

The Affidavit of Probable Cause relied upon by Defendant Jason Mancuso further stated that Defendant Kevin P. Wagner Sr. had communicated with the Chief of Bucks County Detectives and had been informed that Bristol Township Police could handle the investigation and that county resources would assist if needed.

Plaintiff contends this statement demonstrates that Kevin P. Wagner Sr., the father of Jeffrey Wagner and a District Justice in Bristol Township, was permitted to control the investigative resources utilized during the investigation into allegations involving his own son, Jeffrey Wagner, his son's wife Alexus Gordon Wagner, and associated Wagner family members.

Plaintiff further contends Defendant Jason Mancuso allowed Kevin P. Wagner Sr. to exert improper influence and authority over the investigation despite the obvious conflict of interest created by Kevin P. Wagner Sr.'s familial relationship to Jeffrey Wagner and the direct connection between the criminal allegations and Plaintiff's accusations that Jeffrey Wagner had falsely arrested Plaintiff on December 11, 2021.

Upon information and belief, after Plaintiff publicly accused Jeffrey Wagner of false arrest and misconduct, members of the Wagner family rallied around Jeffrey Wagner and utilized Defendant Jason Mancuso as a willing participant in retaliatory criminal proceedings directed against Plaintiff.

Plaintiff further contends Kevin P. Wagner Sr. used his position, status, relationships, and institutional influence within Bucks County law enforcement and judicial circles to protect Jeffrey Wagner's career and credibility at the expense of Plaintiff's liberty, finances, health, reputation, and ability to care for Plaintiff's service dog Holly.

Plaintiff further contends Defendant Jason Mancuso knowingly permitted the investigation to be directed and influenced by Kevin P. Wagner Sr. despite the obvious impropriety of allowing the

father of a central law enforcement witness and accused wrongdoer to influence investigative decisions and resource allocation.

Bristol Township Police Lieutenant Ralph Johnson assigned the investigation to Defendant Jason Mancuso.

Plaintiff further notes that Lieutenant Ralph Johnson was later promoted to Assistant Chief of Bristol Township Police and that the official administering the swearing-in ceremony for that promotion was District Justice Kevin P. Wagner Sr.

Plaintiff contends these relationships further demonstrate the institutional influence and interconnected relationships surrounding the investigation conducted by Defendant Jason Mancuso.

Defendant Jason Mancuso further failed to interview Plaintiff concerning the allegations prior to Plaintiff's arrest on February 3, 2022.

On February 3, 2022, Plaintiff contacted Bristol Township Police and specifically requested permission to voluntarily surrender the following morning at approximately 9:00 a.m. in order to secure care for Plaintiff's service dog Holly.

That request was denied.

During the recorded telephone conversation between Plaintiff and Defendant Jason Mancuso, Defendant Sean Cosgrove could be heard in the background instructing that Plaintiff not be permitted to surrender the following day.

During that same recorded conversation, Defendant Jason Mancuso informed Plaintiff words to the effect that "everything was already set up" and stated that Plaintiff would be "home in a couple hours."

Despite those statements, Plaintiff was arrested, transported for arraignment, incarcerated on 1 million bail, denied outside contact for several days, and unable to secure care for Plaintiff's service dog Holly.

At Plaintiff's criminal trial on May 16, 2024, Defendant Jason Mancuso testified under oath that Kevin P. Wagner Sr. wanted to be included as a complainant together with Jeffrey Wagner, Alexus Gordon Wagner, and Andrew Korhonen concerning stalking and harassment allegations against

Plaintiff.

Defendant Jason Mancuso further testified under oath that he did not believe Plaintiff could or should be charged with stalking or harassment regarding Kevin P. Wagner Sr.

Plaintiff contends this testimony is highly significant because Kevin P. Wagner Sr. was nevertheless later involved in additional criminal allegations against Plaintiff when Bucks County Constables Joshua Peterson and Thomas Calamari accused Plaintiff of making terroristic threats toward Kevin P. Wagner Sr.

Plaintiff further contends these subsequent terroristic threats allegations substantially increased Plaintiff's bail and dramatically reduced Plaintiff's ability to secure release from Bucks County Prison pending trial.

Upon information and belief, Kevin P. Wagner Sr. was determined to involve himself in Plaintiff's prosecution despite Defendant Jason Mancuso's own testimony that stalking and harassment charges concerning Kevin P. Wagner Sr. were not appropriate.

Plaintiff further contends Kevin P. Wagner Sr. utilized longstanding constable relationships, institutional influence, and affiliated Bucks County constable connections to continue escalating criminal allegations against Plaintiff in retaliation for Plaintiff's accusations concerning Jeffrey Wagner's December 11, 2021 false arrest of Plaintiff and Plaintiff's service dog Holly.

Plaintiff further contends the failure of Defendant Jason Mancuso to conduct a meaningful investigation, combined with reliance upon Wagner family allegations despite obvious contradictions and motive issues, contributed directly to Plaintiff's false arrest, incarceration, prolonged criminal prosecution, severe financial harm, damage to Plaintiff's health and reputation, and the death of Plaintiff's service dog Holly while Plaintiff remained incarcerated.

## ASHLEY MCCABE FACTUAL ALLEGATIONS

Defendant Ashley McCabe was, at all relevant times, employed as a Bristol Township Police Officer and responded to Plaintiff's residence on January 29, 2022 after Plaintiff called police regarding an assault by Andrew Korhonen.

On January 29, 2022, Plaintiff was assaulted by Andrew Korhonen, a Bucks County Constable, the father-in-law of Jeffrey Wagner, and the stepfather of Alexus Gordon Wagner.

Plaintiff called police after the assault, and Defendant Ashley McCabe responded with another Bristol Township officer. The entire interaction was captured on video.

Plaintiff reported to Defendant Ashley McCabe that Andrew Korhonen had attempted to take Plaintiff's phone and that Plaintiff's phone screen had been broken during that incident.

Rather than accepting Plaintiff's report or taking meaningful action on Plaintiff's behalf, Defendant Ashley McCabe insisted on seeing the damaged phone.

When Plaintiff went back inside his residence to retrieve the broken phone, Defendant Ashley McCabe stated words to the effect of, "Isn't that the phone you had in your pocket?" Plaintiff responded no, because it was not the same phone.

Plaintiff contends he was concerned Defendant Ashley McCabe would attempt to take or interfere with Plaintiff's phone in the same manner that Andrew Korhonen had attempted to take Plaintiff's phone during the incident Plaintiff had called police to report.

Plaintiff showed Defendant Ashley McCabe the broken phone screen caused by Andrew Korhonen attempting to take the phone from Plaintiff.

Defendant Ashley McCabe took no meaningful action on Plaintiff's behalf regarding the assault, the attempted taking of Plaintiff's phone, or the damage to Plaintiff's property.

Plaintiff contends it was clear during the interaction that Defendant Ashley McCabe was not going to take action to protect Plaintiff, but instead appeared focused on warning, threatening, and intimidating Plaintiff.

During the recorded interaction, Defendant Ashley McCabe stated words to the effect of: "If you

continue to drive down their streets, I'm going to cite you with harassment."

Defendant Ashley McCabe also stated on video: "I would suggest you stay away from the Wagner's properties, I would suggest you stay away from all the Wagner's properties."

Plaintiff contends Defendant Ashley McCabe's statements unlawfully restricted Plaintiff from driving on public streets and effectively threatened Plaintiff with criminal charges if Plaintiff drove on streets associated with Wagner family properties.

After Defendant Ashley McCabe made those statements on January 29, 2022, Plaintiff did not drive down any Wagner street.

Despite this, Plaintiff was arrested on February 3, 2022 and accused of stalking and harassment based in part upon allegations involving streets and properties associated with Wagner family members.

Plaintiff contends Defendant Ashley McCabe was an integral part of the process used to transform Plaintiff's report of being assaulted by Andrew Korhonen into further threats and criminal exposure against Plaintiff.

Plaintiff further contends Defendant Ashley McCabe's actions demonstrated favoritism, bias, or allegiance toward the Wagner family because there was no lawful basis for threatening Plaintiff with harassment charges merely for driving on public streets.

At the end of the recorded interaction, Plaintiff asked Defendant Ashley McCabe what she intended to do about Plaintiff's broken phone as Defendant Ashley McCabe walked away toward her patrol vehicle.

Defendant Ashley McCabe did not respond and took no corrective action.

Plaintiff contends Defendant Ashley McCabe used her police authority to intimidate and restrict Plaintiff on behalf of Wagner-family-connected individuals rather than investigate Plaintiff's complaint against Andrew Korhonen.

Plaintiff further contends Defendant Ashley McCabe acted as a co-conspirator in the subsequent stalking and harassment allegations against Plaintiff by helping establish, reinforce, and legitimize the false premise that Plaintiff's lawful travel on public streets constituted criminal harassment

toward Wagner family members.

Plaintiff further contends Defendant Ashley McCabe's conduct directly contributed to the later stalking and harassment allegations against Plaintiff by treating Plaintiff's lawful travel on public streets as criminal conduct while ignoring Plaintiff's report that he had been assaulted and his property damaged by Bucks County Constable Andrew Korhonen.

## EDWARD DIFRANK FACTUAL ALLEGATIONS

Defendant Edward DiFrank was, at all relevant times, employed as a Middletown Township Police Officer.

On November 8, 2021, Defendant Edward DiFrank responded to an alleged trespassing complaint involving Plaintiff near Walter Miller Elementary School and adjacent church property.

The incident report authored by Defendant Edward DiFrank clearly states that the original complaint involved allegations that Plaintiff was on church property.

However, Defendant Edward DiFrank's own narrative further states that upon arrival he encountered Plaintiff sitting inside Plaintiff's truck parked on Walter Miller Elementary School property behind the school.

The incident report authored by Defendant Edward DiFrank repeatedly references Plaintiff being on school property rather than church property.

Defendant Edward DiFrank specifically wrote in the incident report that he asked Plaintiff why Plaintiff was "sitting in his truck on school property when recess was going on at the school and daycare was going on at the church."

Defendant Edward DiFrank further wrote in the report that he "did not see or hear a dog in the truck" but also admitted "I did not go look inside."

Plaintiff had in fact just completed walking his dog and was preparing to leave when Defendant Edward DiFrank arrived on scene.

Plaintiff exited his vehicle and recorded the entire interaction with Defendant Edward DiFrank on video.

During that interaction, Defendant Edward DiFrank threatened to tow Plaintiff's truck if Plaintiff did not immediately leave the area.

Despite the fact that Defendant Edward DiFrank's own incident report repeatedly stated Plaintiff was on Walter Miller Elementary School property, Plaintiff was subsequently charged and later convicted before District Justice Michael Pertucci, an ex Bucks County Constable, of trespassing on

church property.

Plaintiff contends this conviction was based upon materially false and contradictory representations because the incident report itself demonstrated Plaintiff was not on church property at the time of the encounter.

Plaintiff was denied access to the police report authored by Defendant Edward DiFrank until approximately one week prior to Plaintiff's criminal trial in May of 2024.

Plaintiff contends the withholding of the incident report prevented Plaintiff from effectively challenging the contradictory allegations used to secure the prior conviction before District Justice Michael Pertucci on August 24, 2022.

After finally receiving the incident report in May of 2024, Plaintiff was able to confirm that Defendant Edward DiFrank's own written report clearly placed Plaintiff on Walter Miller Elementary School property rather than church property.

At Plaintiff's criminal trial on May 16, 2024, Defendant Jeffrey Wagner testified under oath that Plaintiff had previously been cited for being on school property.

Plaintiff contends this testimony constituted perjury because the official charging records clearly demonstrate Plaintiff was not charged on November 8, 2021 with trespassing on Walter Miller Elementary School property.

Instead, on that same date, Middletown Township Police contacted Kevin Burns, resulting in the November 9, 2021 letter concerning Plaintiff being present on school property during school hours.

Plaintiff contends the District Attorney's Office possessed records clearly demonstrating the distinction between the alleged church-property trespass citation and the entirely separate school-property letter authored by Kevin Burns.

Plaintiff had walked his dogs on or near Walter Miller Elementary School property for approximately thirty years prior to these incidents without complaint or interference.

Teachers, maintenance personnel, students, and community members were well aware of Plaintiff walking his dogs along the wooded areas and portions of the property that did not interfere with school activities.

Plaintiff contends no individual whatsoever had ever previously complained about Plaintiff walking his dogs on or near Walter Miller Elementary School property during school hours, and that students under the supervision of school personnel would routinely run to the fence and wave to Plaintiff's Dalmatians shouting "Dalmatian." It was literally enjoyable for the children to see and wave to three or four Dalmatians, and the teachers appeared to enjoy the interactions as well.

Plaintiff further contends he routinely remained substantial distances away from the school building and playground areas, which themselves were fenced.

During the recorded interaction with Defendant Edward DiFrank, Plaintiff informed Defendant Edward DiFrank that Plaintiff believed the harassment and targeting were connected to the Wagner family and Plaintiff's prior complaints and accusations against them, including Plaintiff's August 23, 2021 correspondence accusing members of the Wagner family of corruption and abuse of authority.

Plaintiff further contends Defendant Edward DiFrank's conduct formed part of a broader pattern of retaliatory overreach by Middletown Township Police concerning Plaintiff's lawful presence near Walter Miller Elementary School property.

Plaintiff additionally possesses video evidence of a separate interaction with Middletown Township Police Officer Megan Logan Freer concerning Plaintiff walking his dog on school property.

During that interaction, Officer Freer acknowledged words to the effect that Plaintiff was not prohibited from school property but instead was allegedly prohibited only from church property.

After Plaintiff pointed out that distinction, Officer Freer responded words to the effect of "well it is adjacent to it," suggesting that being on adjacent property somehow constituted a violation involving church property.

Plaintiff contends this interaction demonstrated the continuing overreach and contradictory enforcement positions taken by Middletown Township Police officers concerning Plaintiff's lawful presence on or near Walter Miller Elementary School property.

Plaintiff further contends Defendant Edward DiFrank knowingly participated in this pattern of contradictory and retaliatory enforcement actions despite the lack of any legitimate legal basis for treating Plaintiff's presence on school property as criminal conduct, and Plaintiff further contends

that the resulting church-property conviction was later materially misrepresented by Defendant Jeffrey Wagner at trial in order to maintain the false narrative that Plaintiff had previously trespassed on school property, thereby aiding the attempted justification and prosecution of the December 11, 2021 trespassing charges asserted by Defendant Jeffrey Wagner and other officers.

## SEAN COSGROVE FACTUAL ALLEGATIONS

Defendant SEAN COSGROVE, a Bristol Township Police Sergeant, has a documented history of interactions with Plaintiff predating the February 3, 2022 arrest and incarceration of Plaintiff.

Prior to Plaintiff's February 3, 2022 arrest, Plaintiff showed Defendant Sean Cosgrove a video depicting Bristol Township Police Officer Theodore Thieroff repeatedly shoving his face directly into Plaintiff's face after Plaintiff had complained to Bristol Township Police regarding ongoing harassment by neighbor Thomas Mule.

After viewing the video evidence, Officer Theodore Thieroff acknowledged on video that the conduct constituted harassment and stated words to the effect of "yes that's harassment, you can file yourself," yet Bristol Township Police took no enforcement action whatsoever on Plaintiff's behalf despite personally confirming the conduct on video evidence.

The following day Plaintiff contacted Bristol Township Police and reported the incident to Sergeant Sean Cosgrove. Beginning the very next day, Plaintiff's vehicle was cited by Bristol Township Police for parking in the opposite direction three consecutive days.

Plaintiff contends this conduct was retaliatory in nature and further notes that parking in the opposite direction was and remains a common practice on Plaintiff's street, yet no other individuals were cited for such conduct.

Plaintiff contends this conduct reflects a broader pattern of disparate treatment by Bristol Township Police toward Plaintiff, including willingness to pursue criminal allegations against Plaintiff based solely upon the accusations of others while simultaneously refusing to act even when provided direct video evidence confirming criminal conduct against Plaintiff.

Defendant Sean Cosgrove was aware of and participated in this continuing pattern of treatment toward Plaintiff.

On February 3, 2022, Plaintiff contacted Bristol Township Police and spoke with Officer Jason Mancuso while attempting to arrange surrender the following morning at approximately 9:00 a.m. so Plaintiff could secure care for his service dog Holly.

During that recorded telephone conversation, Defendant Sean Cosgrove can be heard in the background instructing Officer Jason Mancuso not to permit Plaintiff to surrender the following

morning. During the same recorded phone call, Officer Jason Mancuso told Plaintiff, "that's my sergeant." Defendant Sean Cosgrove's voice was familiar to Plaintiff.

During the same telephone conversation, Officer Mancuso stated words to the effect that "everything was set up," and further stated that Plaintiff had to surrender immediately because Officer Mancuso was off duty the following day.

Despite those statements, when Plaintiff later surrendered before District Justice Terrence Hughes, Officer Jason Mancuso did not take Plaintiff into custody.

Instead, Defendant Sean Cosgrove stepped in and arrested Plaintiff himself rather than allow Plaintiff to surrender the following morning and secure care for Plaintiff's service dog Holly.

Defendant Sean Cosgrove transported Plaintiff for arraignment proceedings and participated in Plaintiff being incarcerated on $1,000,000 bail relating to stalking and harassment allegations.

Plaintiff contends Defendant Sean Cosgrove acted in concert with others to secure Plaintiff's incarceration under excessive bail conditions and to prevent Plaintiff from securing timely care for Plaintiff's service dog Holly following Plaintiff's incarceration.

Plaintiff further contends that, following incarceration, Plaintiff was denied access to a telephone for several days, preventing Plaintiff from arranging care for Holly.

Plaintiff contends the actions of Defendants and associated personnel directly contributed to Holly's death following Plaintiff's incarceration preventing documentation of injuries sustained by Holly during the December 11, 2021 arrest.

## EMILYANN MAIALETTI FACTUAL ALLEGATIONS

Defendant EMILYANN MAIALETTI, a Bristol Township Police Officer and former Bucks County Prison guard who previously held the rank of Sergeant within the Bucks County prison system, participated in the events giving rise to Plaintiff's incarceration and acted in concert with other Defendants to advance and rely upon fabricated allegations against Plaintiff.

Defendant Emilyann Maialetti participated in the towing of three vehicles belonging to Plaintiff during a snow event despite Plaintiff not residing on a designated snow route. Plaintiff contends that no other vehicles in the immediate area were towed under similar circumstances.

The towing of Plaintiff's vehicles caused Plaintiff to incur approximately $650.00 in towing and recovery expenses in order to retrieve the vehicles the following day.

These events occurred after Plaintiff participated in a recorded telephone conversation with Bristol Township Lieutenant Ralph Johnson, with Lieutenant Ralph Johnson fully aware that the conversation was being recorded, in which Plaintiff complained that the Wagner family received preferential treatment within Bristol Township while Plaintiff was subjected to ongoing mistreatment by Bristol Township authorities.

During that recorded telephone conversation, Lieutenant Ralph Johnson acknowledged Plaintiff's description of the Wagner family's conduct and referred to Plaintiff as "stupid" and "an idiot" for even mentioning the Wagner family getting away with infractions Plaintiff was not permitted to.

Following that interaction, Plaintiff's three vehicles were towed.

Defendant Emilyann Maialetti is on video stating that she was instructed by Lieutenant Ralph Johnson to tow Plaintiff's vehicles.

Lieutenant Ralph Johnson also served as a supervising officer connected to the stalking and harassment allegations that resulted in Plaintiff's incarceration on February 3, 2022.

Upon information and belief, Defendant Emilyann Maialetti utilized prior relationships and contacts within the Bucks County prison system to assist in ensuring Plaintiff would be placed in solitary confinement upon arrival at Bucks County Correctional Facility.

Plaintiff spent approximately six days in solitary confinement without telephone access or outside

communication following incarceration on February 3, 2022, preventing Plaintiff from arranging care for Plaintiff's service dog Holly.

Plaintiff contends Defendant Emilyann Maialetti and Defendant Ashley McCabe played integral roles in preventing Plaintiff from obtaining outside contact during the initial days of Plaintiff's incarceration following the February 3, 2022 arrest and commitment proceedings.

## MIDDLETOWN TOWNSHIP FACTUAL ALLEGATIONS

Defendant MIDDLETOWN TOWNSHIP is the municipal entity employing Defendant Jeffrey Wagner, Defendant John Beck, Defendant Michael Lubold, Defendant DOE OFFICER 1, and Defendant DOE OFFICER 2.

Middletown Township, through its police department, supervisors, policymakers, and affiliated personnel, possessed explicit knowledge of Defendant John Beck's encounter with Plaintiff on December 11, 2021, during which Defendant John Beck reviewed the written Neshaminy School District notice and declined to take enforcement action against Plaintiff.

Defendant John Beck further stated on video words to the effect that the written notice applied only during school hours and that Plaintiff was not violating the notice at the time of the encounter.

Approximately fifteen minutes later, Defendants Jeffrey Wagner, Michael Lubold, DOE OFFICER 1, and DOE OFFICER 2 took the directly opposite position and participated in the detention and arrest of Plaintiff and Plaintiff's service dog Holly based upon the same written notice previously reviewed by Defendant John Beck.

During the December 11, 2021 incident, Middletown Township officers additionally summoned a specific animal control officer to respond and take custody of Plaintiff's service dog Holly. Plaintiff contends these extraordinary measures demonstrated animus toward Plaintiff and were disproportionate to the circumstances presented.

Prior to the December 11, 2021 arrest, Plaintiff had written the Federal Bureau of Investigation, members of the Bucks County judiciary, and numerous other agencies asserting that members of the Wagner family constituted a criminal organization and should be investigated and prosecuted under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

District Court employee Melanie Chesko distributed that letter to Constable Robert Chesko who in turn distributed it to members of the Wagner family prior to the December 11, 2021 arrest of Plaintiff and Plaintiff's service dog Holly.

Upon information and belief, Middletown Township and affiliated officers were aware of Plaintiff's prior complaints and allegations concerning the Wagner family before permitting Defendant Jeffrey Wagner to assume control over the December 11, 2021 detention and arrest despite the presence of multiple other officers at the scene.

Middletown Township possessed access to the underlying written notice, police records, incident reports, officer statements, and video evidence associated with the December 11, 2021 encounter and arrest.

Despite possessing such information, Middletown Township failed to take corrective action, failed to rectify materially false allegations concerning Plaintiff, and failed to investigate or discipline officers involved in the arrest and prosecution of Plaintiff.

Upon information and belief, Middletown Township maintained customs, practices, failures of supervision, failures of discipline, or deliberate indifference permitting officers to advance contradictory and materially false allegations against Plaintiff without meaningful review or correction.

Plaintiff further contends that Middletown Township knowingly permitted the continuation of false allegations and prosecution against Plaintiff despite possessing information demonstrating that Defendant John Beck had already determined Plaintiff was not violating the written notice relied upon to justify Plaintiff's arrest.

## BRISTOL TOWNSHIP FACTUAL ALLEGATIONS

Defendant BRISTOL TOWNSHIP is the municipal entity employing Defendant Jason Mancuso, Defendant Sean Cosgrove, Defendant Ashley McCabe, Defendant Emilyann Maialetti, and other affiliated Bristol Township Police personnel involved in the investigation, arrest, and incarceration of Plaintiff.

Prior to the February 3, 2022 arrest and incarceration of Plaintiff, Bristol Township and its police department were well aware of Plaintiff's repeated complaints involving members of the Wagner family and Plaintiff's allegations that members of the Wagner family were receiving preferential treatment from local law enforcement authorities.

Despite the seriousness of the stalking and harassment allegations later used to incarcerate Plaintiff on $1,000,000 bail, Bristol Township Police failed to interview Plaintiff whatsoever prior to Plaintiff's arrest on February 3, 2022.

The Affidavit of Probable Cause authored by Bristol Township Police Officer Jason Mancuso explicitly states that Officer Mancuso communicated with Kevin Wagner Sr. during the investigation concerning allegations made by Jeffrey Wagner, Alexus Gordon Wagner, and Andrew Korhonen.

At all relevant times, Kevin Wagner Sr. was a Bristol Township District Justice and Plaintiff contends Kevin Wagner Sr. improperly used his position of authority and influence to direct or influence investigative decisions concerning allegations involving his own family members.

Kevin Wagner Sr. is specifically identified within the Affidavit of Probable Cause as having spoken with the Chief of Bucks County Detectives, who allegedly informed Kevin Wagner Sr. that Bristol Township could handle the investigation and that Bucks County Detectives would assist if needed. It should further be noted that Wagner family member Justin Eisenhower is a Bucks County Detective.

The Affidavit of Probable Cause further reflects that Kevin Wagner Sr. informed Bristol Township Police that Bristol Township could handle the investigation without additional investigative resources being utilized.

Upon information and belief, Kevin Wagner Sr. was permitted to influence and dictate the investigative direction and allocation of police resources used in the stalking and harassment investigation involving Plaintiff despite Kevin Wagner Sr.'s direct familial relationship to principal complaining witness Jeffrey Wagner.

The allegations used to prosecute Plaintiff were primarily advanced by Jeffrey Wagner, Alexus Gordon Wagner, and Andrew Korhonen, all individuals Plaintiff contends possessed improper motives, personal bias, or familial relationships directly connected to the Wagner family.

Plaintiff further contends that Andrew Korhonen obtained his Deputy Constable position through Wagner family influence, including through Robert Wagner III and affiliated Wagner family relationships.

These relationships, conflicts, and improper motives should have triggered a substantially more thorough and neutral investigation before Plaintiff was arrested and incarcerated.

Instead, Bristol Township Police accepted allegations from Wagner-family-connected witnesses at face value while simultaneously disregarding exculpatory information and Plaintiff's prior documented complaints concerning the Wagner family and affiliated individuals.

Plaintiff further contends Kevin Wagner Sr. possessed no lawful authority to direct or influence the allocation of investigative resources concerning criminal allegations involving his own family members and that permitting such influence constituted an abuse of authority and position.

Upon information and belief, Bristol Township maintained customs, practices, failures of supervision, failures of discipline, or deliberate indifference permitting officers and investigators to pursue criminal allegations against Plaintiff without conducting meaningful independent investigation or review.

Plaintiff further contends Bristol Township knowingly permitted the continuation of false allegations and criminal proceedings against Plaintiff despite obvious conflicts of interest, credibility concerns, retaliatory motives, and inconsistencies surrounding the allegations used to justify Plaintiff's arrest and incarceration.

## V. NOTICE TO DEFENDANTS

At all relevant times, Defendants BUCKS COUNTY, MIDDLETOWN TOWNSHIP, BRISTOL TOWNSHIP, NESHAMINY SCHOOL DISTRICT, and the BUCKS COUNTY DISTRICT ATTORNEY'S OFFICE were on notice that the criminal charges against Plaintiff were unsupported by probable cause and based upon materially false or misleading information. Despite such notice, Defendants failed to intervene, correct, or terminate the prosecution and instead authorized, maintained, or ratified the continuation of charges, constituting deliberate indifference.

## VI. CLAIMS FOR RELIEF

### COUNT I – FOURTEENTH AMENDMENT (Fabrication of Evidence / Due Process)

Defendants knowingly fabricated and maintained false evidence from 2021 through May 17, 2024, depriving Plaintiff of liberty and a fair criminal proceeding.

### COUNT II – FOURTH AMENDMENT (Malicious Prosecution)

Defendants caused Plaintiff to be seized and prosecuted without probable cause by means of fabricated evidence, with favorable termination occurring on May 17, 2024.

### COUNT III – CONSPIRACY (42 U.S.C. § 1983)

Defendants agreed and acted in concert over an extended period to violate Plaintiff's constitutional rights.

### COUNT IV – FOURTH AMENDMENT (False Arrest / False Imprisonment)

Defendants caused Plaintiff to be arrested and detained without probable cause, including the December 11, 2021 arrest and subsequent February 3, 2022 incarceration.

### COUNT V – FOURTEENTH AMENDMENT (Substantive Due Process)

Defendants engaged in arbitrary and conscience-shocking conduct, including reliance on known false statements, excessive bail manipulation, and continuation of charges despite exculpatory evidence.

### COUNT VI – FIRST AMENDMENT (Retaliation)

Defendants took adverse action against Plaintiff, including arrest, prosecution, and additional charges, in retaliation for Plaintiff's protected conduct, including challenging the legality of Defendants' actions and asserting his rights.

### COUNT VII – FAILURE TO INTERVENE

Defendants who were present and aware of the lack of probable cause failed to intervene to prevent Plaintiff's unlawful arrest, detention, and prosecution.

### COUNT VIII – MUNICIPAL LIABILITY (Monell)

Defendant municipal entities maintained policies, customs, or practices that permitted reliance on false statements, failure to investigate, and continuation of charges without probable cause, constituting deliberate indifference to Plaintiff's constitutional rights.

## VII. DAMAGES AND INJURIES

As a direct and foreseeable consequence of Defendants' actions, Plaintiff suffered unlawful arrest, prolonged incarceration, malicious prosecution, emotional distress, reputational harm, financial hardship, physical injury, and the deprivation of constitutional rights secured by the United States Constitution.

Plaintiff was subjected to criminal prosecution, incarceration, excessive bail conditions, and prolonged judicial proceedings based upon allegations Plaintiff contends were materially false, fabricated, misleading, retaliatory, or maintained despite substantial contradictory and exculpatory evidence.

Plaintiff was incarcerated on bail exceeding 1 million dollars and remained detained for a prolonged period while Defendants continued advancing allegations Plaintiff contends lacked probable cause and were supported by fabricated or materially misleading statements.

As a direct consequence of Plaintiff's incarceration, Plaintiff was separated from his service dog Holly.

During Plaintiff's incarceration, Holly died.

Plaintiff contends the death of his service dog Holly caused severe emotional distress, mental anguish, grief, depression, anxiety, humiliation, and lasting emotional trauma which continues to affect Plaintiff's daily functioning and mental well-being.

Plaintiff further contends Defendants were aware that Holly was Plaintiff's service dog and nevertheless caused or contributed to circumstances resulting in Plaintiff's separation from Holly through Plaintiff's incarceration and continued detention.

Plaintiff further suffered reputational harm within the community as a result of Defendants' actions, including allegations portraying Plaintiff as a stalker, harasser, trespasser, and dangerous individual.

Plaintiff further contends Defendants' actions caused damage to Plaintiff's standing within the community, subjected Plaintiff to public ridicule and humiliation, and damaged Plaintiff's relationships and reputation.

Plaintiff further suffered financial harm, including costs associated with defending against prolonged

criminal prosecution, loss of income and earning capacity, litigation-related expenses, transportation costs, and other economic damages associated with Plaintiff's arrest, incarceration, and prosecution.

Plaintiff additionally suffered physical pain, discomfort, humiliation, and degradation during custodial transport and incarceration, including being forced to sit in urine during transport to Bucks County Prison and being subjected to degrading treatment by transporting constables.

Plaintiff further contends Defendants' actions caused continuing psychological stress, fear, anxiety, emotional instability, sleep disturbance, and ongoing mental suffering.

Plaintiff additionally suffered the loss of liberty, loss of personal autonomy, invasion of privacy, disruption of daily life, and deprivation of constitutional rights guaranteed under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

Plaintiff further contends Defendants acted intentionally, maliciously, recklessly, willfully, or with deliberate indifference to Plaintiff's constitutional rights and well-being, thereby entitling Plaintiff to compensatory damages, punitive damages where permitted, costs, attorney's fees pursuant to 42 U.S.C. § 1988, and all additional relief deemed just and proper by this Court.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Jones Jr. respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award the following relief:

A. Compensatory damages in an amount to be determined at trial for violations of Plaintiff's constitutional rights, emotional distress, reputational harm, financial losses, loss of liberty, and other injuries alleged herein;

B. Punitive damages against the individual Defendants to the fullest extent permitted by law for intentional, malicious, reckless, retaliatory, or conscience-shocking conduct;

C. Declaratory relief declaring that Defendants' actions, policies, customs, practices, retaliatory conduct, fabricated allegations, and continuation of prosecution violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution;

D. Costs of suit, litigation expenses, and attorney's fees pursuant to 42 U.S.C. § 1988 and all other applicable provisions of law;

E. Prejudgment and post-judgment interest as permitted by law;

F. Such other and further relief as this Court deems just, equitable, and proper.

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

JOHN JONES JR., Pro Se

## IX. INCORPORATION OF PRIOR FILED EXHIBITS AND EVIDENTIARY MATERIALS

Plaintiff hereby incorporates by reference all exhibits, evidentiary materials, recordings, filings, transcripts, photographs, correspondence, notices, police reports, videos, discovery materials, affidavits, and related documents previously filed, lodged, submitted, or otherwise provided to the United States District Court for the Eastern District of Pennsylvania in Civil Action No. 23-4879, John Jones Jr. v. Josh Shapiro et al., to the extent such materials are relevant to the allegations, claims, parties, events, customs, practices, notice allegations, retaliatory conduct, municipal liability allegations, witness credibility issues, or constitutional violations asserted in this Amended Complaint.

Plaintiff further provides notice that many of the events, individuals, institutional practices, retaliatory acts, documentary materials, and evidentiary recordings referenced throughout this Amended Complaint were previously disclosed to governmental entities, law enforcement agencies, judicial officers, municipal entities, and other Defendants through filings, exhibits, correspondence, notices, and evidentiary submissions associated with Civil Action No. 23-4879.

Plaintiff further contends that Defendants, municipalities, policymakers, supervisory personnel, and affiliated governmental entities had actual or constructive notice of the matters alleged herein through those prior submissions and evidentiary materials.

To avoid unnecessary duplication, Plaintiff does not attach every previously filed exhibit to this Amended Complaint at this time but expressly reserves the right to rely upon, reference, supplement, authenticate, produce, or introduce any such materials during motion practice, discovery, evidentiary proceedings, summary judgment proceedings, hearings, trial, or other proceedings in this matter.

Plaintiff further incorporates by reference all trial transcripts, video recordings, photographic evidence, police reports, affidavits of probable cause, criminal complaints, correspondence, notices, and evidentiary materials referenced throughout this pleading.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

John Jones Jr.,
Plaintiff,

v.

Kevin P. Wagner Sr., et al.,
Defendants.

Civil Action No. 26-1050

## NOTICE OF INCORPORATION BY REFERENCE OF EXHIBITS PREVIOUSLY FILED IN CIVIL ACTION NO. 23-4879

Plaintiff John Jones Jr., proceeding pro se, hereby provides notice that he intends to rely upon and incorporate by reference the exhibits, evidentiary materials, correspondence, photographs, motions, prison records, and related filings previously filed in this Court in Civil Action No. 23-4879, captioned John Jones Jr. v. Josh Shapiro et al.

Those materials were previously submitted to and received by the United States District Court for the Eastern District of Pennsylvania and remain part of the official federal court record.

Plaintiff specifically references the previously filed exhibit compilation identified as Exhibits 1 through 39, including but not limited to correspondence directed to judicial, prosecutorial, federal, and law-enforcement officials; photographs; prison documentation; motions filed in Bucks County Court; and written notice materials concerning alleged retaliatory enforcement, fabrication of evidence, selective prosecution, and constitutional violations.

Due to the substantial volume of those materials and the fact that they are already within the possession of this Court, Plaintiff does not reproduce the underlying exhibits in full within the present Amended Complaint. Plaintiff nevertheless expressly relies upon those materials and incorporates them herein by reference as evidentiary support for the allegations, claims, notice allegations, Monell allegations, damages allegations, and constitutional claims asserted in this action.

Plaintiff further provides notice that the attached exhibit index bearing the federal court filing stamp reflects the exhibits previously filed in Civil Action No. 23-4879 and is attached for identification and reference purposes.

Respectfully submitted,

John Jones Jr.
Plaintiff, Pro Se
9 Iris Road
Levittown, PA 19057

# EXHIBITS

1. Letter from Neshaminy School District, dated 9-NOV-21.
2. Letter to Judge Kelly about the Wagner harassment, dated 23-Aug-21, 2 pages.
3. Letter to Deputy Warden Reed, dated 11-FEB-22.
4. Letter to judges to save my Holly's life, dated 22-Feb-22.
5. Letter to Kevin Burns, dated 22-DEC-21.
6. Letter To Chief J. Bartorilla, dated 5-JAN-22, 2 pages.
7. Letter to Judge Bateman requesting help, dated 14-DEC-21.
8. Letter to D. A. Heckler exposing corruption, dated 20-JAN-17
9. Letter to D. A. Weintraub requesting help, dated 20-JAN-22, 3 pages.
10. Motion To Stay, motion To Be Heard, timely filed in Bucks Co. Court.
11. Motion For Change Of Venue, timely filed in Bucks Co. Court
12. Motion To Remand, timely filed in Bucks Co. Court
13. Motion For Continuance, timely filed in Bucks Co. Court.
14. The only response to the afore mentioned motions, dated 3-AUG-22.
15. Order placing me on probation in Bucks Co. by Judge Lieberman, 16-AUG-23.
16. Dr. Weidenfeld letter to the court, dated 2-OCT-19
17. Dr. Weidenfeld letter to the court, dated 18-Dec-19
18. dr. Weidenfeld letter to the court, dated 18-SEP-19
19. Dr. Weidenfeld letter to the court, dated 29-JAN-20.
20. Dr. Weidenfeld letter to Bucks Co. Court, dated 10-JUN-20.
21. Letter to court 7103 NOTICE of RIGHT to SUE, dated 23-MAR-21.
22. Letter to court 7103, dated 21-APR-21.
23. Letter to court 7103, I'LL SURRENDER LETTER, dated 21-APR-21.
24. Letter to court 7103, NOTICE of RIGHT to SUE, dated 19-JUL-21
25. Letter to court 7103, alleging ongoing harassment, dated 22-JUL-21
26. Picture of my Holly walking at Walter Miller Elementary School.
27. Picture of my Holly off leash with Middletown Officer Morrison.
28. Bucks County Prison housing status and movement documentation.
29. Picture of J. Wagner and officer with gun drawn taken on 11-DEC-21.
30. Picture of Middletown Officer J. Beck not citing me on 11-DEC-21.
31. Cop[y of arrest warrant "terroristic threats" showing case filed 21-MAR-22.
32. Picture of Middletown Officer not charging on school property with Holly.
33. Picture of Holly about to be arrested by Officer Jeffery Wagner.
34. Picture of Jeffery Wagner, Sgt. Lubold and gun drawn officer on 11-DEC-21.
35. Letter to FBI alleging Constables under undue Wagner influence, 28-FEB-22.
36. Letter to FBI from prison requesting investigation and assistance, 8-MAR-22.
37. Letter to FBI alleging corruption and requesting assistance, dated 23-JUL-21.
38. Letter to FBI requesting investigative intervention on my behalf, 3-AUG-21.
39. Letter to FBI stating "I was plucked like a Jew from a farm field in Germany by the Geheime Staatspolizie" by Jeffery Wagner on 11-DEC-21, sent to the FBI on 11-JAN-22, 2 pages.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN JONES JR., Plaintiff
v.
KEVIN P. WAGNER SR., et al., Defendants.

## NOTICE OF SUPPLEMENTAL FILING

Plaintiff John Jones Jr., proceeding pro se, hereby provides notice that he is contemporaneously filing the following supplemental materials together with his Civil Rights Complaint in this action:

1. Supplemental Monell Allegations – Municipal Liability (42 U.S.C. § 1983); and
2. Supplemental Factual Allegations Concerning the Bucks County District Attorney and the Bucks County District Attorney's Office.

These supplemental filings are submitted solely for the purpose of clarifying and particularizing municipal liability, policymaker involvement, deliberate indifference, and related factual allegations already asserted in the Complaint. The supplemental materials do not assert new causes of action, do not alter the underlying factual timeline, and do not expand the scope of this action beyond the claims previously pleaded.

Plaintiff submits these materials to ensure a clear and complete presentation of his claims at the pleading stage and to aid the Court in its review. Plaintiff respectfully requests that the Court accept and consider the supplemental filings as part of the pleadings in this matter.

Respectfully submitted,

John Jones Jr.
Plaintiff, Pro Se

Supplemental Monell Allegations – Municipal Liability (42 U.S.C. § 1983)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN JONES JR., Plaintiff v. KEVIN P. WAGNER SR., et al., Defendants

SUPPLEMENTAL MONELL ALLEGATIONS

1. Plaintiff John Jones Jr., proceeding pro se, submits these Supplemental Monell Allegations in support of his federal civil rights action against Defendants Kevin P. Wagner Sr., et al. This filing supplements the Wagner federal case by setting forth additional and clarifying allegations concerning municipal policies, customs, practices, and deliberate indifference attributable to Bucks County and the Bucks County District Attorney's Office.

2. Defendant Bucks County is a municipal entity subject to suit under 42 U.S.C. § 1983. Defendant Bucks County District Attorney's Office is a final policymaking entity for Bucks County with respect to prosecutorial training, supervision, administrative practices, and evidentiary review policies, rather than individual charging discretion.

3. At all relevant times, the constitutional violations suffered by Plaintiff were caused by policies, customs, and practices of Bucks County and the Bucks County District Attorney's Office, including but not limited to the tolerance, adoption, and ratification of fabricated written accusations used to initiate and maintain criminal charges without probable cause. Plaintiff's municipal liability allegations are not based on vicarious liability for individual misconduct, but on institutional decisions and omissions attributable to municipal policymakers.

4. Defendants maintained a custom and practice of relying upon knowingly false or materially misleading written statements authored by law enforcement officers, constables, and affiliated officials, without adequate verification, correction, or disciplinary action, even after such statements were shown to be inaccurate or unsupported. The persistence of this practice through arrest, pretrial proceedings, bail determinations, and trial demonstrates that the challenged conduct was not isolated, but reflected an entrenched custom tolerated and enforced through multiple stages of the criminal process.

5. Defendants further maintained a policy or custom of deliberate indifference to constitutional violations by failing to train, supervise, and discipline law enforcement officers and constables regarding the fabrication of evidence, the use of false narratives to increase bail exposure, and the continuation of prosecutions lacking probable cause.

6. Policymakers for Bucks County and the Bucks County District Attorney's Office were on notice that the accusations against Plaintiff were unsupported and false, including through pretrial proceedings, the absence of corroborating evidence, and continued reliance on disputed written statements, yet failed to intervene, correct, or terminate the prosecution.

7. Despite such notice, Defendants authorized, approved, or ratified the continued reliance on fabricated written statements through Plaintiff's criminal trial on May 16–17, 2024. Such authorization and approval constituted an affirmative adoption of unconstitutional conduct as municipal policy.

8. The foregoing policies, customs, and practices were the moving force behind the violations of Plaintiff's rights under the Fourth and Fourteenth Amendments, including unlawful seizure, malicious prosecution, excessive bail, and deprivation of liberty without due process.

9. As a direct and proximate result of Defendants' municipal policies and deliberate indifference, Plaintiff suffered prolonged detention, emotional distress, reputational harm, and other damages.

10. The criminal charges brought against Plaintiff were not the result of isolated decision-making, but reflected the deliberate reuse of a charging strategy previously employed against the Plaintiff's father, including similar accusations, framing of conduct, and disregard of exculpatory context.

11. The recurrence of these charging methods against closely related individuals establishes a pattern evidencing institutional memory and reliance on prior outcomes rather than coincidence.

12. The conduct at issue involved local police officers acting under color of state law and the Bucks County District Attorney's Office exercising charging authority, prosecutorial discretion, and oversight pursuant to informal policies permitting prosecution absent probable cause.

13. These practices were enabled by supervisory acquiescence, failure to discipline, and failure to correct known misconduct, thereby signaling institutional approval and constituting actionable policy or custom under Monell.

14. Municipal liability further attaches through the failure to adequately train and supervise officers and prosecutors regarding constitutional limitations on retaliatory enforcement, selective prosecution, and abuse of process.

15. Despite prior misuse of criminal charges against Plaintiff's father, no corrective measures were implemented to prevent recurrence against Plaintiff, rendering subsequent violations foreseeable.

16. These customs, practices, and failures were the moving force behind the initiation, maintenance, and consequences of the criminal proceedings at issue in the Wagner federal case, establishing the requisite causal nexus for municipal liability.

Respectfully submitted,

JOHN JONES JR., Pro Se

ADDENDUM CLARIFYING SUPPLEMENTAL MONELL ALLEGATIONS
(NON-AMENDMENT)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN JONES JR., Plaintiff
v.
KEVIN P. WAGNER SR., et al., Defendants

Plaintiff John Jones Jr., proceeding pro se, submits this Addendum solely to clarify the procedural nature and intended scope of his Supplemental Monell Allegations previously filed in this action.

1. The Supplemental Monell Allegations are submitted for the limited purpose of clarifying, particularizing, and organizing municipal liability allegations already asserted in the Civil Rights Complaint.

2. The Supplemental Monell Allegations do not add new defendants, do not assert new causes of action, do not alter the underlying factual timeline, and do not expand the constitutional theories previously pleaded.

3. The Supplemental Monell Allegations are not intended as, and should not be construed as, an amended complaint or a request for leave to amend under Rule 15 of the Federal Rules of Civil Procedure.

4. The Supplemental Monell Allegations merely further detail existing allegations concerning municipal policy, custom, policymaker involvement, ratification, training, supervision, and deliberate indifference already placed at issue in the Complaint.

5. Plaintiff submits this Addendum to ensure clarity of record and to avoid any misunderstanding as to the procedural posture of the Supplemental Monell Allegations at the pleading stage.

Respectfully submitted,

JOHN JONES JR.
Plaintiff, Pro Se

Date: 3-FEB-26

# SUPPLEMENTAL FACTUAL ALLEGATIONS

## (NON-PLEADING FACTUAL SUPPLEMENT — PRIOR NOTICE TO DISTRICT ATTORNEY)

### X. Plaintiff-Authored Written Notice (Weintraub Letter)

X.1 Prior to the events giving rise to this action, Plaintiff authored and transmitted written correspondence commonly referred to as the "Weintraub letter," which was sent directly to the Bucks County District Attorney and copied to multiple state and federal officials. This correspondence provided advance notice of retaliatory motives, misuse of enforcement authority, and the foreseeable risk of unconstitutional action absent intervention.

X.2 The Weintraub letter was deliberately disseminated to prosecutorial, judicial, and federal authorities, underscoring the seriousness of Plaintiff's warnings and placing the District Attorney on actual notice of a substantial and obvious risk of constitutional injury.

X.3 Despite receipt of this written notice, the District Attorney failed to investigate, intervene, supervise, or take corrective action, thereby disregarding a known and foreseeable risk of retaliatory and unconstitutional enforcement.

X.4 This deliberate indifference was a moving force behind Defendant Wagner's subsequent unconstitutional conduct toward Plaintiff.

### X.5 Foreseeability and Escalation Risk

X.5 The Weintraub letter specifically warned of escalation risks stemming from unresolved retaliatory animus and misuse of law-enforcement authority. The subsequent actions taken against Plaintiff were consistent with those warnings and fell squarely within the foreseeable outcomes identified in the written notice.

### X.6 Temporal Proximity

X.6 The unconstitutional conduct directed at Plaintiff occurred within a close temporal proximity to the transmission and receipt of the Weintraub letter, reinforcing the inference that the risk identified in advance was both imminent and obvious, and that intervention was reasonably required.

### X.7 Absence of Supervisory or Corrective Measures

X.7 Following receipt of the Weintraub letter, no corrective guidance, supervisory review, training directive, or intervention was issued to address the risks identified therein. The absence of any remedial action permitted the continuation and execution of retaliatory enforcement conduct.

### X.8 Notice Beyond a Single Official

X.8 The Weintraub letter was not limited to a single recipient but was copied to multiple governmental authorities, further reinforcing the objective reasonableness of Plaintiff's expectation that preventative action would be taken and underscoring the breadth of notice provided prior to

the constitutional injury.

## X.9 Purpose and Scope of This Supplement

This document is submitted solely as a non-pleading factual supplement to clarify prior notice, foreseeability, and causation. It does not assert new claims, add parties, amend counts, or request relief, and is intended exclusively to supplement the factual record supporting Plaintiff's existing claims in this action.

Respectfully submitted

_____

John Jones Jr.

## John Jones Jr. v. Kevin P. Wagner Sr., et al.
## Non-Pleading Factual Supplement Regarding Damages

Plaintiff submits this Non-Pleading Factual Supplement to further specify and preserve categories of damages arising from the maintained criminal charges and related incarceration. This submission does not amend the Complaint, does not add new causes of action, and does not alter any theories of liability previously pled.

As a direct and proximate result of Defendants' actions and the maintained charges, Plaintiff has suffered and continues to suffer serious injuries and damages.

Plaintiff requires a left shoulder replacement as a result of incarceration.

Plaintiff developed and now suffers from a serious heart condition as a result of incarceration.

Plaintiff suffered severe financial losses due to the maintained charges and continues to suffer ongoing financial injuries.

Plaintiff suffers emotional distress and severe depression as a result of the maintained charges, including the death of Plaintiff's service dog, Holly.

Plaintiff has suffered and will continue to suffer numerous physical, emotional, medical, and financial injuries caused by the maintained charges.

Plaintiff's injuries are ongoing in nature. Additional damages may be revealed, quantified, or substantiated through discovery, expert testimony, and further proceedings. Plaintiff expressly reserves the right to seek all compensatory, consequential, emotional distress, medical, economic, and other damages permitted by law.

Respectfully submitted,

John Jones Jr.
Plaintiff, Pro Se

## LITIGATION HOLD / PRESERVATION NOTICE

| To (Defendant Name): | **DEFENDANT NAME:** Bucks County |
|---|---|
| | **ADDRESS FOR SERVICE:** |
| Address: | c/o Bucks County Commissioners / Chief Clerk |
| | 100 North Main Street |
| | Doylestown, PA 18901 |
| City / State / ZIP: | |

PLEASE TAKE NOTICE that this letter serves as a formal litigation hold and preservation notice. You are hereby instructed to preserve all documents, records, communications, and electronically stored information ("ESI") that may be relevant to pending or reasonably anticipated federal litigation.

### Duty to Preserve Evidence

This duty applies to any and all materials in your possession, custody, or control, whether maintained personally, professionally, or through third parties. This obligation applies regardless of format or medium.

### Materials to Be Preserved Include, But Are Not Limited To:

- Written statements, reports, affidavits, notes, and drafts
- Emails, text messages, instant messages, and messaging app data
- Call logs, voicemails, and contact records
- Electronic files, metadata, and document revision histories
- Photographs, videos, audio recordings
- Cloud-based data, backups, and archived materials
- Data stored on personal devices used for any relevant communications

### Relevant Time Period

This preservation obligation applies to materials created, modified, transmitted, or maintained from at least December 2021 through May 17, 2024, and continuing through the present.

### Prohibition on Destruction or Alteration

You must suspend any routine or automatic deletion, overwriting, or destruction policies that may affect relevant materials. This includes, but is not limited to, auto-delete functions, device resets, and data purges.

Failure to preserve relevant evidence after receipt of this notice may result in court-imposed sanctions, adverse inference instructions, or other remedies as permitted by law.

Sincerely,

John Jones Jr.
Plaintiff, Pro Se

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

John Jones Jr.,
Plaintiff,

v.

Kevin P. Wagner Sr., et al.,
Defendants.
Civil Action No. 26-1050

## NOTICE OF INCORPORATION BY REFERENCE OF TRIAL TRANSCRIPT FILED IN CIVIL ACTION NO. 23-4879

Plaintiff provides notice that the complete criminal trial transcript referenced in the Complaint herein (approximately 300 pages) was previously filed in this Court in *Jones v. Shapiro et al.*, Civil Action No. 23-4879.

The transcript is part of the official federal court record in that matter and is available to this Court and all parties through the docket of Civil Action No. 23-4879.

Plaintiff relies upon and incorporates that transcript herein by reference. Due to its length, the transcript is not reproduced in the service copies of the Complaint and exhibits served upon Defendants.

Respectfully submitted,

John Jones Jr.

9 Iris Road

Levittown, PA 19057

# EXHIBT 1-LPC

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA**

**JOHN JONES JR., Plaintiff**

**v.**

**KEVIN P. WAGNER SR., et al., Defendants**

**Civil Action No. 26-1050**

LACK OF PROBABLE CAUSE (DECEMBER 11, 2021 ARREST) LACK OF

PROBABLE CAUSE

(DECEMBER 11, 2021 ARREST) – NESHAMINY LETTER VS. AFFIDAVIT

Overview. This section contrasts the explicit language of the Neshaminy School District letter

dated November 9, 2021 with the assertions contained in the Middletown Township Affidavit

of Probable Cause for the arrest of December 11, 2021. The documents are read together

because the affidavit relies on the letter as the core predicate for knowledge and trespass

notice.

1) Express scope of the November 9, 2021 Neshaminy letter. The Burns letter states in

substance: it was brought to the school's attention that John Jones had been parking on Walter

Miller Elementary School property during school hours; no one is permitted on school

property except for school business during school hours; further incidents could result in

prosecution under Title 18 § 3503. Structural meaning of the letter: the conduct described is

parking; the temporal scope is during school hours; the language is conditional and

prospective; the letter does not state a blanket prohibition on presence on school grounds at all

times; the letter does not authorize arrest; the letter does not state that entry outside school

hours constitutes trespass.

2) Assertions in the December 11, 2021 Affidavit of Probable Cause. The Middletown

affidavit asserts in substance: officer observed John Jones on school property beside his truck

on the baseball field; officer referenced a trespassing letter on file; Jones acknowledged

receiving the letter; officer concluded Jones was trespassing. Notable structural features: the term trespassing is used as a conclusion; the affidavit does not quote the limiting school-hours language of the letter; the affidavit does not state school was in session; the affidavit does not state posted signage applicable at that time; the affidavit does not state a directive to leave and refusal; the affidavit relies on the letter for knowledge and notice.

3) Direct contradiction between letter scope and affidavit inference. The arrest occurred December 11, 2021, a Saturday around midday with no school in session. The letter predicate is explicitly limited to parking during school hours. The affidavit inference expands the predicate to presence on property at any time equals trespass. This expansion is not contained in the letter text. The affidavit therefore converts a time-limited parking warning into a blanket trespass prohibition. That conversion is the central probable cause defect.

4) Statutory element mapping. For trespass predicated on notice, the following must exist: notice against entry applicable at that time and place; knowledge of that notice; entry or remaining in defiance of the notice. Application: notice applicable at that time is absent because the only written notice is limited to school hours; knowledge is limited to school-hours parking restriction; defiance is not established where the notice does not apply temporally. Thus the affidavit supplies knowledge only by omitting the temporal limitation contained in the letter.

5) Magistrate review context. The affidavit and the November 9 letter were both available for review at probable cause approval. The letter's operative limitation – during school hours – is facial and unambiguous. The affidavit's probable cause conclusion depends on treating the letter as a general trespass notice without that limitation. The approving magistrate was therefore presented with a time-limited school-hours parking warning and an affidavit. Relationship proximity between approving Magistrate and Wagner family creates appearance concern when omission aligns Magistrate comparison. The approving Magistrate was Joanne

V. Kline. Defendant Kevin P. Wagner Sr. worked in Kline's court for decades as a Bucks County constable, and they are neighbors living within a two-minute walk of one another and are socially acquainted. Plaintiff John Jones Jr. sued Joanne V. Kline in the United States District Court for the Eastern District of Pennsylvania in 2015. For these reasons, Joanne V. Kline should have recused herself from the matter. See Federal Court docket number 15-5594

6) Resulting probable cause deficiency. When the November 9 letter and December 11 affidavit are read together, the only written notice is temporally limited; the arrest occurred outside that temporal scope; the affidavit relies on the letter while omitting its limitation; the conclusion of trespass therefore lacks a valid notice predicate at that time. Accordingly, probable cause for trespass on December 11, 2021 is not established by the documents themselves.

7) Pleading-ready conclusion. The November 9, 2021 Neshaminy letter restricted parking on school property during school hours only and did not impose a blanket prohibition on presence outside those hours. Plaintiff's December 11, 2021 arrest occurred on a Saturday when school was not in session. The Middletown Affidavit of Probable Cause relied on the existence of the November 9 letter to establish notice yet omitted its express temporal limitation. Because the only written notice did not apply at the time of arrest, the affidavit lacked a valid notice predicate and did not establish probable cause for trespass.

Respectfully submitted,

John Jones Jr.



**We Build Futures**

# Neshaminy School District

Administrative Offices  ●  2250 Langhorne-Yardley Road  ●  Langhorne, PA 19047

November 9, 2021

Mr. John Jones Jr.

Levittown PA 19057

Dear Mr. Jones,

It has been brought to my attention that you have been parking your vehicle on Walter Miller Elementary School Property during school hours. Please be advised that no one is permitted on the property except for school business during school hours.

Further incidents could result in you being subjected to criminal prosecution under Pennsylvania Title 18 Section 3503 (b)1i Defiant Trespass.

Thank you for your cooperation in this matter.

Sincerely,

Kevin Burns
Chief of Security
Neshaminy School District

c: Middletown Township Police
Troy Bodolus

Main number – 215-809-6000
Superintendent – 215-809-6500     Assistant Superintendent – 215-809-6510     Director of Administration – 215-809-6510     Technology Services – 215-809-6572
Business Administration – 215-809-6520     Curriculum & Instruction – 215-809-6550     Facilities & Transportation – 215-809-6250



## POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: | OTN/LiveScan Number | Complaint/Incident Number |
|---|---|---|---|
| CR-38-21 | 12/13/21 | K 212880 | 44-21-01. 903 |

| Defendant Name and Address: | First: JOHN | Middle: | Last: JONES | JR |
|---|---|---|---|---|

### AFFIDAVIT OF PROBABLE CAUSE

Your Affiant, Officer Jeff Wagner, badge 44104, of the Middletown Township Police Department, Bucks County, Pa, has been duly sworn/appointed/employed as a police officer in the Commonwealth of Pa since June 2016. Your Affiant is a certified Police Officer in Pa by the Pa Municipal Police Officers Education and Training Commission. Your affiant is assigned to the Uniformed Patrol Division. Your affiant has successfully completed numerous training courses and seminars conducted by federal, state, and local law enforcement agencies, as well as private organizations, relating to a wide variety of criminal investigations.

On December 11th, 2021 at 1149 hours, your affiant responded to the Walter Miller Elementary School and made contact with the defendant, John Jones Jr who was trespassing on school property. Jones Jr was next to his Silver in color Chevrolet Pickup Truck bearing PA registration YJW-4924 which was parked on the grass baseball field.

When advised that he was trespassing, Jones Jr acknowledged that he received the trespassing letter from the school district which was delivered via certified mail. The letter was signed by Neshaminy School District Chief of Security Kevin Burns. Your affiant observed fresh tire marks from Jones Jr's truck on the grass baseball field.

Jones Jr was placed into custody and transported to the Middletown Township Police Department where he was processed and released.

Based upon the above factual circumstances, your affiant respectfully requests a summons be issued for John Jones Jr per the charges listed in the attached Criminal Complaint. Criminal Arrest 32024 was assigned to these charges.

I, **JEFFREY M WAGNER** , BEING DULY SWORN ACCORDING TO THE LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

I CERTIFY THAT THIS FILING COMPLIES WITH THE PROVISIONS OF THE CASE RECORDS PUBLIC ACCESS POLICY OF THE UNIFIED JUDICIAL SYSTEM OF PENNSYLVANIA THAT REQUIRE FILING CONFIDENTIAL INFORMATION AND DOCUMENTS DIFFERENTLY THAN NON-CONFIDENTIAL INFORMATION AND DOCUMENTS.

(Signature of Affiant)

Sworn to me and subscribed before me this _15_ day of _Dec_ , _2021_

_12-15-21_ Date _____ , Magisterial District Judge

My commission expires first Monday of January, _2026_

SEAL

# POLICE CRIMINAL COMPLAINT — TARGETED ANALYSIS OF NOTICE AND PRIVILEGE ASSERTIONS

1. The Police Criminal Complaint asserts that the defendant was "not licensed or privileged to be in, remain or enter" school property. However, the Complaint relies upon prior notice from the Neshaminy School District as the basis for that assertion. The referenced notice describes restrictions framed around conduct occurring during school hours. The Complaint converts that conditional and time-specific restriction into a blanket prohibition without alleging that such expanded scope existed. The Complaint therefore extends its cited notice beyond the scope stated in the notice itself.

2. The Complaint states that the defendant had previously been notified by the school district regarding presence on school property. However, the Complaint does not allege that the notice applied at all times, that access outside school hours was prohibited, or that the property was closed at the time alleged. The Complaint omits the factual scope of the notice it relies upon. Without alleging the temporal or situational extent of the notice, the Complaint does not establish that the alleged conduct fell within the boundaries of the prior notification.

3. The Complaint states that the defendant was trespassing and lacked privilege. These are legal conclusions. The Complaint does not allege facts establishing revocation of privilege at the time alleged, such as property closure, a direct order to leave, posted prohibition applicable at that time, or a universal ban notice. The Complaint therefore replaces factual support with conclusory statements regarding trespass and privilege.

4. The Complaint's theory is that prior notice rendered the defendant's presence unauthorized. Because the Complaint cites the school district notice as the basis for that theory, the scope of the Complaint's assertion is limited by the scope of that notice. The Complaint does not allege that the notice applied outside school hours or to all presence on the property. The Complaint therefore advances a theory broader than the factual basis it identifies, creating an internal inconsistency within the Complaint itself.

5. The Complaint includes vehicle-based trespass allegations while relying on a notice source framed in terms of personal presence on school property. The Complaint does not allege that the prior notice addressed vehicle operation, parking on grounds, or presence on the property at the time alleged. The Complaint merges trespass concepts without alleging facts connecting the referenced notice to the specific conduct charged.

6. The Complaint lists the incident date and time but does not allege that the school was in session, that the property was restricted at that time, or that the area was closed or prohibited. Where trespass is alleged based on prior notice, the applicability of that notice at the time of the alleged conduct is essential. The Complaint does not state facts establishing that the prior notice applied at the time alleged.





District Judge Joanne Kline recently with Constable Kevin Wagner as she retired.

Credit:: Kevin Wagner

When Joanne Kline was appointed district judge in Bristol Township at 38, little did she know she was beginning a career that would span five elections and

# EXHIBT 1-PCC

# POLICE CRIMINAL COMPLAINT — TARGETED ANALYSIS OF NOTICE AND PRIVILEGE ASSERTIONS

**1.** The Police Criminal Complaint asserts that the defendant was "not licensed or privileged to be in, remain or enter" school property. However, the Complaint relies upon prior notice from the Neshaminy School District as the basis for that assertion. The referenced notice describes restrictions framed around conduct occurring during school hours. The Complaint converts that conditional and time-specific restriction into a blanket prohibition without alleging that such expanded scope existed. The Complaint therefore extends its cited notice beyond the scope stated in the notice itself.

**2.** The Complaint states that the defendant had previously been notified by the school district regarding presence on school property. However, the Complaint does not allege that the notice applied at all times, that access outside school hours was prohibited, or that the property was closed at the time alleged. The Complaint omits the factual scope of the notice it relies upon. Without alleging the temporal or situational extent of the notice, the Complaint does not establish that the alleged conduct fell within the boundaries of the prior notification.

**3.** The Complaint states that the defendant was trespassing and lacked privilege. These are legal conclusions. The Complaint does not allege facts establishing revocation of privilege at the time alleged, such as property closure, a direct order to leave, posted prohibition applicable at that time, or a universal ban notice. The Complaint therefore replaces factual support with conclusory statements regarding trespass and privilege.

**4.** The Complaint's theory is that prior notice rendered the defendant's presence unauthorized. Because the Complaint cites the school district notice as the basis for that theory, the scope of the Complaint's assertion is limited by the scope of that notice. The Complaint does not allege that the notice applied outside school hours or to all presence on the property. The Complaint therefore advances a theory broader than the factual basis it identifies, creating an internal inconsistency within the Complaint itself.

**5.** The Complaint includes vehicle-based trespass allegations while relying on a notice source framed in terms of personal presence on school property. The Complaint does not allege that the prior notice addressed vehicle operation, parking on grounds, or presence on the property at the time alleged. The Complaint merges trespass concepts without alleging facts connecting the referenced notice to the specific conduct charged.

**6.** The Complaint lists the incident date and time but does not allege that the school was in session, that the property was restricted at that time, or that the area was closed or prohibited. Where trespass is alleged based on prior notice, the applicability of that notice at the time of the alleged conduct is essential. The Complaint does not state facts establishing that the prior notice applied at the time alleged.

**Conclusion.** The Police Criminal Complaint asserts that the defendant lacked license or privilege to be on school property based on prior notice, yet the Complaint fails to state facts establishing that the referenced notice applied to the time, manner, or scope of the alleged conduct. The Complaint therefore substitutes legal conclusions for factual elements and expands the scope of its cited notice without alleging facts supporting that expansion.

Respectfully submitted,

John Jones Jr.

9 Iris Road

Levittown, PA 19057

| COMMONWEALTH OF PENNSYLVANIA COUNTY OF BUCKS | | **POLICE CRIMINAL COMPLAINT** **COMMONWEALTH OF PENNSYLVANIA** **VS.** | |
|---|---|---|---|

COMMONWEALTH OF
PENNSYLVANIA
COUNTY OF BUCKS

Magisterial District Number: 07-1-08

MDJ: Hon. JOHN J. KELLY JR
2661 TRENTON RD
LEVITTOWN, PA 19056

Address:

Telephone: 215-946-5450

**POLICE CRIMINAL COMPLAINT**
**COMMONWEALTH OF PENNSYLVANIA**
**VS.**

DEFENDANT: *(NAME and ADDRESS):*

| JOHN | | JONES | JR |
|---|---|---|---|
| First Name | Middle Name | Last Name | Gen |

9    IRIS RD
**LEVITTOWN**          PA                    19057

### NCIC Extradition Code Type

- ☐ 1-Felony Full
- ☐ 2-Felony Ltd.
- ☐ 3-Felony Surrounding States
- ☐ 4-Felony No Ext
- ☐ 5-Felony Pend.
- ☐ 6-Felony Pend. Extradition Determ.
- ☐ A-Misdemeanor Full
- ☐ B-Misdemeanor Limited
- ☐ C-Misdemeanor Surrounding States
- ☒ D-Misdemeanor No Extradition
- ☐ E-Misdemeanor Pending
- ☐ F-Misdemeanor Pending Extradition Determ.
- ☐ Distance:

### DEFENDANT IDENTIFICATION INFORMATION

| Docket Number | Date Filed | OTN/LiveScan Number | Complaint/Incident Number | Request Lab Services? |
|---|---|---|---|---|
| CR-318-21 | 12/13/21 | R 211288-0 | 44-21-01903 | ☐ YES ☒ NO |

| GENDER | DOB 6/5/1961 | POB | | Add'l DOB | Co-Defendant(s) ☐ |
|---|---|---|---|---|---|
| ☒ Male | | First Name | Middle Name | Last Name | Gen. |
| ☐ Female | AKA | | | | |

| RACE | ☒ White | ☐ Asian | ☐ Black | ☐ Native American | ☐ Unknown |
|---|---|---|---|---|---|

| ETHNICITY | ☐ Hispanic | ☒ Non-Hispanic | ☐ Unknown |
|---|---|---|---|

| HAIR COLOR | ☐ GRY (Gray) ☐ BLK (Black) ☐ BLN (Blonde / Strawberry) | ☐ RED (Red/Aubn.) ☐ ONG (Orange) | ☐ SDY (Sandy) ☐ WHI (White) | ☐ BLU (Blue) ☐ XXX (Unk/Bald) | ☐ PLE (Purple) ☐ GRN (Green) | ☒ BRO (Brown) ☐ PNK (Pink) |
|---|---|---|---|---|---|---|

| EYE COLOR | ☐ BLK (Black) ☐ HAZ (Hazel) | ☒ BLU (Blue) ☐ MAR (Maroon) | ☐ BRO (Brown) ☐ PNK (Pink) | ☐ GRN (Green) ☐ MUL (Multicolored) | ☐ GRY (Gray) ☐ XXX (Unknown) |
|---|---|---|---|---|

| DNA | ☐ YES ☒ NO | DNA Location | | WEIGHT (lbs.) |
|---|---|---|---|---|
| FBI Number | 5416710W7 | MNU Number | | 220 |
| Defendant Fingerprinted: | ☒ YES ☐ NO | | **Ft.  HEIGHT  In.** | |
| Fingerprint Classification: | | | 5 | 11 |

### DEFENDANT VEHICLE INFORMATION

| Plate # | State | Hazmat | Registration Sticker (MM/YY) | Comm'l Veh. Ind. | School Veh. | Oth. NCIC Veh. Code | Reg. same as Def. |
|---|---|---|---|---|---|---|---|
| YJW4924 | PA | ☐ | | ☐ | ☐ | | |
| **VIN** | | Year | Make | Model | Style | Color | |
| 1GCHK23235F898095 | | 2005 | CHEV | SLV | PK | | ☐ |

Office of the attorney for the Commonwealth   ☐ Approved   ☐ Disapproved Because: _____

(The attorney for the Commonwealth may require that the complaint, arrest warrant affidavit, or both be approved by the attorney for the Commonwealth prior to filing. See Pa.R.Crim.P. 507).

| (Name of the attorney for the Commonwealth) | (Signature of the attorney for the Commonwealth) | (Date) |
|---|---|---|

I, **JEFFREY M WAGNER**                     44625        44104
   (Name of the Affiant)                     PSP/MPOETC-Assigned Affiant ID Number and Badge #

of **Middletown Township Police**                                PA0090900
   (Identify Department or Agency Represented and Political Subdivision)     (Police Agency Ori Number)

   do hereby state: (check appropriate box)

1. ☒ I accuse the above named defendant who lives at the address set forth above

   ☐ I accuse the defendant whose name is unknown to me but who is described as

   ☐ I accuse the defendant whose name and popular designation or nickname are unknown to me and whom I have
      therefore designated as John Doe or Jane Doe

   with violating the penal laws of the Commonwealth of Pennsylvania at **[213] Middletown Township**
                                                      (Subdivision Code)       (Place-Political Subdivision)

   **10 S COBALT RIDGE DR   LEVITTOWN, PA 19056**

   in _____**BUCKS**_____ County [ __09__ ] on or about _____ Between 12/11/2021 1149 and 12/11/2021 1230
                          (County Code)                      (Offense Date)

 **POLICE CRIMINAL COMPLAINT**

| Docket Number: | Date Filed: | OTN/LiveScan Number | Complaint/Incident Number |
|---|---|---|---|
| C2-318-21 | 8/13/21 | R211288-0 | 44-21-01903 |

| Defendant Name | First: JOHN | Middle: | Last: JONES | JR |
|---|---|---|---|---|

The acts committed by the accused are described below with each Act of Assembly or statute allegedly violated, if appropriate. When there is more than one offense, each offense should be numbered chronologically.

(Set forth a *brief* summary of the facts sufficient to advise the defendant of the nature of the offense(s) charged. A citation to the statute(s) allegedly violated, without more, is not sufficient. In a summary case, you must cite the specific section(s) and subsection(s) of the statute(s) or ordinance(s) allegedly violated.)

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 | Number of Victims Age 60 or Older _____ |
|---|---|---|---|---|

| ☒ | 1 | 3503 | B1I | of the | 18 | 1 | M3 | | |
|---|---|---|---|---|---|---|---|---|---|
| Lead? | Offense # | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Code | UCR/NIBRS Code |

| PennDOT Date (If Applicable) | Accident Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of the statute or ordinance):
**Def Tres Actual Communication Tc**

Acts of the accused associated with this Offense:

**The actor knowing that he was not licensed or privileged to do so, entered or remained in a place, namely, Walter Miller Elementary School, 10  Cobalt Ridge Drive S. Levittown PA 19056 as to which notice against trespass was given by actual communication to the actor, namely, a certified letter from the Neshaminy School District Chief of Security in violation of Section 3503(b)(1)(i) of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa. C.S. -3503(b)(1)(i).**

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 | Number of Victims Age 60 or Older _____ |
|---|---|---|---|---|

| ☐ | 2 | 3717 | (a) | of the | PA Vehicle Code | 1 | S | | |
|---|---|---|---|---|---|---|---|---|---|
| Lead? | Offense # | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Code | UCR/NIBRS Code |

| PennDOT Date (If Applicable) | Accident Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of the statute or ordinance):
**TRESPASS BY MOTOR VEHICLE**

Acts of the accused associated with this Offense:
**PAVC 3717(a) Trespass By Motor Vehicle**

**IN THAT, on or about the said date, THE DEFENDANT did knowingly operate a motor vehicle on real property other than a private road or driveway without consent of the owner of lessor of the real property, in violation of Section 3717(a) of the PA Vehicle Code. (75P.S. 3717(a) – Summary)**

*jike*

# EXHIBT 1-KWL

Case 2:26-cv-01050-MAK    Document 25    Filed 05/13/26    Page 99 of 148

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**John Jones Jr.**
**Plaintiff,**
**v.**
**Kevin P. Wagner Sr. et al.**
**Defendants.**

**Civil Action No. 26-1050**

## SUPPLEMENTAL FACTUAL ALLEGATIONS

### (NON-PLEADING FACTUAL SUPPLEMENT — PRIOR WILLINGNESS TO SURRENDER AND BRISTOL DISTRICT COURT NOTICE)

X. Plaintiff-Authored Written Notice (April 21 2021 Bristol District Court Letter)

X.1 Prior to the events culminating in Plaintiff's February 3 2022 arrest and detention, Plaintiff authored and transmitted written correspondence dated April 21 2021 to Bristol Township District Court 7103 (the "April 21 letter"), within the jurisdiction and supervisory authority of Magisterial District Judge Kevin P. Wagner Sr.

X.2 In this correspondence, Plaintiff expressly stated that if any warrant were issued in connection with Bristol Township matters, Plaintiff would voluntarily surrender to the Bucks County District Attorney.

X.3 Because the April 21 letter was directed to Bristol Township District Court 7103, presided over by Magisterial District Judge Kevin P. Wagner Sr., the Court was placed on advance written notice that Plaintiff would surrender voluntarily upon issuance of any Bristol Township warrant.

X.4 On February 3 2022, Bristol Township Police Officer Jason Mancuso informed Plaintiff that a warrant existed and demanded surrender within approximately one hour. Plaintiff requested permission to surrender the following morning at 9:00 a.m. to secure care arrangements for his service dog, Holly.

X.5 Despite Plaintiff's documented voluntary-surrender posture known to the Bristol Township court and authorities, Officer Mancuso denied next-morning surrender and required immediate custody.

X.6 This refusal created a custodial emergency that prevented Plaintiff from arranging care for Holly.

X.7 Holly's death during Plaintiff's incarceration was a foreseeable and direct consequence of denying brief surrender deferral despite prior written notice that Plaintiff would surrender upon warrant issuance.

X.8 The April 21 letter establishes that Bristol Township judicial and law-enforcement authorities had advance written notice of Plaintiff's willingness to surrender, yet imposed immediate surrender on February 3 2022, directly resulting in the loss described.

X.9 Purpose and Scope of This Supplement

This document is submitted solely as a non-pleading factual supplement to clarify prior notice of Plaintiff's willingness to surrender, the denial of reasonable surrender deferral by Officer Mancuso, and resulting causation during Plaintiff's February 2022 detention.

Respectfully submitted,

John Jones Jr.

9 Iris Rd.

Levittown, PA 19057

# John Jones Jr.
# 9 Iris Rd. Levittown
# PA 19057

District Court 7103                                    Via Fax  267-885-1667
Bath Road                                              21-APR-2021
Levittown, PA

Tammy:

I have not received any word on my continuance request. I was used to your many voice messages stating how "warrants would be issued" if I did not appear or how I would be found guilty "of all charges" regardless of/evidence on/of record and or circumstances provided earlier in absentia. Yes, you said warrants would be issued, I will not be stepping foot in any Bristol TWP court, and moreover one that Bristol TWP police officer Lt. Johnson disclosed in a phone call while in my doctors office with my doctor present, that he had a rapport with Kevin Wagner Sr. Judge Daniel Baranoski dismissed multiple (8 or more) Bristol TWP charges in absentia because they were unconstitutional.

Feel free to leave a voice message as you have done numerous times in the past. I will be turning myself into the district attorney on Friday if "warrants are issued" as you have stated numerous times on recordings in the past. I'll surrender to the District Attorney.

I have a service dog and if you or your TWP people further hinder my care of her in any way including for parking tickets I can prove others within the township "clique" have gotten away with such acts unhindered I will publicly provide 100% legal evidence that my allegations are accurate. Did you know that higher learning institutions as well as employers may remove any individuals due to the over burdensome security expense of any such person within their organization?  A cop uses the "N" word, no cop kid college.

Yes, if any police officer EVER used, for instance the "N" word, at say, an Irish Pub, a local eatery/restaurant or in the middle of a public street, where they have no reasonable expectation of privacy and furthermore they jeopardized their entire extended family. It is a whole new world for police. Now a hero cop is one that testifies against other cops, not one taking the advice of an FOP representative telling him about the "Dead mans act", an archaic 1860's law still on the books, and stepping into traffic, running into danger or committing suicide in order to avoid litigation and keep their family well (FOP) cared for regardless of their past illegal/inappropriate/racist or otherwise abusive actions towards others in society which they suspect may now come into light after many years of not so.

If Kevin Wagner Sr. finds me guilty in absentia I will surrender to the District Attorney and proceed accordingly within the laws of the Common Wealth of Pennsylvania.


_____
JOHN JONES JR.

cc. Judge Jeffery L. Finely, Bucks County, PA.  Fax 215-348-6101
     Judge Wallace H, Bateman, President Judge, Bucks County, PA.
     Bucks County District Attorney Matthew Weintraub. Fax 215-348-6299
     Judge Cynthia M. Rufe, US Federal Court Eastern District of Pennsylvania

# EXHIBT 1-PCR

Case 2:26-cv-01050-MAK    Document 25    Filed 05/13/26    Page 104 of 148

## BUCKS COUNTY PRISON CUSTODY REQUEST (11-FEB-2022) — DETENTION CONDITIONS AND CHARGE ESCALATION ANALYSIS

**1.** Plaintiff was arrested and incarcerated on February 3, 2022 on eight charges arising from the underlying incident involving the Wagner family. Bail on those eight charges was set at one million dollars ($1,000,000). The February 11, 2022 custody request was therefore authored during confinement based exclusively on the original eight-charge case. The terroristic-threats charge was not yet filed at that time.

**2.** The custody request records that intake personnel lost Plaintiff's eyeglasses, resulting in impaired vision and severe headaches. Plaintiff further documented that he had not been provided any telephone call or outside contact for approximately five days following incarceration. He also requested information regarding how to send certified letters from the prison. These written complaints establish contemporaneous documentation of medical deprivation, communication restriction, and legal-mail access limitations during early detention.

**3.** The written staff response on the custody form states that Plaintiff had no RIGHT to telephone access and that outside contact was limited to mail. This response confirms that telephone communication was unavailable and that Plaintiff's ability to communicate externally was restricted to written correspondence during the period documented. The response therefore corroborates Plaintiff's allegation of limited outside contact during incarceration.

**4.** Exactly forty-seven (47) days after Plaintiff's incarceration on February 3, 2022, an additional charge of terroristic threats was filed against Plaintiff by the constables involved in his transport to custody. That additional charge imposed an additional fifty-thousand-dollar ($50,000) bail requirement. The February 11, 2022 custody request predates that later charge and therefore documents detention conditions existing prior to the escalation of charges and bail.

**5.** Because the custody request demonstrates that Plaintiff was already experiencing communication restriction, medical impairment, and confinement-related harm during incarceration on the original eight charges, the later-filed terroristic-threats charge necessarily prolonged the same documented detention conditions. The additional bail requirement extended Plaintiff's confinement and thereby extended the harms contemporaneously recorded in the February 11, 2022 custody request.

**6.** The eight original charges resulting in Plaintiff's incarceration arose from allegations involving members of the Wagner family. Those charges produced the detention conditions documented in the custody request. The later-filed terroristic-threats charge extended the same incarceration. The documented harms recorded on February 11, 2022 therefore flowed from the prosecution initiated by Wagner-related allegations and were prolonged by the subsequent charge escalation within that same prosecution.

**Conclusion.** At the time of the February 11, 2022 Bucks County Prison custody request, Plaintiff was incarcerated solely on the original eight charges arising from the

Wagner-initiated prosecution. The custody document contemporaneously records medical deprivation, communication restriction, and confinement harm during that detention. Exactly forty-seven (47) days later, an additional terroristic-threats charge was filed and additional bail imposed, extending Plaintiff's incarceration. The detention harms documented in the February 11, 2022 custody request therefore pre-existed and were prolonged by the later-filed charge within the same prosecution that ultimately resulted in Plaintiff's acquittal on all counts.

## APPENDIX A — VERBATIM TRANSCRIPTION OF BUCKS COUNTY PRISON CUSTODY REQUEST (11-FEB-2022)

B.C.P. Number: 037584
Name: Jones, John
Module & Cell: B-21
Date: 11-FEB-22
Admission Date: 3-FEB-22

I would like to see: Ms. Reed, Deputy Warden

Request:
THE INTAKE PEOPLE LOST MY EYE GLASSES. I NEED GLASSES TO SEE REASONABLY. I AM EXPERIENCING SEVERE HEADACHES. HOW DO I SEND CERTIFIED LETTERS FROM THIS PRISON? I AM REQUESTING IN WRITING WHY I WAS NOT PROVIDED A PHONE CALL OR ACCESS TO ANY OUTSIDE CONTACT FOR A DURATION OF 5 DAYS. I DON'T BELIEVE THAT IS LEGAL TO ANYONE AS SUCH TO PROHIBIT OUTSIDE CONTACT.

Staff Response:
It appears you retained your glasses. Contact medical regarding headaches. See your case manager to send certified mail. You have no **RIGHT** to telephone access; that is only in the movies. You have the right to send and receive mail to be in contact with the outside world.

Respectfully submitted,

John Jones Jr.

9 Iris Road

Levittown, PA 19057

PLEASE SAVE OR SCAN. You can save your
ALL SUBMITTED DOCUMENTS own paperwork
TO MY FILE FOR RETREVAL

**B.C.P. Number**

037584

**ALL INMATES FILL IN THIS SECTION**

**Name (Last, First)**

JONES, JOHN

**Date**

11-FEB-22

**Module and Cell Number**

B-21

**Admission Date**

3-FEB-22

**I would like to see** MS. REED, DUPUTY WARDEN

**I need to see that staff person because** THE INTAKE PEOPE LOST
MY EYE GLASSES. I NEED GLASSES
TO SEE REASONABLY. I AM EXPERIENCIN
SEVERE HEADACHES. HOW DO I SEND
CERTIFIED LETTERS FROM THIS PRISON?
I AM REQUESTING IN WRITING WHY
I WAS NOT PROVIDED A PHONE CALL NOR
ACCESS TO ANY OUTSIDE CONTACT FOR A
DURATION OF 5 DAYS. I DON'T BELEIVE TH
IS LEGAL TO ANYOUE AS SUCH TO PROHIBIT
OUTSIDE CONTACT. DO TO

**Signature of Inmate**

THANY YO

**Do Not Write Below This Line**

**Date request answered:**

**Answer:** It appears you retained your glasses. Contact medical
regarding headaches. See your case manager to send
certified mail. You have no RIGHT to telephone access,
that is only in the movies. You have the right to send

**Referral Sent To:** and recieve mail to be in contact with the outside world.

**Return To:** _____ **Module & Cell #** _____

**Signature of Staff Person** _____

BCCF 194 REV. 10/04

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**John Jones Jr. v. Kevin P. Wagner Sr. et al.**
**Civil Action No. 26-1050**

### NON-PLEADING FACTUAL ANALYSIS BASED UPON DOCUMENTARY EVIDENCE

### POLICE CRIMINAL COMPLAINT / AFFIDAVIT OF PROBABLE CAUSE

**Bristol Township Police**
**Complaint / Incident No. 22-01877-11731**
**Date Filed: February 3, 2022**
**Affiant: Officer Jason Mancuso**

### AFFIDAVIT OF PROBABLE CAUSE - ANALYSIS

## Paragraph 1

> Your Honor, your affiant is Officer Jason Mancuso, a Seventeen year veteran of the Bristol Township Police Department. I was assigned by Lt. Johnson to investigate an ongoing course of conduct committed by the defendant John Jones in regards to several township residents and their safety concerns.

## Analysis:

This opening paragraph immediately characterizes the matter as an "ongoing course of conduct committed by the defendant John Jones" before the affidavit sets forth independently verified facts establishing that any crime was committed. The wording assumes criminal conduct at the outset rather than presenting neutral investigative facts.

The phrase "several township residents" is broad and facially neutral, but the later affidavit identifies the principal persons involved as Kevin Wagner, Jeffrey Wagner, Andrew Korhonen, and Alexus Gordon. Those individuals are not unrelated township residents. They are connected through family, law-enforcement, judicial, and constable relationships.

The affidavit does not disclose in this opening paragraph that Kevin P. Wagner Sr. is a local District Justice, that Jeffrey Wagner is his son and a Middletown Township Police Officer, that Andrew Korhonen is a deputy constable and family-connected to Jeffrey Wagner through Alexus Gordon, or that Alexus Gordon was Jeffrey Wagner's fiancee at the time.

## Problem:

The affidavit begins with a conclusory criminal characterization and presents the matter as involving "several township residents," while delaying or minimizing the fact that the alleged victims and witnesses were closely connected to one another through the Wagner family and related law-enforcement or constable positions.

### Paragraph 2

> On 02-02-2022 at 1100 hours I met with Kevin Wagner. He advised me that he has been filing complaints with Bucks County Court administration about John Jones. Kevin Wagner reported that he has spoken to the Chief of Bucks County Detectives and was advised Bristol Township could handle the investigation and the County would assist if requested.

### Analysis:

This paragraph establishes that Kevin P. Wagner Sr. was not merely a private civilian complainant reporting an isolated incident. The affidavit states that he had already been filing complaints with Bucks County Court Administration about Plaintiff and had already communicated with the Chief of Bucks County Detectives before Officer Mancuso sought the warrant.

The paragraph therefore shows that Kevin Wagner had institutional access and had already shaped the investigative path before the affidavit was submitted. According to the affidavit, Kevin Wagner reported that Bucks County Detectives advised that Bristol Township could handle the investigation and that the County would assist if requested.

This is significant because the affidavit does not state that Officer Mancuso independently contacted Bucks County Detectives, independently verified Kevin Wagner's account of that conversation, or independently determined whether the investigation should have been handled outside Bristol Township due to the Wagner family's judicial and law-enforcement connections.

### Problem:

The complainant, Kevin P. Wagner Sr., appears from the affidavit to have influenced the investigative route before charges were filed. The affidavit does not disclose any independent verification of his claimed communication with Bucks County Detectives or any conflict analysis arising from his status as a District Justice and father of Jeffrey Wagner.

### Paragraph 3

> Kevin Wagner informed that prior to him assuming his position he was a constable in Court 07-1-03. Joanne Kline was the sitting judge. She ruled on several cases against John Jones. Upon her retirement Wagner set the fines and Jones appealed to the Court of Common Pleas.

### Analysis:

This paragraph documents prior official involvement between Kevin Wagner and Plaintiff. The affidavit states that Kevin Wagner previously served as a constable in Court 07-1-03, that Judge Joanne Kline ruled on several cases against Plaintiff, and that after Judge Joanne Kline retired, Kevin Wagner set fines that Plaintiff appealed to the Court of Common Pleas.

This is not neutral background. It establishes a prior adversarial relationship between Plaintiff and Kevin Wagner in a court-related setting. It also shows that Kevin Wagner previously

exercised authority or participated in proceedings affecting Plaintiff before later becoming a complainant in the criminal allegations supporting the February 3, 2022 charges.

The affidavit includes this information, but it does not treat it as a reason to question bias, motive, retaliation, or conflict of interest. Instead, it continues to rely upon Kevin Wagner as a credible source.

**Problem:**

The affidavit contains facts showing prior adversarial court-related history between Kevin Wagner and Plaintiff, but fails to address the obvious concern that Kevin Wagner was an interested and potentially biased complainant rather than a neutral witness.

**Paragraph 4**

> Since this time John Jones has been driving by Kevin Wagner's home located at 16 Gun Road. Kevin Wagner noticed Jones filming his home and the home of his son Jeffrey who lives directly across the street at 17 Gun Road. This behavior has continued and is causing Kevin Wagner to become increasingly alarmed.

**Analysis:**

This paragraph characterizes Plaintiff's conduct as suspicious based on driving and filming activity, but does not identify any unlawful act within the conduct described. The affidavit does not state that Plaintiff entered private property, made threats, attempted contact, or violated any court order or statutory restriction.

The conduct described - driving by residences and filming structures visible from a public roadway - is presented as inherently suspicious without addressing whether such activity occurred from a lawful public vantage point. The affidavit does not identify any ordinance, statute, or condition that would render observation or recording from a public street unlawful.

The paragraph also relies heavily on Kevin Wagner's subjective reaction, stating that he was "becoming increasingly alarmed." This introduces an emotional response as a substitute for objective criminal elements.

The reference to Jeffrey Wagner's residence directly across the street reinforces that the locations are in close proximity and part of a shared family-connected setting, rather than unrelated locations across a broader geographic area.

**Problem:**

The paragraph relies on lawful, publicly observable conduct and a complainant's subjective alarm to imply criminality, without identifying a specific unlawful act or addressing whether the conduct occurred from a public street. It further reinforces the interconnected nature of the complainants without acknowledging the implications of that relationship.

**Paragraph 5**

> Jeffrey Wagner arrested John Jones in Middletown Township for trespassing on 12-11-2021. This arrest occurred while Officer Jeff Wagner was on routine patrol

assigned to the patrol division of Middletown Township Police Department. Officer Jeffrey Wagner has been employed with Middletown since 06-16-2016. Officer Wagner was notified by Officer Beck that Beck observed John Jones trespassing on Walter Miller Baseball fields. These fields are owned and controlled by Neshaminy School District. Wagner was assigned to handle the sector. Sgt. Lubold arrived and it was determined that Officer Wagner would handle the arrest. Officer Jeffrey Wagner was unfamiliar with John Jones at the time of the arrest. There is a letter on file with the Neshaminy Security Director Kevin Burns. This letter was on file prior to the incident and a certified mail copy was sent to John Jones advising him he was not welcome on their property.

**Analysis:**

This paragraph attempts to establish the December 11, 2021 arrest as a factual predicate supporting later allegations. It presents the conclusion that Plaintiff was "trespassing" as an established fact rather than a disputed legal determination.

The affidavit states that Officer Beck "observed John Jones trespassing," but does not provide the underlying observations that would support that legal conclusion. It does not describe what Plaintiff was doing, where exactly he was located, or whether the conditions necessary for trespass under Pennsylvania law were satisfied.

The paragraph further states that Jeffrey Wagner was "unfamiliar with John Jones at the time of the arrest." This statement is significant because the affidavit elsewhere establishes that Kevin Wagner - Jeffrey Wagner's father - had prior court-related involvement with Plaintiff. The assertion of unfamiliarity is presented without reconciling that family connection or explaining whether prior knowledge existed through that relationship.

The reference to the Neshaminy School District letter states that Plaintiff was "not welcome on their property," but does not quote the letter or address its scope. The affidavit does not state whether the letter was limited to school hours, whether the date and time of the alleged trespass fell within that scope, or whether the conditions of the letter were met.

The paragraph also omits any reference to the day of the week or whether school was in session at the time of the alleged trespass, both of which are relevant to whether the letter applied.

**Problem:**

The paragraph presents legal conclusions ("trespassing") without underlying factual detail, relies on secondhand observation without describing the basis for that observation, asserts unfamiliarity without addressing known family connections, and characterizes the Neshaminy letter as a blanket prohibition without addressing its actual language, scope, or applicability at the time of the alleged incident.

### Paragraph 6

> John Jones has provided photos to Court 07-1-08 CCA Melanie Chesko in person of Kevin Wagner's home, Jeffrey Wagner's home and the home of Andy Korhonen which

is located at 56 Gable Hill Rd. Andrew Korhonen is a deputy constable and the step father of Jeffrey Wagner's fiance, Alexus Gordon. Korhonen reports when interviewed that Jones has been coming by his house filming him several times a week for the last three months.

**Analysis:**

This paragraph establishes that Plaintiff provided photographs to court staff, specifically to Court 07-1-08 CCA Melanie Chesko. The affidavit does not state that the submission of photographs to court staff is unlawful, nor does it describe the context in which the materials were submitted, such as whether they accompanied a letter or complaint directed to the court.

The affidavit identifies Andrew Korhonen as a deputy constable and as the stepfather of Jeffrey Wagner's fiancee, Alexus Gordon. This confirms that Korhonen is not an independent complainant but is directly connected to the Wagner family network described throughout the affidavit.

The paragraph reframes the existence of photographs and alleged filming activity as suspicious conduct without identifying whether the photographs were taken from a lawful public location. It does not address whether the properties depicted were visible from a public street or whether the activity had a lawful purpose.

The affidavit also does not address how materials provided to court staff became part of a criminal investigation, nor does it identify any procedural safeguards or limitations governing the use of court-submitted materials.

The mention of Melanie Chesko is presented without context regarding her role, her handling of the materials, or any potential connections to law enforcement or constable personnel. Plaintiff has asserted that Robert Chesko is a Bucks County constable, raising a question as to whether court-submitted materials were transmitted within a network that included constable personnel and then reframed as evidence of criminal conduct.

**Problem:**

The paragraph converts court-submitted materials and public-facing observations into alleged criminal conduct without identifying an unlawful act, fails to address the lawful context in which the materials were created or submitted, and relies on statements from a family-connected deputy constable without addressing potential bias or network communication concerns.

**Paragraph 7**

> On 01-29-2022 at 1656 hour John Jones arrived at 56 Gable Hill Road and began to film Andrew Korhonen and his family to include two grandchildren ages 2 and 4. Korhonen confronted Jones about his continued filming of him and his family. During the conversation Jones became agitated and began to yell at Korhonen and continued to film the juvenile children. Audio and video of this incident was captured on Korhonen's Ring Door bell. Alexus Gordon was present at the time of this incident at 56 Gable Hill Road. Jones yells and curses at Korhonen and Alexus Gordon in the presence of the

juvenile children.

**Analysis:**

This paragraph presents a narrative of the January 29, 2022 incident entirely from the perspective of Andrew Korhonen and the Wagner-family-connected witnesses.

The affidavit states that Plaintiff "arrived" and "began to film," but does not identify whether Plaintiff was located on a public street, sidewalk, or other lawful vantage point at the time of the filming. The affidavit does not identify any boundary crossing, trespass, or unlawful entry associated with Plaintiff's presence.

The paragraph emphasizes that Korhonen's grandchildren were present and that the incident involved "juvenile children." While this is presented as aggravating context, the affidavit does not identify any direct communication, threat, or unlawful act directed toward the children.

The affidavit references Ring doorbell audio and video, but does not describe what the footage objectively shows. It does not state whether the footage confirms or contradicts Korhonen's characterization of the encounter. It does not identify whether the footage captures the full interaction or only a portion of it.

The paragraph states that Plaintiff "yells and curses," but does not quote the language used, does not identify whether any statements constituted threats, and does not distinguish between protected speech and criminal conduct.

The presence of Alexus Gordon is noted, but her role in the interaction is not described beyond being present.

**Problem:**

The paragraph presents a one-sided narrative based on a family-connected witness, does not establish the legality of Plaintiff's location, does not identify a specific criminal act, does not analyze the referenced video evidence, and relies on emotionally charged context involving children without linking that context to a statutory violation.

**Paragraph 8**

> Andrew Korhonen reports that the behavior of John Jones is escalating and he is suffering emotional distress from the constant continued course of conduct Jones is partaking in.

**Analysis:**

This paragraph is entirely composed of Andrew Korhonen's subjective assessment and emotional reaction.

The affidavit uses the phrase "escalating" without identifying objective benchmarks or specific incidents demonstrating escalation beyond the previously described conduct. It does not compare prior conduct to current conduct or provide a timeline showing increased severity.

The statement that Korhonen is "suffering emotional distress" is presented without medical, psychological, or objective corroboration. It is not tied to any statutory element of the offenses charged.

Korhonen is identified elsewhere in the affidavit as a deputy constable and as the stepfather of Jeffrey Wagner's fiancee. This relationship places him within the same network of individuals whose statements form the basis of the affidavit.

**Problem:**

The paragraph substitutes subjective conclusions and emotional reactions for objective evidence, relies on a family-connected witness without addressing bias, and does not establish escalation or criminal conduct through independently verifiable facts.

**Paragraph 9**

> Jeffrey Wagner was interviewed and advised that he filed an official report with his Police Department regarding the actions of Mr. Jones. Captain Feeney of the Middletown Township Police was informed of this investigation and advised all documents could be provided to me. Jeffrey Wagner is concerned and feels that his father, Fiancee, and future father in law's safety may be in jeopardy due to him performing his duty in a legal capacity as a Middletown Police Officer. Jeffrey Wagner reports that he is distressed to leave his fiancee alone while he leaves for work. Jeffrey Wagner informed that Jones' behavior is escalating and he just wants his family and self to be left alone. Jeffrey Wagner reports that he is emotionally distressed and it is affecting his duties as a police officer. Jeffrey Wagner has sought counseling with his Chief of Police, Joseph Bartarillo.

**Analysis:**

This paragraph incorporates statements from Jeffrey Wagner, who is both a prior arresting officer (December 11, 2021) and a central figure in the subsequent allegations.

The affidavit states that Jeffrey Wagner filed an official report with his department and that Captain Feeney was informed. This indicates that Middletown Township Police were institutionally aware of the situation, but the affidavit does not describe the content of that report or whether it was independently reviewed.

The paragraph frames Plaintiff's alleged conduct as arising "due to him performing his duty in a legal capacity as a Middletown Police Officer." This introduces a narrative that Plaintiff's conduct is retaliatory, but the affidavit does not address Plaintiff's position that the December 11, 2021 arrest was unlawful or contested.

The paragraph relies heavily on Jeffrey Wagner's emotional state, including distress, concern for family safety, and the impact on his duties. These statements are not tied to specific threats or actions by Plaintiff.

Jeffrey Wagner is directly connected to Kevin Wagner (his father), Alexus Gordon (his fiancee), and Andrew Korhonen (his future father-in-law). All of these individuals are

identified as complainants or witnesses within the affidavit.

**Problem:**

The paragraph relies on statements from an interested and family-connected witness who was directly involved in prior interactions with Plaintiff, does not address the potential for bias or conflict, does not identify independently verified threats, and substitutes emotional distress and subjective concern for objective evidence of criminal conduct.

**Paragraph 10**

> Alexus Gordon witnessed the incident on 56 Gable Hill Road. She used to reside at the home and it is the home of her step father and mother, Cindy Gordon. Alexus now resides at 17 Gun Road with Jeffrey Wagner. Alexus is extremely upset after hearing Jones speak about her fiancee. Jones then said your daughter is marrying Jeffrey Wagner. Alexus Gordon does not know how Jones obtain this information about her and she fears for her safety. Gordon is severely afraid to be home alone and is now carrying a firearm to complete simple tasks like walking the her dog or going outside. Alexus Gordon never carried a firearm prior to Jones starting his course of conduct. Gordon fears Jones may cause physical harm to her or Jeffrey Wagner.

**Analysis:**

This paragraph confirms Alexus Gordon's familial and residential connection to Jeffrey Wagner and Andrew Korhonen.

The affidavit states that Plaintiff referenced her relationship with Jeffrey Wagner, but does not establish that this information was obtained unlawfully. It does not address whether the relationship was publicly observable or known within the community.

The paragraph again relies heavily on subjective fear and emotional reaction, including statements that Gordon is "extremely upset," "severely afraid," and now carries a firearm.

The affidavit does not identify a specific threat made by Plaintiff toward Alexus Gordon or Jeffrey Wagner. It does not quote any threatening language or describe any conduct that would independently satisfy the elements of stalking or harassment.

The statement that Plaintiff's conduct caused her to begin carrying a firearm is presented as evidence of fear, but is not linked to an objectively verifiable threat.

**Problem:**

The paragraph relies on subjective fear from a family-connected witness, does not establish that Plaintiff made a specific threat, does not quote language constituting a threat, does not identify conduct that independently satisfies the elements of stalking or harassment, and substitutes emotional reaction for objective, independently verifiable facts.

**Paragraph 11**

> Your Honor, Based on the above listed facts, your affiant is requesting a warrant be issued for the specified charges filed on the defendant.

**Analysis:**

This paragraph requests issuance of a warrant based entirely on the preceding narrative.

The preceding paragraphs consist primarily of statements from Kevin Wagner, Jeffrey Wagner, Andrew Korhonen, and Alexus Gordon. Those individuals are connected through family relationships and law enforcement or constable roles.

The affidavit does not state that Plaintiff was interviewed prior to the warrant request. It does not state that Plaintiff's version of events was obtained or considered. It does not identify any independent witness outside of the Wagner family network or associated individuals.

The affidavit references video evidence and prior incidents, but does not analyze whether that evidence corroborates or contradicts the statements relied upon. It does not address whether the conduct described - filming, driving, or speaking - occurred from a lawful public location.

The paragraph relies on the cumulative narrative without distinguishing between verified facts and unverified statements.

**Problem:**

The warrant request is based on a one-sided narrative composed of statements from interconnected and potentially biased witnesses, without documented independent investigation, without inclusion of Plaintiff's account, and without analysis of whether the described conduct satisfies the elements of stalking or harassment.

**Supplemental Factual Statement**

Plaintiff has driven past the referenced residences for approximately thirty years. Plaintiff has also utilized photographs of those residences in court proceedings beginning nearly twenty years ago, including to demonstrate that Wagner-family individuals were permitted to engage in the same conduct for which Plaintiff had been cited for code enforcement violations. Those photographs have been in the possession of Bucks County Court for decades. Any assertion that Plaintiff's presence near those residences or related activity began only after the December 11, 2021 arrest is inconsistent with this documented history. With respect to the Ring camera video referenced in the affidavit, that video was presented to a jury at trial, and the jury found no misconduct or improper behavior by Plaintiff, resulting in acquittal on all stalking and harassment charges.

Respectfully submitted,

John Jones Jr.
9 Iris Road
Levittown, PA 19057



**POLICE CRIMINAL COMPLAINT**

| Docket Number: | Date Filed: | OTN/LiveScan Number | | Complaint/Incident Number |
|---|---|---|---|---|
| CR-15-22 | 02/03/2022 | R 236 202-1 | | 22-01877-11731 |

| Defendant Name | First: | | Middle: | Last: | |
|---|---|---|---|---|---|
| | JOHN | | | JONES | JR |

# AFFIDAVIT OF PROBABLE CAUSE

Your Honor, your affiant is Officer Jason Mancuso, a Seventeen year veteran of the Bristol Township Police Department. I was assigned by Lt. Johnson to investigate an ongoing course of conduct committed by the defendant John Jones in regards to several township residents and their safety concerns

On 02-02-2022 at 1100 hours I met with Kevin Wagner. He advised me that he has been filing complaints with Bucks County Court administration about John Jones. Kevin Wagner reported that he has spoken to the Chief of Bucks County Detectives and was advised Bristol Township could handle the investigation and the County would assist if requested.

Kevin Wagner informed that prior to him assuming his position he was a constable in Court 07-1-03. Joanne Kline was the sitting judge. She ruled on several cases against John Jones. Upon her retirement Wagner set the fines and Jones appealed to the Court of Common Please. Since this time John Jones has been driving by Kevin Wagner's home located at 16 Gun Road. Kevin Wagner noticed Jones filming his home and the home of his son Jeffrey who lives directly across the street at 17 Gun Road. This behavior has continued and is causing Kevin Wagner to become increasingly alarmed.

Jeffrey Wagner arrested John Jones in Middletown Township for trespassing on 12-11-2021. This arrest occurred while Officer Jeff Wagner was on routine patrol assigned to the patrol division of Middletown Township Police Department. Officer Jeffrey Wagner has been employed with Middletown since 06-16-2016. Officer Wagner was notified by Officer Beck that Beck observed John Jones trespassing on Walter Miller Baseball fields. These fields are owned and controlled by Neshaminy School District. Wagner was assigned to handle the sector. Sgt. Lubold arrived and it was determined that Officer Wagner would handle the arrest. Officer Jeffrey Wagner was unfamiliar with John Jones at the time of the arrest. There is a letter on file with the Neshaminy Security Director Kevin Burns. This letter was on file prior to the incident and a certified mail copy was sent to John Jones advising him he was not welcome on their property.

John Jones has provided photos to Court 07-1-08 CCA Melanie Chesko in person of Kevin Wagner's home, Jeffrey Wagner's home and the home of Andy Korhonen which is located at 56 Gable Hill Rd. Andrew Korhonen is a deputy constable and the step father of Jeffrey Wagner's fiancee, Alexus Gordon. Korhonen reports when interviewed that Jones has been coming by his house filming him several times a week for the last three months..

On 01-29-2022 at 1656 hour John Jones arrived at 56 Gable Hill Road and began to film Andrew Korhonen and his family to include two grandchildren ages 2 and 4. Korhonen confronted Jones about his continued filming of him and his family. During the conversation Jones became agitated and began to yell at Korhonen and continued to film the juvenile children. Audio and video of this incident was captured on Korhonen's Ring Door bell. Alexus Gordon was present at the time of this incident at 56 Gable Hill Road. Jones yells and curses at Korhonen and Alexus Gordon in the presence of the juvenile children.

Andrew Korhonen reports that the behavior of John Jones is escalating and he is suffering emotional distress from the constant continued course of conduct Jones is partaking in.

Jeffrey Wagner was interviewed and advised that he filed an official report with his Police department regarding the actions of Mr. Jones. Captain Feeney of the Middletown Township Police was

AOPC 411C - Rev. 07/18

Page 5 of 6



**POLICE CRIMINAL COMPLAINT**

**AFFIDAVIT CONTINUATION PAGE**

| Docket Number: CR-15-22 | Date Filed: 02/03/2022 | OTN/LiveScan Number R236202-1 | | Complaint/Incident Number 22-01877-11731 | |
|---|---|---|---|---|---|
| Defendant Name | First: JOHN | | Middle: | Last: JONES | JR |

## AFFIDAVIT OF PROBABLE CAUSE CONTINUATION

informed of this investigation and advised all documents could be provided to me. Jeffrey Wagner is concerned and feels that his father, Fiancee, and future father in law's safety may be in jeopardy due to him performing his duty in a legal capacity as a Middletown Police Officer. Jeffrey Wagner reports that he is distressed to leave his fiancee alone while he leaves for work. Jeffrey Wagner informed that Jones' behavior is escalating and he just wants his family and self to be left alone. Jeffrey Wagner reports that he is emotionally distressed and it is affecting his duties as a police officer. Jeffrey Wagner has sought counseling with his Chief of Police, Joseph Bartarillo.

Alexus Gordon witnessed the incident on 56 Gable Hill Road. She used to reside at the home and it is the home of her step father and mother, Cindy Gordon. Alexus now resides at 17 Gun Road with Jeffrey Wagner. Alexus is extremely upset after hearing Jones speak about her fiancee. Jones then said your daughter is marrying Jeffrey Wagner. Alexus Gordon does not know how Jones obtain this information about her and she fears for her safety. Gordon is severely afraid to be home alone and is now carrying a firearm to complete simple tasks like walking the her dog or going outside. Alexus Gordon never carried a firearm prior to Jones starting his course of conduct. Gordon fears Jones may cause physical harm to her or Jeffrey Wagner.

Your Honor, Based on the above listed facts, your affiant is requesting a warrant be issued for the specified charges filed on the defendant.

I, **JASON MANCUSO**, BEING DULY SWORN ACCORDING TO THE LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

I CERTIFY THAT THIS FILING COMPLIES WITH THE PROVISIONS OF THE CASE RECORDS PUBLIC ACCESS POLICY OF THE UNIFIED JUDICIAL SYSTEM OF PENNSYLVANIA THAT REQUIRE FILING CONFIDENTIAL INFORMATION AND DOCUMENTS DIFFERENTLY THAN NON-CONFIDENTIAL INFORMATION AND DOCUMENTS.

_____
(Signature of Affiant)

Sworn to me and subscribed before me this __3__ day of __February__ __2022__

__2/3/22__ Date _____ Magisterial District Judge

My commission expires first Monday of January, __2028__

AOPC 411C - Rev. 07/18

Page 6 of 6

(OFFICER JEFFREY WAGNER, sworn.)

THE CLERK:  Please state and spell your name for the record.

THE WITNESS:  Jeffrey Wagner, J-E-F-F-R-E-Y, W-A-G-N-E-R.

THE CLERK:  Thank you.

THE COURT:  Good afternoon.

THE WITNESS:  Good afternoon, Your Honor.

DIRECT EXAMINATION

BY MR. OST-PRISCO:

Q   Would you state your name for the record.  Well, you just stated your name for the record.  I'm sorry.  How long have you been a police officer?

A   I've been a police officer for nine years, one year approximately at the Tullytown Borough Police Department. Eight years at Middletown Township Police Department, which is where I'm currently employed.

Q   Were you on duty on December 11th of 2021?

A   Yes, I was.

Q   Did you have a reason to respond to the Walter Miller Elementary School sometime just before noon?

A   Yes.

Q   Can you tell us about why you responded to the school?

A   So in Middletown Township we have several sectors.

Cars are assigned to a specific sector. This way there's cars spread out throughout the area for faster response. I heard one of our floater cars who is essentially a backup car on the radio with a suspicious vehicle in my assigned sector so I responded down to the Walter Miller School. I believe it's 10 Cobalt Drive South to back up that officer and was my sector as well. Once I got there, I came across the Defendant, Mr. John Jones, who is seated over there in the gray --

MR. PERUTO: Indicating the Defendant, Your Honor.

THE WITNESS: He was outside of his truck. There was -- it's a gray slash goldish, depending on the color, like the sun, Chevrolet pickup truck. It has Pennsylvania registration, YJW4924 affixed to the rear of it, and that was parked on -- it's a multi-use soccer slash baseball field for the Walter Miller School District or the Neshaminy School District at the Walter Miller School.

BY MR. OST-PRISCO:

Q    You're familiar with the school property there?

A    Yes, sir.

(Exhibit C-4 marked.)

MR. OST-PRISCO: May I approach the witness, Your Honor?

THE COURT: You may.

BY MR. OST-PRISCO:

Q    Officer Wagner, I'm showing you what I marked as

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**John Jones Jr. v. Kevin P. Wagner Sr. et al.**
**Civil Action No. 26-1050**

## NON-PLEADING FACTUAL ANALYSIS BASED UPON DOCUMENTARY EVIDENCE

**BRISTOL TOWNSHIP POLICE INCIDENT REPORT 22-01877**

**Paragraph-by-Paragraph Analysis (ONLY this document)**

**ASSIGNMENT paragraph**
> Lt. Ralph Johnson assigned Mancuso to investigate a stalking report of Kevin Wagner and Jeffrey Wagner.

**Analysis:**
The investigation is initiated entirely from a complaint by Kevin Wagner (District Justice) and his son Jeffrey Wagner (police officer).
There is no indication of:
- independent complaint intake
- neutral complainant
- preliminary verification

**Problem:** The case begins top-down from a judicial/police family, not from an independently developed investigation.

**INFORMATION – Kevin Wagner meeting (first paragraph)**
> Kevin Wagner states he filed complaints with Bucks County Court Administration and spoke with the Chief of Bucks County Detectives, who said Bristol Township could handle it.

**Analysis:**
This is one of the most critical paragraphs in the entire report.
- Kevin Wagner is not just a witness — he is a District Justice and already in contact with court administration and county detectives.
- He is relaying what investigative route should be taken.

**Problem:** The investigative structure is being influenced by the complainant himself, who holds judicial authority.

**INFORMATION – Kevin Wagner prior role / history paragraph**
> Kevin Wagner was a constable, worked under Judge Kline, took over cases involving Jones, set fines, and Jones appealed them.

**Analysis:**
This establishes prior adversarial history and long-standing interaction.

**Problem:** Clear evidence of potential bias without acknowledgment.

**INFORMATION – "driving by homes" paragraph**
> Jones has been driving by Kevin Wagner's home and Jeffrey Wagner's home.

**Analysis:**
Lawful activity is framed as suspicious.

**Problem:** No statute or illegality identified.

**INFORMATION – escalation / "alarmed" language**
> This behavior has caused Kevin Wagner to become increasingly alarmed.

**Analysis:**
Purely subjective emotional language.

**Problem:** Feelings replace criminal standards.

**JEFFREY WAGNER ARREST PARAGRAPH (Dec 11 reference)**
> Jeffrey Wagner arrested Jones on 12-11-2021… Beck observed trespassing… Neshaminy fields…

**Analysis:**
This paragraph attempts to legitimize the prior arrest by referencing Beck and asserting trespass as fact.
- It presents the arrest as established fact, not allegation.
- No independent verification.
- On May 16, 2024, Jeffrey Wagner testified he responded to a "floater car" suspicious vehicle report.
- That testimony omitted Beck's prior involvement reflected in this report.
- This omission presents Plaintiff as unknown and nefarious.

- Plaintiff contends omission concealed prior knowledge and supported a false narrative.

This is narrative reinforcement, not investigation.

## CHESKO / COURT STAFF PARAGRAPH

> Jones provided photos to Court 07-1-08 CCA Melanie Chesko, a court employee.

**Analysis:**

Court-submitted materials, consisting of photographs taken from a public street, were reframed as suspicious and later used as alleged evidence of harassment and stalking.

**Problem:** Indicates possible network communication, including the involvement of Robert Chesko, a Bucks County constable and relative of Melanie Chesko, suggesting that court-submitted materials were relayed outside proper channels and repurposed for criminal allegations.

## EVIDENCE SECTION

> Ring camera footage, letters, photos given by defendant

**Analysis:**

Evidence listed but not evaluated.

**Problem:** No exculpatory review.

The foregoing analysis is further supported by sworn trial testimony of Defendant Jeffrey Wagner on May 16, 2024, wherein he stated that he responded to Walter Miller Elementary School after hearing a "floater car" radio call regarding a suspicious vehicle. This sworn testimony directly contradicts the narrative reflected in contemporaneous police documentation identifying Officer Beck as the source of the information. These two accounts cannot both be true. The documentary record, including contemporaneous reports and video evidence of Officer Beck's presence, confirms that Officer Beck was the source of the information, rendering the "radio call" testimony materially false.

Respectfully submitted,

John Jones Jr.
9 Iris Road
Levittown, PA 19057

# Bristol Township Police

## Incident Report Form

**22-01877**
02/01/2022
**Harassing Conduct**

**ASSIGNMENT:**

On 02-01-2022 at 1500 hours, Lt. Ralph Johnson assigned me to investigate a stalking report of Judge Kevin Wagner and his son, Middletown Police Officer Jeffrey Wagner.

**INFORMATION:**

On 02-02-2022 at 1100 hours I met with Kevin Wagner. He advised me that he has been filing complaints with Bucks County Court administration about John Jones. Kevin Wagner reported that he has spoken to the Chief of Bucks County Detectives and was advised Bristol Township could handle the investigation and the County would assist if requested.

Kevin Wagner informed that prior to him assuming his position he was a constable in Court 07-1-03. Joanne Kline was the sitting judge. She ruled on several cases against John Jones. Upon her retirement Wagner set the fines and Jones appealed to the Court of Common Please. Since this time John Jones has been driving by Kevin Wagner's home located at ▮▮▮▮▮▮▮▮▮Kevin Wagner noticed Jones filming his home and the home of his son Jeffrey who lives directly across the street at ▮▮▮▮▮▮▮▮This behavior has continued and is causing Kevin Wagner to become increasingly alarmed.

Jeffrey Wagner arrested John Jones in Middletown Township for trespassing on 12-11-2021. This arrest occurred while Officer Jeff Wagner was on routine patrol assigned to the patrol division of Middletown Township Police Department. Officer Jeffrey Wagner has been employed with Middletown since 06-16-2016. Officer Wagner was notified by Officer Beck that Beck observed John Jones trespassing on Walter Miller Baseball fields. These fields are owned and controlled by Neshaminy School District. Wagner was assigned to handle the sector. Sgt. Lubold arrived and it was determined that Officer Wagner would handle the arrest. Officer Jeffrey Wagner was unfamiliar with John Jones at the time of the arrest. There is a letter on file with the Neshaminy Security Director Kevin Burns. This letter was on file prior to the incident and a certified mail copy was sent to John Jones advising him he was not welcome on their property.

John Jones has provided photos to Court 07-1-08 CCA Melanie Chesko in person of Kevin Wagner's home, Jeffrey Wagner's home and the home of Andy Korhonen which is located at 56 Gable Hill Rd. Andrew Korhonen is a deputy constable and the step father of Jeffrey Wagner's fiancee, Alexus Gordon. Korhonen reports when interviewed that Jones has been coming by his house filming him several times a week for the last three months..

On 01-29-2022 at 1656 hour John Jones arrived at 56 Gable Hill Road and began to film Andrew Korhonen and his family to include two grandchildren ages 2 and 4. Korhonen confronted Jones about his continued filming of him and his family. During the conversation Jones became agitated and began to yell at Korhonen and continued to film the juvenile children. Audio and video of this incident was captured on Korhonen's Ring Door bell. Alexus Gordon was present at the time of this incident at 56 Gable Hill Road.

Andrew Korhonen reports that the behavior of John Jones is escalating and he is suffering emotional distress from the constant continued course of conduct Jones is partaking in.

Jeffrey Wagner was interviewed and advised that he filed an official report with his Police Department regarding the actions of Mr. Jones. Captain Feeney of the Middletown Township Police was informed of this investigation and advised all documents could be provided to me. Jeffrey Wagner is concerned and feels that his father, Fiancee, and future father in law's safety may be in jeopardy due to him performing his duty in a legal capacity as a Middletown Police Officer. Jeffrey Wagner reports that he is distressed to leave his fiancee alone while he leaves for work. Jeffrey Wagner informed that Jones' behavior is escalating and he

| **22-01877** | **02/01/2022** | ☐ | APPROVED BY: | | PAGE 3 |
|---|---|---|---|---|---|
| IRF 1.0 | | | APPROVED ON: | Print Date/Time   02/04/2022 12:31:43 | |

# Bristol Township Police

## Incident Report Form

22-01877 α

02/01/2022

**Harassing Conduct**

just wants his family and self to be left alone. Jeffrey Wagner reports that he is emotionally distressed and it is affecting his duties as a police officer. Jeffrey Wagner has sought counseling with his Chief of Police, Joseph Bartarillo.

Alexus Gordon witnessed the incident on 56 Gable Hill Road. She used to reside at the home and it is the home of her step father and mother, Cindy Gordon. Alexus now resides at ███████████ with Jeffrey Wagner. Alexus is extremely upset after hearing Jones speak about her fiancee. Jones then said your daughter is marrying Jeffrey Wagner. Alexus Gordon does not know how Jones obtain this information about her and she fears for her safety. Gordon is severely afraid to be home alone and is now carrying a firearm to complete simple tasks like walking the her dog or going outside. Alexus Gordon never carried a firearm prior to Jones starting his course of conduct. Gordon fears Jones may cause physical harm to her or Jeffrey Wagner.

Officer McCabe of the Bristol Township Police responded and took the initial report from Andrew Korhonen on 01-29-2022. (22-01654)

EVIDENCE:
Ring Door camera footage from ███████████
Multiple letters and photos given to court staff by defendant

---

**22-01877**    **02/01/2022**    ☐ APPROVED BY:

IRF 1.6    APPROVED ON:

PAGE   4

Print Date/Time   02/04/2022 12:31:43

Cars are assigned to a specific sector. This way there's cars spread out throughout the area for faster response. I heard one of our floater cars who is essentially a backup car on the radio with a suspicious vehicle in my assigned sector so I responded down to the Walter Miller School. I believe it's 10 Cobalt Drive South to back up that officer and was my sector as well. Once I got there, I came across the Defendant, Mr. John Jones, who is seated over there in the gray --

MR. PERUTO: Indicating the Defendant, Your Honor.

THE WITNESS: He was outside of his truck. There was -- it's a gray slash goldish, depending on the color, like the sun, Chevrolet pickup truck. It has Pennsylvania registration, YJW4924 affixed to the rear of it, and that was parked on -- it's a multi-use soccer slash baseball field for the Walter Miller School District or the Neshaminy School District at the Walter Miller School.

BY MR. OST-PRISCO:

Q    You're familiar with the school property there?

A    Yes, sir.

(Exhibit C-4 marked.)

MR. OST-PRISCO: May I approach the witness, Your Honor?

THE COURT: You may.

BY MR. OST-PRISCO:

Q    Officer Wagner, I'm showing you what I marked as

90

(OFFICER JEFFREY WAGNER, sworn.)

THE CLERK:  Please state and spell your name for the record.

THE WITNESS:  Jeffrey Wagner, J-E-F-F-R-E-Y, W-A-G-N-E-R.

THE CLERK:  Thank you.

THE COURT:  Good afternoon.

THE WITNESS:  Good afternoon, Your Honor.

DIRECT EXAMINATION

BY MR. OST-PRISCO:

Q    Would you state your name for the record.  Well, you just stated your name for the record.  I'm sorry.  How long have you been a police officer?

A    I've been a police officer for nine years, one year approximately at the Tullytown Borough Police Department. Eight years at Middletown Township Police Department, which is where I'm currently employed.

Q    Were you on duty on December 11th of 2021?

A    Yes, I was.

Q    Did you have a reason to respond to the Walter Miller Elementary School sometime just before noon?

A    Yes.

Q    Can you tell us about why you responded to the school?

A    So in Middletown Township we have several sectors.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**John Jones Jr. v. Kevin P. Wagner Sr. et al.**
**Civil Action No. 26-1050**

## NON-PLEADING FACTUAL ANALYSIS BASED UPON DOCUMENTARY EVIDENCE

### POLICE CRIMINAL COMPLAINT - ANALYSIS

**Paragraph 1 (Charging Section / Offense Identification)**

> (Charges for stalking and harassment are listed based upon the alleged conduct described herein.)

**Analysis:**

This section identifies the charges of stalking and harassment without first establishing the specific factual elements required under Pennsylvania law. The charges are presented as conclusions derived from the subsequent narrative, rather than as legal determinations grounded in clearly articulated facts.

The document does not, within this section, identify:

- a specific course of conduct directed toward a particular individual that satisfies statutory definitions;
- repeated acts of communication or contact directed at a person;
- a threat or act intended to place another person in reasonable fear of bodily injury.

The absence of factual specificity at the charging stage is significant because the charges rely entirely on later-described conduct that must independently satisfy the statutory elements of stalking or harassment.

**Problem:**

The charging section presents legal conclusions without identifying the factual basis necessary to support the elements of stalking or harassment, thereby relying on the narrative to supply justification after the fact.

**Paragraph 2 (Narrative of Driving / Observation of Residences)**

> (Defendant is described as driving by and taking photographs or video of certain residences associated with Kevin Wagner, Jeffrey Wagner, and Andrew Korhonen.)

**Analysis:**

This paragraph describes conduct consisting of driving by residences and photographing or filming structures associated with individuals connected to the Wagner family.

The paragraph does not state that Plaintiff entered private property, crossed any boundary, or engaged in any conduct that would constitute trespass. It does not state that Plaintiff made contact with the residents, attempted communication, or issued any threat.

The conduct described--observation and recording of structures visible from a public street--does not, in itself, constitute a criminal act. The paragraph does not identify any ordinance, statute, or condition that would render such conduct unlawful when performed from a lawful vantage point.

The narrative frames the conduct as suspicious without distinguishing between lawful observation and unlawful intrusion. It also does not address Plaintiff's longstanding history of photographing these residences for use in court proceedings related to code enforcement matters.

**Problem:**

The paragraph relies on lawful, publicly observable conduct and presents it as suspicious without identifying any unlawful act, without establishing contact or threat, and without addressing the lawful purpose and historical context of the activity.

### Paragraph 3 (References to Children / Filming Allegation)

> (The narrative emphasizes that children were present and that Defendant filmed or recorded while children were in the vicinity.)

**Analysis:**

This paragraph introduces the presence of children as a central component of the narrative, emphasizing that filming occurred while children were present at the location.

The paragraph does not state that Plaintiff directed any communication toward the children, approached the children, or engaged in any conduct specifically targeting them. It does not allege that Plaintiff threatened the children or interacted with them in any unlawful manner.

The presence of children is presented as an aggravating factor, but the affidavit does not establish that their presence transforms otherwise lawful conduct into criminal behavior. The narrative does not identify any statutory provision under which the mere presence of children, without more, converts observation or filming from a public location into stalking or harassment.

The emphasis on children appears designed to elevate the perceived severity of the conduct through emotional context rather than through the identification of a specific criminal act.

**Problem:**

The paragraph relies on the presence of children to create an appearance of criminality without establishing that Plaintiff directed conduct toward them, without identifying a threat or unlawful interaction, and without linking the presence of children to any statutory element of stalking or harassment.

### Paragraph 4 (Statements of Fear / Alarm by Complainants)

> (Complainants state that they are alarmed, fearful, or distressed by Defendant's conduct.)

**Analysis:**

This paragraph relies on subjective statements of fear, alarm, or distress from the complainants.

The document does not identify objective facts demonstrating that Plaintiff's conduct would cause a reasonable person to fear bodily injury. It does not quote specific statements made by Plaintiff that would constitute threats. It does not identify conduct that would independently satisfy the legal standard for harassment or stalking.

The statements of fear are presented without independent verification and without distinguishing between subjective emotional reactions and objective evidence of criminal conduct.

The complainants referenced in this section are connected through familial and professional relationships, including law enforcement and constable roles. The document does not address whether those relationships affect the reliability or objectivity of the statements.

**Problem:**

The paragraph substitutes subjective fear and emotional reaction for objective, independently verifiable facts, and does not establish conduct that satisfies the elements of stalking or harassment.

**Paragraph 5 (Absence of Direct Threat or Contact)**

> (No direct threats or explicit unlawful communications are quoted within the narrative.)

**Analysis:**

Across the narrative presented in these pages, the document does not quote any specific threat made by Plaintiff. It does not identify language that would constitute a threat of bodily injury or unlawful harm.

The document also does not establish repeated direct communication with a specific individual, which is typically required to support a harassment or stalking charge. The conduct described consists primarily of observation, presence, and recording from a distance.

The absence of quoted threats or direct unlawful communication is significant because it highlights the reliance on inference rather than explicit criminal conduct.

**Problem:**

The document fails to identify a specific threat, fails to quote language constituting a threat, and fails to establish repeated direct contact or communication, thereby lacking essential elements necessary to support charges of stalking or harassment.

COMMONWEALTH OF
PENNSYLVANIA
COUNTY OF BUCKS

MDJ 07-1-04
Honorable Terrence Hughes
7325 New Falls Rd
Levittown, PA 19055
(215)-943-9414

# POLICE CRIMINAL COMPLAINT
## COMMONWEALTH OF PENNSYLVANIA
### VS.

DEFENDANT:    *(NAME and ADDRESS):*

| JOHN | | JONES | JR |
|------|------|------|------|
| *First Name* | *Middle Name* | *Last Name* | *Gen* |

9    IRIS RD
LEVITTOWN           PA               19057

**NCIC Extradition Code Type**

- ☐ 1-Felony Full
- ☐ 2-Felony Ltd.
- ☐ 3-Felony Surrounding States
- ☐ 4-Felony No Ext
- ☐ 5-Felony Pend.
- ☐ 6-Felony Pend. Extradition Determ.
- ☐ A-Misdemeanor Full
- ☐ B-Misdemeanor Limited
- ☒ C-Misdemeanor Surrounding States
- ☐ D-Misdemeanor No Extradition
- ☐ E-Misdemeanor Pending
- ☐ F-Misdemeanor Pending Extradition Determ.
- ☐ Distance:

**DEFENDANT IDENTIFICATION INFORMATION**

| Docket Number | Date Filed | OTN/Livescan Number | Complaint/Incident Number | Request Lab Services? |
|------|------|------|------|------|
| CR-15-22 | 02/03/22 | R236202-1 | 22-01877-11731 | ☐ YES ☒ NO |

| GENDER | DOB 08/05/1961 | POB | | Add'l DOB | Co-Defendant(s) ☐ |
|------|------|------|------|------|------|
| ☒ Male | *First Name* | | *Middle Name* | *Last Name* | Gen. |
| ☐ Female | AKA | | | | |

**RACE**   ☒ White   ☐ Asian   ☐ Black   ☐ Native American   ☐ Unknown

**ETHNICITY**   ☐ Hispanic   ☒ Non-Hispanic   ☐ Unknown

**HAIR COLOR**
- ☐ GRY (Gray)
- ☐ BLK (Black)
- ☒ BLN (Blonde / Strawberry)
- ☐ RED (Red/Aubn.)
- ☐ ONG (Orange)
- ☐ SDY (Sandy)
- ☐ WHI (White)
- ☐ BLU (Blue)
- ☐ XXX (Unk/Bald)
- ☐ PLE (Purple)
- ☐ GRN (Green)
- ☐ BRO (Brown)
- ☐ PNK (Pink)

**EYE COLOR**
- ☐ BLK (Black)
- ☐ HAZ (Hazel)
- ☒ BLU (Blue)
- ☐ MAR (Maroon)
- ☐ BRO (Brown)
- ☐ PNK (Pink)
- ☐ GRN (Green)
- ☐ MUL (Multicolored)
- ☐ GRY (Gray)
- ☐ XXX (Unknown)

| DNA | ☐ YES ☒ NO | DNA Location | |
|------|------|------|------|
| FBI Number | | MNU Number | WEIGHT 165 |
| Defendant Fingerprinted | ☐ YES ☒ NO | | HEIGHT 5 11 |

**DEFENDANT VEHICLE INFORMATION**

| Plate # | State | Hazmat | Registration Sticker (MM/YY) | Comm'l Veh. Ind. | School Veh. | Oth. NCIC Veh. Code | Reg. same as Def. |
|------|------|------|------|------|------|------|------|
| YJW4924 | PA | ☐ | | ☐ | ☐ | ☐ | ☐ |

| VIN | Year | Make | Model | Style | Color | |
|------|------|------|------|------|------|------|
| 1GCHK23235F898295 | 2005 | CHEV | SLV | PK | SIL | |

Office of the attorney for the Commonwealth   ☐ Approved   ☐ Disapproved Because: _____

*(The attorney for the Commonwealth may require that the complaint, arrest warrant affidavit, or both be approved by the attorney for the Commonwealth Prior to filing. See Pa.R.Crim.P. 507).*

| (Name of the attorney for the Commonwealth) | (Signature of the attorney for the Commonwealth) | (Date) |
|------|------|------|

I, **JASON MANCUSO**
(Name of the Affiant)

of **Bristol Township Police**
(Identify Department or Agency Represented and Political Subdivision)

PSP/MPOETC-Assigned Affiant ID Number and Badge # **139**

(Police Agency ORI Number) **PA0090300**

do hereby state: (check appropriate box)

1. ☐ I accuse the above named defendant who lives at the address set forth above

   ☐ I accuse the defendant whose name is unknown to me but who is described as _____

   ☐ I accuse the defendant whose name and popular designation or nickname are unknown to me and whom I have therefore designated as John Doe or Jane Doe

   with violating the penal laws of the Commonwealth of Pennsylvania at ☐
   (Subdivision Code)      (Place-Political Subdivision)

   **56 GABLEHILL RD   LEVITTOWN, PA 19057**

In _____ County [_____] on or about Between 12/11/2021 1149 and 01/29/2022 1700
(County Code)                    (Offense Date)

AOPC 412A - Rev. 07/18

Page 1 of 6

## POLICE CRIMINAL COMPLAINT

| Docket Number: CR-15-22 | Date Filed: 02/03/2022 | OTN/LiveScan Number R236202-1 | | Complaint/Incident Number 22-01877-11731 |
|---|---|---|---|---|
| Defendant Name: | First: JOHN | Middle: | Last: JONES | JR |

2. I ask that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I have made.

3. I verify that the facts set forth in this complaint are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 Pa.C.S. § 4904) relating to unsworn falsification to authorities.

4. This complaint consists of the preceding page(s) numbered _____ through _____ .

5. I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

The acts committed by the accused, as listed and hereafter, were against the peace and dignity of the Commonwealth of Pennsylvania and were contrary to the Act(s) of the Assembly, or in violation of the statutes cited.

**(Before a warrant of arrest can be issued, an affidavit of probable cause must be completed, sworn to before the issuing authority, and attached.)**

JASON MANCUSO

_____     _____     _____
                                              (Date)              (Signature of Affiant)

AND NOW, on this date ___2/3/22___ I certify that the complaint has been properly completed and verified.

An affidavit of probable cause must be completed before a warrant can be issued.

___07-1-04___
(Magisterial District Court Number)            (Issuing Authority)

AOPC 412A - Rev. 07/18

## POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: | OTN/LiveScan Number | | Complaint/Incident Number |
|---|---|---|---|---|
| CR-15-22 | 02/03/2022 | R236202-1 | | 22-01877-11731 |

| Defendant Name | First: JOHN | Middle: | Last: JONES | JR |
|---|---|---|---|---|

The acts committed by the accused are described below with each Act of Assembly or statute allegedly violated, if appropriate. When there is more than one offense, each offense should be numbered chronologically.

(Set forth a *brief* summary of the facts sufficient to advise the defendant of the nature of the offense(s) charged. A citation to the statute(s) allegedly violated, without more, is not sufficient. In a summary case, you must cite the specific section(s) and subsection(s) of the statute(s) or ordinance(s) allegedly violated.

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 | Number of Victims Age 60 or Older _____ |
|---|---|---|---|---|

| Lead? | Offense # | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|---|
| ☒ | 1 | 2709.1 | (a)(1) | of the | PA Crimes Code | 3 | M1 | | |

| Prior to Date of Accident If Applicable & Number | | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of the statute or ordinance):
18 Pa. C.S. 2709.1(a)(1)  Stalking - M1

Acts of the accused associated with this Offense:
18 Pa. C.S. 2709.1(a)(1)  Stalking - M1

IN THAT, on or about said date, THE DEFENDANT, with intent to place another person, namely, Jeffrey Wagner, Alexus Gordon, Andrew Korhonen, in reasonable fear of bodily injury or to cause substantial emotional distress to such other person, did engage in a course of conduct or repeatedly committed acts toward the victim, including following the person without proper authority, namely, drive by victims homes and repeatedly films them. Jones also confronted two of the victims about them, in violation of Section 2709.1(a)(1) of the PA Crimes Code. (18 P.S. 2709.1(a)(1) – Misd. 1st)

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 | Number of Victims Age 60 or Older _____ |
|---|---|---|---|---|

| Lead? | Offense # | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | 2 | 2709 | (a)(3) | of the | PA Crimes Code | 3 | S | | |

| Prior to Date of Accident If Applicable & Number | | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of the statute or ordinance):
18 Pa. C.S. 2709(a)3 Harassment - Summary

Acts of the accused associated with this Offense:
18 Pa. C.S. 2709(a)3 Harassment - Summary

IN THAT, on or about said date, THE DEFENDANT, with intent to harass, annoy or alarm another person, namely, Jeffrey Wagner, Alexus Gordon, and Andrew Korhonen , did engage in a course of conduct or repeatedly committed acts, namely repeatedly comes to their homes and films them, which did alarm or seriously annoy such other person and which served no legitimate purpose, in violation of Section 2709(3) of the PA Crimes Code.

# EXHIBIT 1-WL

# John Jones Jr.
# 9 Iris Rd. Levittown
# PA 19057

Matthew Weintraub                                    20-JAN-2022
Bucks County District Attorney                       Via Fax 215-348-6299
100N. Main St. 2nd Floor .
Doylestown, PA 18901

Mr. Weintraub:
I don't want to burry the lead. How was Joanne Kline allowed to participate in my matters after I sued her in Federal Court, (case#15-5594)? She signed off on his paperwork which clearly states I was utilizing "public usage lands' on a Saturday around noon. She was required, as Kevin Wagner Sr. was, by your office to recuse herself from ALL of my matters, because she cannot act in an impartial manner due to my Federal Court filings. She now comes to the aid of her Wagner neighbors and long time friends and associates in violation of my rights and you allowed that Mathew? My case against her and others was just and had merit, (attached document dated MAY-3-2016) demonstrates such and my complaint had merit and was dismissed without prejudice because it had PLENTY of merit and I as a disabled person ran out of energy to peruse it.

There is a wonderful TV news interview with you in which you stated you do not believe in "coincidences". Was it a coincidence Jeffery Wagner chose and was permitted to arrest me on public usage lands, (Walter Miller elementary school property on a Saturday, when school is out of session, around noon) 11-DEC-2022 with the assistance of 4 other Middletown TWP police officers after I told Middletown Officer Beck 12 minutes earlier I was being harassed because of the Wagners? It's all on video.

Joanne Kline using her Judge status, even with the "Kevin Burns" Neshaminty school district letter in her possession, to aid and abed his and others illegal arrest actions even though I sued her in Federal Court case#15-5594 is heinous as well as "blatant" "Judicial Misconduct". There is no other judge I can think of that would misinterpret the letter, purposely forget how to read or stand by and aid these corrupt people. She is going to be sued again for this/that and I doubt she will be able to hide behind her Judge status due to this new incredibly blatant judicial misconduct in violation of my rights under Title 18, Section 242, Color of Law.

You should take immediate action against her for involving herself in this matter with her long time Wagner family friends and next residential street over Wagner neighbors.

Investigate why I was the only person in Bristol Township to have cars towed in a snowstorm, 3 actually costing me over $600.oo, allow me to be physically beaten to the point of a concussion (MRI documented) on 7-MAR-2021 without any charges against my assailant being made.

1

I provided video evidence to Bristol TWP police officer Theroff and have his mistreatment on video, sticking his face in my camera several times, and him admitting harassment did in fact occur yet took no action on my behalf against my attacker and Theroff told me to go and file my own charges. He had a duty and he chose to ignore it.

Bristol TWP police officer Stone refused to cite Edgely Pa. ex-fire chief Joseph Cavanaugh (misspelled probably) for harassment that I had on video and further told me how "Expensive" it would be for me to file on my own. That same officer Stone charged me with harassment with absolutely no evidence of any kind other than the word of a neighbor who interestingly has a son who lives in New Jersey and uses his parents address to maintain cheaper auto insurance, which I have reported to the police many times with no action taken because he is friends with numerous Police officers which I have well documented and memorialized on video as well. I would have been investigated and cited without a doubt in anyone of a learned minds opinion.

Those officer Stone charges as well as over 25 other charges against me have not held up in court. This multitude of citations and harassing treatment and ongoing harassment is illegal yet you do nothing to stop it. Why?

During my illegal arrest on 11-DEC-2022 I was so badly injured that I had to seek medical care, the recent MRI of both shoulders showed damage that is now above and beyond the capabilities of St. Mary's Orthopedic Department. Those Medical Practice Doctors replaced both of my hips and have done multiple surgeries on my shoulders in the past. if they cannot fix it it's very serious.

I've reached out to you as well as others in a position to take action and stop the mistreatment that has been perpetrated against me over a decade to no avail. The inactions of various agencies has given rise to even more blatant, dangerous and egregious mistreatment by Bristol and Middletown Townships. This inaction has culminated with the allowance of Middletown Police Officer Jeffery Wagner to enlist several other police officers and "Snatch me up from a field like a Jew in Nazi Germany". That's right, No probable cause, no Miranda rights, no return of my personal property, no consideration of my disability status causing grievous injuries and more.

I'll be reaching out to the Department of Justice for assistance with this matter now. You should intercede regarding my personal property as well as Joanne Klien's involvement to aid and protect the Wagner family and hinder prosecution of felony false arrest of me.

Included are some pictures of the police that arrested me. You can clearly see the office with gun drawn for a 60 year old disabled guy walking his service dog. Is that protocol, official policy or standard procedure Mr. Weintraub?

I look forward to you taking some sort of action against these people, however I suspect the only action taken by the county is to "Circle the Wagons" and take any and all steps (legal or not) to protect Jeffery Wagner from Felony False Arrest and False Imprisonment

2

Charges which could/should have already happened had he not been a Wagner family member. Hell, his police chief won't issue discipline because it's a career ending move to go against the Wagner family. Ask Bristol Police Officer Lt. Johnson why he had towed only my cars and the honest answer is to teach me a lesson about complaining about the Wagner family. That's the simple truth as well as all the other mistreatment of me in attributed to the same reason

Sincerely

John Jones Jr.

cc. Judge Jeffery L. Finely, Bucks County, PA. Fax 215-348-6101
Michael Driscoll Special Agent in charge, Fort Washington, PA. Fax 215-641-6059
Bucks County District Attorney Matthew Weintraub. Fax 215-348-6299
Judge Daniel Baranoski, Penndel Borough, PA. Fax 267-885-1669
Judge Cynthia Rufe, United States Federal Courthouse, Phila, PA.
Special Agent in charge, FBI, Trenton, NJ. Fax 609-689-4944
PA State Representative, Tina Davis, Levittown, PA, Fax 267-580-2665
US Congressman, Brian Fitzpatrick, Langhorne PA, Fax 215-579-8109
Attorney General of PA., Josh Shapiro, Harrisburg, PA. Fax 717-787-8242
Governor Tom Wolf, Governor of PA., Harrisburg, PA. Fax 717-772-8284
Judge Michael W. Petucci, Newtown, PA. Fax 267-885-1677
Judge Terry Hughes, Levittown, PA Fax 215-885-1668
Judge Peranteau, Bristol, PA. Fax 215-785-0816
Philadelphia Inquirer, Editor Charlotte Sutton, 801 Market St. Phila, PA. 19107
New York Times, Editor Dean Baquet, 620 Eighth Av, NY, NY. 10018
Washington Post, Editor Sally Buzbee, 1301 K St. NW, Washington DC, 20071
Chicago Tribune, Editor Chrissy Taylor, 160 N. Stetson Av. Chicago IL. 60601
Wall Street Journal, Editor Matt Murray, 1211 Avenue of the Americas, NY, NY.
Los Angeles Times, Editor Kevin. Merida, 2300 E. Imperial Highway, El Segundo, CA. 90245

3

## WEINTRAUB LETTER - ANALYSIS

### 1. DOCUMENT IDENTITY AND NOTICE FUNCTION

This analysis concerns a three-page written communication authored by John Jones Jr. and addressed to Matthew D. Weintraub, District Attorney of Bucks County, Pennsylvania, dated 20-JAN-2022 and transmitted to the District Attorney's Office. The letter includes a distribution list reflecting contemporaneous notice to multiple judicial officers, federal law-enforcement leadership, elected officials, and media organizations. As presented, the letter functions as a documented notice communication directed to the county's chief prosecutorial policymaker and distributed to multiple oversight channels concerning alleged conflict structures and enforcement conduct described by the author.

### 2. SCOPE AND USE IN RECORD

The Weintraub letter identifies actors, asserts conflicts involving Joanne Kline and Wagner-associated individuals, alleges a pattern of retaliatory or unlawful enforcement conduct, references arrests, charges, and police actions, and requests intervention by the District Attorney. For filing use, the letter operates as date-certain notice to a county policymaker of alleged conflict structures and enforcement conduct connected to Wagner-related actors and associated officials.

### 3. RELATIONSHIP BETWEEN JOANNE KLINE AND KEVIN P. WAGNER SR. (CONFLICT CONTEXT)

The letter and associated context describe a longstanding personal and professional association between Judge Joanne Kline and Kevin P. Wagner Sr. Judge Kline is identified as residing on Gable Hill Road and Kevin P. Wagner Sr. on Gun Road in Levittown, Pennsylvania, within close walking distance, and the relationship is described as involving social familiarity. Kevin P. Wagner Sr. is described as having served for decades as a Bucks County Constable operating within the same magisterial district court in which Judge Kline presided. The convergence of proximity, social familiarity, and court-operational overlap is presented as creating an appearance of partiality and conflict in Wagner-related matters. Within a Monell framework, the letter places the county policymaker on notice of an asserted structural conflict environment tied to the complained-of enforcement conduct.

### 4. PRIOR LITIGATION AND RECUSAL ASSERTIONS (MONELL NOTICE)

The letter states that the author previously filed federal litigation against Joanne Kline identified as Case No. 15-5594 and asserts that the District Attorney's Office required both Joanne Kline and Kevin P. Wagner Sr. to recuse from matters involving the author. The letter

1

further asserts that notwithstanding this requirement, Kline continued to participate in matters affecting the author and Wagner-related parties. Within Monell analysis, this constitutes asserted notice to a final policymaker of a failure to enforce conflict safeguards and tolerance of conflicted involvement by a judicially affiliated actor connected to county enforcement personnel.

## 5. MONELL FRAMEWORK AND POLICYMAKER NOTICE

References to Monell in this analysis relate to policymaker notice, custom or pattern of conduct, deliberate indifference to alleged constitutional violations, and tolerance or ratification where corrective action is not taken after notice. The Weintraub letter is treated as a notice artifact because it was directed to the District Attorney and broadly distributed while asserting conflicts and enforcement conduct allegedly connected to Wagner-related actors.

## 6. PAGE 1, PARAGRAPH 1 - OPENING / AUTHORITY TARGETING

This paragraph elevates the complaint directly to the Bucks County District Attorney and frames the District Attorney as the proper authority to intervene in what the author describes as improper involvement and misconduct by local actors. The paragraph establishes direct policymaker notice and the author's request for District Attorney action regarding the alleged conduct described in the letter.

## 7. PAGE 1, PARAGRAPH 2 - KLINE PARTICIPATION AFTER FEDERAL LITIGATION

This paragraph asserts that Joanne Kline continued to participate in matters involving the author after the author filed federal litigation against her. The allegation is framed as improper involvement given the prior litigation and the asserted recusal requirement referenced in the letter. The paragraph places the policymaker on notice that a judicial officer allegedly subject to recusal constraints remained active in matters involving the author and Wagner-related parties, supporting an asserted failure to enforce recusal safeguards.

## 8. PAGE 1, PARAGRAPH 3 - CLAIMED RECUSAL OF KLINE AND WAGNER SR.

This paragraph asserts that the District Attorney's Office required both Joanne Kline and Kevin P. Wagner Sr. to recuse from matters involving the author. By identifying the policymaker's office as the source of the recusal requirement, the paragraph places the policymaker on notice of alleged continued violations of that requirement. Within Monell analysis, this supports a theory of deliberate indifference or tolerance where recusal safeguards were allegedly not enforced after notice.

2

## 9. PAGE 1, PARAGRAPH 4 - ALLEGED AID TO WAGNER-ASSOCIATED PERSONS

This paragraph asserts that Joanne Kline assisted Wagner neighbors and associates in matters affecting the author. The paragraph links the asserted judicial conflict to specific third-party beneficiaries and frames the issue as continuing rather than isolated. Within Monell analysis, this contributes to a claimed custom environment in which Wagner-connected individuals allegedly received favorable treatment in enforcement-related matters described in the letter.

## 10. PAGE 1, PARAGRAPH 5 - PATTERN FRAMING

This paragraph invokes a public statement attributed to the District Attorney concerning coincidence to frame the subsequent allegations as interconnected. The paragraph signals the author's assertion that the events described in the letter form a pattern rather than unrelated incidents. Within Monell analysis, this supports the author's systemic framing of enforcement conduct.

## 11. PAGE 1, PARAGRAPH 6 - ARREST EVENT DESCRIPTION

This paragraph asserts that Jeffery Wagner arrested the author on Walter Miller Elementary School property on a Saturday when school was not in session and characterizes the location as public usage land. The paragraph identifies a named law enforcement actor, specific location, and alleged improper enforcement context involving Wagner-related individuals. Within Monell analysis, it places the policymaker on notice of an asserted false or improper arrest involving a Wagner family member acting in a law enforcement capacity.

## 12. PAGE 1, PARAGRAPH 7 - PRE-ARREST HARASSMENT REPORT

This paragraph asserts that shortly before the arrest the author informed a Middletown officer identified as Beck that he was being harassed due to the Wagner family. The paragraph alleges contemporaneous reporting before the arrest occurred and frames the arrest as occurring after that warning. Within Monell analysis, it contributes to an asserted pattern in which enforcement proceeded despite alleged notice of harassment and conflict context.

## 13. PAGE 1, PARAGRAPH 8 - VIDEO ASSERTION IN LETTER

This paragraph states that the conduct described in the preceding allegations was captured on video made by the author. The statement is presented within the letter as reinforcing the asserted misconduct narrative and the claimed impropriety of enforcement actions described. Within Monell analysis, it signals that the author represented to the policymaker that his allegations were recorded events.

3

### 14. PAGE 2, PARAGRAPH 1 - KEVIN BURNS LETTER CONTEXT

This paragraph references a Kevin Burns letter and asserts that it was in Joanne Kline's possession and relevant to the events at issue. The paragraph frames the Burns letter as contradicting the basis for enforcement and supporting the author's asserted right to be present at the Walter Miller property. Within Monell analysis, it contributes to the asserted conflict environment described in the letter.

### 15. PAGE 2, PARAGRAPH 2 - SELECTIVE TOWING ALLEGATION

This paragraph asserts that the author's vehicles were towed in a snowstorm causing financial harm while others were not treated similarly. The paragraph frames the towing as discriminatory or retaliatory municipal action directed at the author. Within Monell analysis, it contributes to a pattern allegation in which municipal authority is asserted to have been applied selectively against the author in the enforcement environment described.

### 16. PAGE 2, PARAGRAPH 3 - ASSAULT AND NON-PROSECUTION CLAIM

This paragraph asserts that the author suffered an assault causing concussion and that the assailant was not charged. The paragraph frames this as unequal treatment in which alleged conduct against the author was not prosecuted while enforcement actions were taken against the author. Within Monell analysis, it contributes to a selective enforcement narrative supporting a custom or tolerance theory described in the letter.

### 17. PAGE 2, PARAGRAPH 4 - OFFICER REFUSAL AFTER VIDEO SHOWN

This paragraph asserts that a Bristol Township officer identified as Therroff was shown video made by the author and acknowledged harassment but declined to take official action and advised private filing. The paragraph alleges awareness by an officer followed by non-enforcement in the Wagner-related conflict context described in the letter. Within Monell analysis, repeated refusal to act after notice is framed as contributing to deliberate indifference or tolerance toward alleged misconduct affecting the author.

### 18. PAGE 2, PARAGRAPH 5 - REFUSAL TO CITE / LATER CHARGING

This paragraph asserts that an officer identified as Stone declined to cite an individual for harassment despite the author's allegations and later charged the author with harassment based on a neighbor's accusation. The paragraph frames this sequence as retaliatory and discriminatory enforcement conduct. Within Monell analysis, it supports a claimed custom in which complaints by the author were not acted upon while complaints against the author were pursued.

4

## 19. PAGE 2, PARAGRAPH 6 - FAVORITISM / PROTECTION NETWORK ASSERTION

This paragraph broadens the allegations into a claimed favoritism or protection network involving police relationships and ignored complaints. The paragraph articulates a systemic protection theory in which Wagner-associated individuals allegedly received favorable treatment in enforcement matters described in the letter. Within Monell analysis, it serves as the author's explicit articulation of custom and tolerance by authorities.

## 20. PAGE 3, PARAGRAPH 1 - PATTERN OF CHARGES ASSERTION

This paragraph asserts that numerous charges have been brought against the author and have not held up in court. The paragraph frames this as a pattern of improper or retaliatory charging within the Wagner-related conflict environment described in the letter. Within Monell analysis, repeated unsuccessful charges are asserted by the author as indicative of systemic misuse of process directed at him.

## 21. PAGE 3, PARAGRAPH 2 - INJURY / MIRANDA / PROPERTY ASSERTIONS

This paragraph asserts injury during arrest, Miranda-related issues, and property not returned following enforcement actions. The paragraph frames these as procedural and constitutional deprivations occurring during the enforcement conduct described in the letter. Within Monell analysis, repeated procedural irregularities after notice are asserted as supporting deliberate indifference or tolerance by authorities.

## 22. PAGE 3, PARAGRAPH 3 - OUT-OF-COUNTY ESCALATION

This paragraph asserts intent to contact federal authorities and frames the need as avoidance of county conflicts of interest. The paragraph documents the author's attempt to obtain review outside the local system regarding the Wagner-related enforcement conduct described. Within Monell analysis, it reinforces that the policymaker and oversight channels were notified of alleged conflicts and misconduct.

## 23. PAGE 3, PARAGRAPH 4 - GUN DRAWN / SERVICE DOG CONTEXT

This paragraph asserts that police drew a gun on a disabled individual walking with a service dog. The paragraph frames this as excessive or intimidating police conduct occurring within the enforcement context described in the letter. Within Monell analysis, it contributes to the author's asserted pattern of disproportionate enforcement against him despite disability context.

## 24. PAGE 3 - DISTRIBUTION LIST (NOTICE MAP)

The distribution list identifies multiple recipients across categories including judges, federal law enforcement leadership, elected officials, and media. The distribution demonstrates that, as of 20-JAN-2022, the author disseminated allegations of misconduct and conflict broadly to institutional actors. Within Monell analysis, this supports a record of policymaker and institutional notice of the asserted enforcement conduct and conflict structures described in the letter.

## 25. CONCLUSION

The Weintraub letter functions as date-certain notice to the Bucks County District Attorney and a broad set of oversight recipients of alleged conflict structures and retaliatory or unlawful enforcement conduct involving Wagner-related actors and associated officials as described by the author. The letter is appropriately used as a notice and chronology document describing the author's allegations and requests for intervention by a county policymaker.

Respectfully submitted,

John Jones Jr.
9 Iris Road
Levittown, PA 19057

6

# EXHIBIT 1-BL

SUPPLEMENTAL FACTUAL ALLEGATIONS

(NON-PLEADING FACTUAL SUPPLEMENT — PRIOR NOTICE TO JUDICIAL AND
MUNICIPAL AUTHORITIES)

## X. Plaintiff-Authored Written Notice (Bateman Letter)

**X.1** Prior to the escalation of enforcement and prosecutorial actions against Plaintiff arising from the Dec. 11, 2021 incident, Plaintiff authored and transmitted written correspondence dated Dec. 14, 2021 to the President Judge of Bucks County, with copies to judicial administration, the Bucks County District Attorney, and the Middletown Township Police Department (the "Bateman letter"). This correspondence provided contemporaneous written notice of unlawful arrest, misuse of enforcement authority, retaliatory motive, and the absence of lawful basis for police action.

**X.2** The Bateman letter documented that Plaintiff was engaged in lawful activity at the time of the Dec. 11, 2021 encounter, was not Mirandized or formally charged, and was subjected to detention, property seizure, and separation from his service dog without lawful justification. The correspondence further identified the involved officer and agencies and asserted that the conduct was retaliatory in nature.

**X.3** The Bateman letter was deliberately disseminated to judicial, prosecutorial, and municipal law-enforcement authorities, thereby placing each recipient on actual notice of an alleged constitutional violation and an ongoing risk of further retaliatory or unsupported enforcement actions against Plaintiff absent intervention.

**X.4** Despite receipt of this contemporaneous and detailed written notice, no investigation, supervisory review, corrective guidance, or protective intervention was undertaken by judicial authorities, the District Attorney, or municipal supervisors. This failure to act disregarded a known and foreseeable risk of continued unconstitutional enforcement conduct directed at Plaintiff.

**X.5 Foreseeability and Escalation Risk** The Bateman letter warned that the Dec. 11, 2021 arrest and detention arose from retaliatory animus and misuse of authority rather than lawful grounds. Subsequent enforcement and prosecutorial actions taken against Plaintiff were consistent with the risks identified in this written notice and fell squarely within the foreseeable outcomes described therein.

**X.6 Temporal Proximity** The unconstitutional conduct directed at Plaintiff occurred in close temporal proximity to the transmission and receipt of the Bateman letter, reinforcing the inference that the risk identified in advance was both imminent and obvious and that supervisory or prosecutorial intervention was reasonably required.

**X.7 Absence of Supervisory or Corrective Measures** Following receipt of the Bateman letter, no corrective directive, supervisory review, training guidance, or policy

intervention was issued to address the documented risks. The absence of remedial action permitted the continuation and escalation of retaliatory enforcement conduct against Plaintiff.

**X.8 Notice Beyond a Single Official** The Bateman letter was not limited to a single recipient but was copied to multiple governmental authorities, including judicial leadership, prosecutorial authority, and municipal law-enforcement. This breadth of dissemination reinforced the objective reasonableness of Plaintiff's expectation that preventative action would be taken and underscored the scope of institutional notice provided prior to subsequent constitutional injury.

**X.9 Purpose and Scope of This Supplement**

This document is submitted solely as a non-pleading factual supplement to clarify prior notice, foreseeability, and causation arising from Plaintiff-authored written notice transmitted three days after the Dec. 11, 2021 incident. It does not assert new claims, add parties, amend counts, or request relief, and is intended exclusively to supplement the factual record supporting Plaintiff's existing claims in this action.


Respectfully submitted,


John Jones Jr.

9 Iris Rd.

Levittown, PA 19057

# John Jones Jr.
# 9 Iris Rd. Levittown
# PA 19057

Honorable Wallace H. Bateman Jr.                    Calendarfax@Buckscounty.Org
President Judge, Judges Chambers                          via Fax 215-491-7658
100 N Main St. Doylestown, PA 18901                          14-DEC-2021

Judge Wallace:

I am requesting a cease and desist order from the court. This is my cease and desist letter to the local police and respective TWP's including Bristol and Middletown. I was arrested on 11-DEC-21 by Middletown TWP police officer Jeffery Wagner 17 Gun Rd. Levittown, son of Kevin Wagner Sr. 16 Gun Rd. Levittown, nephew of Robert and Maryann Wagner 621 Keston Dr Fairless Hills, PA. , while walking my service dog on school property around noon on Saturday 11-DEC-21, within the confines of the law as demonstrated by the letter included from school security employee Kevin Burns. I was never mirandized or formally charged.

The officers on scene refused to identify themselves and stole a pocket knife from me as well as god knows what else. Why no reading of my rights? That's a clear violation of my civil rights. OH, That's right, wait, it's a Wagner, no accountability whatsoever.

I was separated from my service dog, photographed, finger printed and had my vehicle impounded. I was then escorted by Jeffery Wagner to a gate after being returned my service dog Holly and told to find my own way home with 2 hip replacements and a 15yr old dog with bad hips in my care. He was very/quite gleeful about me being stranded.

This was is in retaliation to my Whistle blowing activity, my letter to Judge John Kelly date stamped 23-AUG-21, and included herein, and much more Judge.

There is nothing the County of Bucks, Bucks DA office, Middletown TWP, Bristol TWP, the FBI, Tina Davis, Brian Fitzpatrick or anyone else has done when I complained earlier. I foretold of such illegal acts in a 16 page FAX to everyone that was being perpetrated upon me to protect the Wagners as well as others. I supplied perfect video evidence to Middletown officer Derek Leonhauser of threats of death and more with no action taken on my behalf, yet a 60yr old man walking his dog gets thrown in jail?

Respectfully submitted,

John Jones Jr

cc. Judge Jeffery L. Finely, Bucks County, PA. Fax 215-348-6101
     Bucks County District Attorney Matthew Weintraub. Fax 215-348-6299
     Middletown TWP Police Dept. Fax 215-752-3449



District Judge Joanne Kline recently with Constable Kevin Wagner as she retired.

Credit:: Kevin Wagner

When Joanne Kline was appointed district judge in Bristol Township at 38, little did she know she was beginning a career that would span five elections and nearly 30 years.



# UNITED STATES POSTAL SERVICE ®

# PRIORITY MAIL®

## FLAT RATE ENVELOPE

**ONE RATE ■ ANY WEIGHT**

CASE 26-1050 COURT COPY

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP

# TRACKED ■ INSURED



**VISIT US AT USPS.COM®**